APPEAL,TYPE−C

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:17−cv−02458−TSC</u>

| | |
|---|---|
| NATIONAL WOMEN'S LAW CENTER et al v. OFFICE OF MANAGEMENT AND BUDGET et al<br>Assigned to: Judge Tanya S. Chutkan<br>Cause: 05:551 Administrative Procedure Act | Date Filed: 11/15/2017<br>Jury Demand: None<br>Nature of Suit: 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>Jurisdiction: U.S. Government Defendant |

**Plaintiff**

| | | |
|---|---|---|
| **NATIONAL WOMEN'S LAW CENTER** | represented by | **Javier M. Guzman**<br>DEMOCRACY FORWARD FOUNDATION<br>P.O. Box 34553<br>Washington, DC 20043<br>(202) 448−9090<br>Email: <u>jguzman@democracyforward.org</u><br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Jeffrey B. Dubner**<br>DEMOCRACY FORWARD FOUNDATION<br>1333 H Street NW<br>Washington, DC 20005<br>(202) 448−9090<br>Email: <u>jdubner@democracyforward.org</u><br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Emily J. Martin**<br>NATIONAL WOMEN'S LAW CENTER<br>11 Dupont Circle<br>#800<br>Washington, DC 20036<br>202−588−5180<br>Email: <u>emartin@nwlc.org</u><br>*ATTORNEY TO BE NOTICED* |
| | | **Maya Raghu**<br>NATIONAL WOMEN'S LAW CENTER<br>11 Dupont Circle, NW<br>Suite 800<br>Washington, DC 20036<br>(202) 588−5180<br>Fax: (202) 588−5185<br>Email: <u>mraghu@nwlc.org</u> |

1

*ATTORNEY TO BE NOTICED*

**Robin Frances Thurston**
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, DC 20043
(202) 448−9090
Email: rthurston@democracyforward.org
*ATTORNEY TO BE NOTICED*

**Sunu P. Chandy**
NATIONAL WOMEN'S LAW CENTER
11 Dupont Circle
Suite 800
Washington, DC 20036
202−588−5180
Email: schandy@nwlc.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT** | represented by | **Javier M. Guzman**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Jeffrey B. Dubner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Emily J. Martin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maya Raghu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robin Frances Thurston**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sunu P. Chandy**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

represented by

**OFFICE OF MANAGEMENT AND BUDGET**

Rachael Lynn Westmoreland
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
(202) 514−1280
Fax: (202) 616−8460
Email: rachael.westmoreland@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Tamra Tyree Moore
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 305−8628
Fax: (202) 616−8460
Email: tamra.moore@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN MICHAEL MULVANEY**
*Director, Office of Management and Budget*

represented by **Rachael Lynn Westmoreland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tamra Tyree Moore**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**NEOMI RAO**
*Administrator, Office of Information and Regulatory Affairs*

represented by **Rachael Lynn Westmoreland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tamra Tyree Moore**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

represented by **Rachael Lynn Westmoreland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tamra Tyree Moore**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**VICTORIA A. LIPNIC**                      represented by  **Rachael Lynn Westmoreland**
*Acting Chair, U.S. Equal Employment*                        (See above for address)
*Opportunity Commission*                                     *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Tamra Tyree Moore**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Movant**

**DIRECTEMPLOYERS**                         represented by  **Edward Lee Isler**
**ASSOCIATION, INC.**                                        ISLER DARE, P.C.
                                                             1945 Old Gallows Road
                                                             Suite 650
                                                             Vienna, VA 22182
                                                             (703) 748−2690
                                                             Fax: (703) 748−2695
                                                             Email: eisler@islerdare.com
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Madalyn K. Doucet**
                                                             HUNTON ANDREWS KURTH LLP
                                                             2200 Pennsylvania Avenue, NW
                                                             Washington, DC 20037
                                                             (202) 955−1577
                                                             Email: MDoucet@hunton.com
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Jay J. Wang**
                                                             FOX, WANG & MORGAN, P.C.
                                                             315 University Avenue
                                                             Los Gatos, CA 95030
                                                             408−844−2350
                                                             Fax: 408−844−2351
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Micah Ephram Ticatch**
                                                             ISLER DARE, P.C.
                                                             1945 Old Gallows Road
                                                             Suite 650
                                                             Vienna, VA 22182
                                                             (703) 748−2690

Fax: (703) 748−2695
Email: mticatch@islerdare.com
*ATTORNEY TO BE NOTICED*

**Movant**

**AMERICAN SOCIETY OF
EMPLOYERS**

represented by   **Edward Lee Isler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jay J. Wang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Micah Ephram Ticatch**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Movant**

**CHAMBER OF COMMERCE OF
THE UNITED STATES OF
AMERICA**
1616 H Street NW
Washington, DC 20062
202−463−5337
*Chamber of Commerce of the United
States of America, et al.*

represented by   **Lawrence Z. Lorber**
Seyfarth Shaw LLP
975 F Street, N.W.
Washington, DC 20004
(202) 463−2400
Fax: (202) 828−5393
Email: llorber@seyfarth.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Annette Tyman**
SEYFARTH SHAW, LLP
233 S. Wacker Drive
Suite 8000
Chicago, IL 60606
(312) 460−5943
Fax: 312−460−7000
Email: atyman@seyfarth.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Camille A. Olson**
SEYFARTH SHAW, LLP
233 S. Wacker Drive
Suite 8000
Chicago, IL 60606
(312) 460−5831
Fax: 312−460−7000
Email: colson@seyfarth.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard B. Lapp**
SEYFARTH SHAW, LLP
233 S. Wacker Drive
Suite 8000
Chicago, IL 60606
(312) 460−5000
Fax: (312) 460−7000
Email: rlapp@seyfarth.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Movant**

**HR POLICY ASSOCIATION**    represented by   **Lawrence Z. Lorber**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**ASSOCIATED BUILDERS AND**    represented by   **Lawrence Z. Lorber**
**CONTRACTORS**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**ASSOCIATED GENERAL**    represented by   **Lawrence Z. Lorber**
**CONTRACTORS OF AMERICA**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**CENTER FOR WORKPLACE**    represented by   **Lawrence Z. Lorber**
**COMPLIANCE**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**INSTITUTE FOR WORKPLACE**    represented by   **Lawrence Z. Lorber**
**EQUALITY**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**NATIONAL ASSOCIATION OF**    represented by   **Lawrence Z. Lorber**
**MANUFACTURERS**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

| | | |
|---|---|---|
| **NATIONAL FEDERATION OF INDEPENDENT BUSINESS** | represented by | **Lawrence Z. Lorber** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Movant**

| | | |
|---|---|---|
| **NATIONAL RETAIL FEDERATION** | represented by | **Lawrence Z. Lorber** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Movant**

| | | |
|---|---|---|
| **RESTAURANT LAW CENTER** | represented by | **Lawrence Z. Lorber** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Movant**

| | | |
|---|---|---|
| **RETAIL LITIGATION CENTER, INC.,** | represented by | **Lawrence Z. Lorber** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Movant**

| | | |
|---|---|---|
| **SOCIETY FOR HUMAN RESOURCE MANAGEMENT** | represented by | **Lawrence Z. Lorber** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 11/15/2017 | 1 | | COMPLAINT against ALL DEFENDANTS ( Filing fee $ 400 receipt number 0090−5206576) filed by NATIONAL WOMEN'S LAW CENTER, LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons)(Guzman, Javier) (Entered: 11/15/2017) |
| 11/15/2017 | | | Case Assigned to Judge Tanya S. Chutkan. (md) (Entered: 11/19/2017) |
| 11/19/2017 | 2 | | SUMMONS (7) Issued Electronically as to VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice of Consent) (md) (Entered: 11/19/2017) |
| 11/27/2017 | 3 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Robin F. Thurston, :Firm− Democracy Forward Foundation, :Address− P.O. Box 34553, Washington, DC 20043. Phone No. − (202) 448−9090. Filing fee $ 100, receipt number 0090−5221881. Fee Status: Fee Paid. by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW |

| | | | |
|---|---|---|---|
| | | | CENTER (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Guzman, Javier) (Entered: 11/27/2017) |
| 11/28/2017 | 4 | | CERTIFICATE OF SERVICE by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER . (Attachments: # 1 Declaration)(Guzman, Javier) (Entered: 11/28/2017) |
| 11/29/2017 | | | NOTICE OF ERROR re 4 Certificate of Service; emailed to jguzman@democracyforward.org, cc'd 1 associated attorneys — The PDF file you docketed contained errors: 1. Incorrect event used, 2. Please refile document, 3. Incorrect event used; Refile using appropriate events on the Service of Process menu as to the U.S. Attorney, U.S. Attorney General, and Federal Defendants. (znmw, ) (Entered: 11/29/2017) |
| 11/29/2017 | 5 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 11/27/2017. Answer due for ALL FEDERAL DEFENDANTS by 1/26/2018. (Attachments: # 1 Declaration)(Guzman, Javier) (Entered: 11/29/2017) |
| 11/29/2017 | 6 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 11/27/2017., RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. VICTORIA A. LIPNIC served on 11/24/2017; JOHN MICHAEL MULVANEY served on 11/27/2017; OFFICE OF MANAGEMENT AND BUDGET served on 11/27/2017; NEOMI RAO served on 11/27/2017; U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION served on 11/24/2017. (See Docket Entry 5 to view document). (znmw) (Entered: 11/30/2017) |
| 12/04/2017 | | | MINUTE ORDER: Granting 3 Motion for Leave to Appear Pro Hac Vice. Attorney Robin F. Thurston is hereby admitted pro hac vice to appear in this matter on behalf of Plaintiffs. Signed by Judge Tanya S. Chutkan on 12/4/17. (DJS) (Entered: 12/04/2017) |
| 01/05/2018 | 7 | | NOTICE of Appearance by Jeffery B. Dubner on behalf of LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER (Guzman, Javier) Modified attorney on 1/8/2018 (znmw). (Entered: 01/05/2018) |
| 01/08/2018 | | | NOTICE OF ERROR re 7 Notice of Appearance; emailed to jguzman@democracyforward.org, cc'd 4 associated attorneys — The PDF file you docketed contained errors: 1. In the future, appearing attorney shall file own appearance using his assigned ECF login; Do not refile. (znmw, ) (Entered: 01/08/2018) |
| 01/25/2018 | 8 | | MOTION for Extension of Time to *Respond to Complaint* by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (Attachments: # 1 Text of Proposed Order)(Moore, Tamra) (Entered: 01/25/2018) |
| 01/29/2018 | 9 | | RESPONSE re 8 MOTION for Extension of Time to *Respond to Complaint* filed by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER. (Thurston, Robin) (Entered: 01/29/2018) |

| 01/30/2018 | 10 | | REPLY to opposition to motion re 8 MOTION for Extension of Time to *Respond to Complaint* filed by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION. (Moore, Tamra) (Entered: 01/30/2018) |
| --- | --- | --- | --- |
| 01/30/2018 | | | MINUTE ORDER: Granting in part and denying in part 8 Motion for Extension of Time to File Answer. Defendant shall answer or otherwise respond to the complaint by 2/13/18. Signed by Judge Tanya S. Chutkan on 1/30/18. (DJS) (Entered: 01/30/2018) |
| 01/31/2018 | | | Set/Reset Deadlines: Defendant shall answer or otherwise respond to the complaint by 2/13/18. (jth) (Entered: 01/31/2018) |
| 02/13/2018 | 11 | | MOTION to Dismiss for Lack of Jurisdiction , MOTION to Dismiss *for Failure to State a Claim* by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (Attachments: # 1 Memorandum in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint, # 2 Exhibit A, # 3 Text of Proposed Order)(Moore, Tamra) (Entered: 02/13/2018) |
| 02/21/2018 | 12 | | NOTICE of Appearance by Maya Raghu on behalf of LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER (Raghu, Maya) (Entered: 02/21/2018) |
| 02/21/2018 | 13 | | NOTICE of Appearance by Emily J. Martin on behalf of LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER (Martin, Emily) (Entered: 02/21/2018) |
| 02/22/2018 | 14 | | NOTICE of Appearance by Rachael Lynn Westmoreland on behalf of All Defendants (Westmoreland, Rachael) (Entered: 02/22/2018) |
| 02/22/2018 | 15 | | NOTICE of Appearance by Sunu P. Chandy on behalf of LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER (Chandy, Sunu) (Entered: 02/22/2018) |
| 02/27/2018 | 16 | | Memorandum in opposition to re 11 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss *for Failure to State a Claim* filed by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER. (Attachments: # 1 Text of Proposed Order)(Thurston, Robin) (Entered: 02/27/2018) |
| 03/02/2018 | 17 | | Consent MOTION for Extension of Time to File Response/Reply as to 11 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss *for Failure to State a Claim* by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (Attachments: # 1 Text of Proposed Order)(Moore, Tamra) (Entered: 03/02/2018) |
| 03/06/2018 | | | MINUTE ORDER: Granting 17 Consent Motion for Extension of Time to File Response/Reply. Defendant's reply due March 9, 2018. Signed by Judge Tanya S. Chutkan on 3/6/18. (DJS) (Entered: 03/06/2018) |
| 03/07/2018 | | | Set/Reset Deadlines: Defendant reply due by 3/9/2018. (tb) (Entered: 03/07/2018) |

| 03/09/2018 | 18 | | REPLY to opposition to motion re 11 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss *for Failure to State a Claim* filed by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION. (Moore, Tamra) (Entered: 03/09/2018) |
| 04/19/2018 | 19 | | MOTION to Compel *Compliance with Local Civil Rule 7(n)* by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER (Attachments: # 1 Text of Proposed Order)(Thurston, Robin) (Entered: 04/19/2018) |
| 05/03/2018 | 20 | | Memorandum in opposition to re 19 MOTION to Compel *Compliance with Local Civil Rule 7(n)* filed by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION. (Moore, Tamra) (Entered: 05/03/2018) |
| 05/10/2018 | 21 | | REPLY to opposition to motion re 19 MOTION to Compel *Compliance with Local Civil Rule 7(n)* filed by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER. (Dubner, Jeffrey) (Entered: 05/10/2018) |
| 09/13/2018 | | | MINUTE ORDER: Denying without prejudice 19 Motion to Compel compliance with Local Rule 7(n). Given that there is a pending Motion to Dismiss, this case is not yet in a posture where compliance with Rule 7(n) is necessary. Signed by Judge Tanya S. Chutkan on 9/13/18. (DJS) (Entered: 09/13/2018) |
| 10/31/2018 | 22 | | MOTION for Summary Judgment by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER (Attachments: # 1 Memorandum in Support, # 2 Affidavit Link Decl., # 3 Affidavit Johnson Decl., # 4 Affidavit Sanchez Decl., # 5 Text of Proposed Order)(Thurston, Robin) (Entered: 10/31/2018) |
| 11/14/2018 | 23 | | MOTION to Stay re 22 MOTION for Summary Judgment by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Westmoreland, Rachael) (Entered: 11/14/2018) |
| 11/15/2018 | | | MINUTE ORDER: The Government's 23 Motion to Stay is GRANTED in part and DENIED in part. The Government shall compile the Administrative Record and respond to Plaintiffs' 22 Motion for Summary Judgment by December 6, 2018. Signed by Judge Tanya S. Chutkan on 11/15/2018. (lctsc3) (Entered: 11/15/2018) |
| 11/20/2018 | | | Set/Reset Deadlines: Response due by 12/6/2018. (tb) (Entered: 11/20/2018) |
| 12/04/2018 | 24 | | Consent MOTION for Extension of Time to File Response/Reply as to 22 MOTION for Summary Judgment by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (Attachments: # 1 Text of Proposed Order)(Moore, Tamra) (Entered: 12/04/2018) |

| | | |
|---|---|---|
| 12/04/2018 | | MINUTE ORDER: Defendants' 24 Consent Motion for Extension of Time to Respond to Plaintiffs' Motion for Summary Judgment is GRANTED. Defendants shall file their Opposition to Plaintiffs' Motion for Summary Judgment and Cross−Motion for Summary Judgment by December 20, 2018. Plaintiffs shall file their Reply in Support of Plaintiffs' Motion for Summary Judgment and Opposition to Defendants' Cross−Motion for Summary Judgment by January 14, 2019. Defendants shall file their Reply in Support of Defendants' Cross−Motion for Summary Judgment by January 22, 2019. Signed by Judge Tanya S. Chutkan on 12/4/2018.(lctsc3) (Entered: 12/04/2018) |
| 12/06/2018 | 25 | ADMINISTRATIVE RECORD *List of Certified Contents* by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION. (Attachments: # 1 Exhibit A)(Westmoreland, Rachael) (Entered: 12/06/2018) |
| 12/07/2018 | | Set/Reset Deadlines: Cross Motion due by 12/20/2018. Response to Cross Motion due by 1/14/2019. Reply to Cross Motion due by 1/22/2019. Response to Motion for Summary Judgment due by 12/20/2018. Reply to Motion for Summary Judgment due by 1/14/2019. (tb) (Entered: 12/07/2018) |
| 12/20/2018 | 26 | Consent MOTION for Extension of Time to File Response/Reply as to 22 MOTION for Summary Judgment by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (Attachments: # 1 Text of Proposed Order)(Westmoreland, Rachael) (Entered: 12/20/2018) |
| 12/20/2018 | | MINUTE ORDER: Granting Consent Motion 26 to Extend Deadlines. Defendants' Opposition to Plaintiffs' Summary Judgment Motion and Cross−Motion for Summary Judgment due December 21, 2018. Plaintiffs' Reply in Support of their Motion for Summary Judgment and in Opposition to Defendants' Cross−Motion for Summary Judgment due January 15, 2019. Defendants' Reply in Support of their Cross−Motion for Summary Judgment due January 22, 2019. Signed by Judge Tanya S. Chutkan on 12/20/18. (DJS) (Entered: 12/20/2018) |
| 12/21/2018 | | Set/Reset Deadlines: Cross Motion due by 12/21/2018. Response to Cross Motion due by 1/15/2019. Reply to Cross Motion due by 1/22/2019. Response to Motion for Summary Judgment due by 12/21/2018. Reply to Motion for Summary Judgment due by 1/15/2019. (tb) (Entered: 12/21/2018) |
| 12/21/2018 | 27 | MOTION for Summary Judgment by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Moore, Tamra) Modified event title on 12/28/2018 (znmw). (Entered: 12/21/2018) |
| 12/22/2018 | 28 | Memorandum in opposition to re 22 MOTION for Summary Judgment filed by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Moore, Tamra) (Entered: |

| | | | |
|---|---|---|---|
| | | | 12/22/2018) |
| 01/10/2019 | 29 | | MOTION to Stay *Defendants' Reply Briefing Deadline in Light of Lapse in Appropriations* by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (Westmoreland, Rachael) (Entered: 01/10/2019) |
| 01/15/2019 | 30 | | RESPONSE re 29 MOTION to Stay *Defendants' Reply Briefing Deadline in Light of Lapse in Appropriations* filed by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER. (Attachments: # 1 Exhibit A (Order Denying Stay Motion), # 2 Exhibit B (Order Denying Stay Motion))(Thurston, Robin) (Entered: 01/15/2019) |
| 01/15/2019 | 31 | | REPLY to opposition to motion re 22 MOTION for Summary Judgment *and Opposition to Cross−Motion for Summary Judgment* filed by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER. (Thurston, Robin) (Entered: 01/15/2019) |
| 01/15/2019 | 32 | | RESPONSE re 27 MOTION for Summary Judgment *and Reply in Support of Motion for Summary Judgment (also filed at Dkt. 31)* filed by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER. (Thurston, Robin) (Entered: 01/15/2019) |
| 01/15/2019 | 33 | | MOTION to Compel *Completion of the Administrative Record* by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER (Attachments: # 1 Affidavit Declaration of Lenora M. Lapidus, # 2 Text of Proposed Order)(Thurston, Robin) (Entered: 01/15/2019) |
| 01/16/2019 | 34 | | REPLY to opposition to motion re 29 MOTION to Stay *Defendants' Reply Briefing Deadline in Light of Lapse in Appropriations* filed by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION. (Westmoreland, Rachael) (Entered: 01/16/2019) |
| 01/17/2019 | | | MINUTE ORDER: In as much as Defendants feel compelled to submit a Reply in Support of their Cross−Motion for Summary Judgment to address arguments not made in their Motion for Summary Judgment 27 / Opposition to Plaintiffs' Motion for Summary Judgment 28 , it is ORDERED that the Motion to Stay Defendants' Reply Briefing in Light of Lapse in Appropriations 29 is DENIED. It is further ORDERED that Plaintiffs shall file supplemental briefing by January 18, 2019 addressing the following questions: 1) If the court grants Plaintiffs' Motion to Compel Completion of the Administrative Record 33 , how would such a ruling impact the briefing already completed on the cross−motions for summary judgment?; and 2) If the court grants Plaintiffs' Motion to Compel Completion of the Administrative Record 33 , would Defendants be permitted to comply with the Proposed Order [33−2] considering the lapse in appropriations and representations made by Defendants' counsel? Signed by Judge Tanya S. Chutkan on 01/17/2019. (lctsc3) (Entered: 01/17/2019) |
| 01/18/2019 | 35 | | RESPONSE TO ORDER OF THE COURT *Filing Plaintiffs' Supplemental Brief Responding to Questions Posed by the Court's Janaury 17, 2019 Minute Order* by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, |

| | | |
|---|---|---|
| | | NATIONAL WOMEN'S LAW CENTER (Attachments: # 1 Exhibit A)(Thurston, Robin) Modified event title on 1/25/2019 (znmw). (Entered: 01/18/2019) |
| 01/22/2019 | 36 | REPLY re 27 MOTION for Summary Judgment filed by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION. (Moore, Tamra) (Entered: 01/22/2019) |
| 01/29/2019 | 37 | RESPONSE re 33 MOTION to Compel *Completion of the Administrative Record* filed by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION. (Moore, Tamra) (Entered: 01/29/2019) |
| 02/05/2019 | 38 | REPLY to opposition to motion re 33 MOTION to Compel *Completion of the Administrative Record* filed by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER. (Thurston, Robin) (Entered: 02/05/2019) |
| 02/05/2019 | 39 | JOINT APPENDIX by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER. (Attachments: # 1 Appendix, # 2 Appendix)(Thurston, Robin) (Entered: 02/05/2019) |
| 02/07/2019 | 40 | ORDER: Plaintiffs' Motion to Compel Completion of the Administrative Record 33 is GRANTED in part. By 8:00 p.m. on February 8, 2019 the parties shall file supplemental briefing stating their positions on the court's conducting an in camera review of the disputed e−mails referenced in the Mancini and Lipnic declarations. These pleadings shall be no longer than five pages. See Order for more details. Signed by Judge Tanya S. Chutkan on 2/7/19. (lctsc3) Modified on 2/8/2019 (tb). (Entered: 02/07/2019) |
| 02/08/2019 | | Set/Reset Deadlines: Supplemental Briefing due by 8:00 pm. on 2/8/2019. (tb) (Entered: 02/08/2019) |
| 02/08/2019 | 41 | RESPONSE TO ORDER OF THE COURT re 40 Order on Motion to Compel, filed by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER. (Thurston, Robin) (Entered: 02/08/2019) |
| 02/08/2019 | 42 | RESPONSE TO ORDER OF THE COURT re 40 Order on Motion to Compel, filed by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION. (Moore, Tamra) (Entered: 02/08/2019) |
| 02/11/2019 | | MINUTE ORDER: By 3:00 p.m. on February 13, 2019, Defendants shall submit the following documents for an *in camera* inspection: (1) an April 14, 2017 e−mail between Deputy Administrator Mancini and Acting Chair Lipnic; (2) an April 19, 2017 e−mail between Deputy Administrator Mancini and Acting Chair Lipnic; (3) a July 14, 2017 e−mail between Deputy Administrator Mancini and EEOC Chief of Staff Paretti; and (4) an August 28, 2017 e−mail between Deputy Administrator Mancini and EEOC Chief of Staff Paretti. These documents shall be delivered to the Clerk of the Court in a sealed envelope and labeled "For In Camera Inspection." Signed by Judge Tanya S. Chutkan on 2/11/2019. (lctsc1) (Entered: 02/11/2019) |

| | | | |
|---|---|---|---|
| 02/15/2019 | 43 | | ORDER: The April 14, 2017 e−mails and the July 14, 2017 e−mails shall be added to the administrative record. Defendants shall turn over these e−mails to Plaintiffs by 5:00 p.m. today, February 15, 2019. See Order for more details. Signed by Judge Tanya S. Chutkan on 2/15/2019. (lctsc3) (Entered: 02/15/2019) |
| 02/15/2019 | | | Set/Reset Deadlines: Defendants to turn over e−mails to plaintiffs by 5:00 p.m. on 2/15/2019. (tb) (Entered: 02/15/2019) |
| 02/21/2019 | | | MINUTE ORDER: By February 25, 2019 the parties shall meet and confer and file an updated Joint Appendix. The e−mails now in the administrative record, ECF No. 43, shall be added as the last entries to the current Joint Appendix, ECF No. 39. Signed by Judge Tanya S. Chutkan on 2/21/2019. (lctsc3). (Entered: 02/21/2019) |
| 02/22/2019 | | | Set/Reset Deadlines: Attorney Meet and Confer Conference and file update Joint Appendix due by 2/25/2019. (tb) (Entered: 02/22/2019) |
| 02/25/2019 | 44 | | JOINT APPENDIX by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER. (Attachments: # 1 Appendix, # 2 Appendix)(Dubner, Jeffrey) Modified on 2/27/2019 (ztd). Modified on 3/14/2019 (znmw). (Entered: 02/25/2019) |
| 02/26/2019 | | | ENTERED IN ERROR.....NOTICE OF ERROR re 44 Joint Appendix; emailed to jdubner@democracyforward.org, cc'd 9 associated attorneys −− The PDF file you docketed contained errors: 1. Please refile document, 2. The document is electronically filed by Jeffrey Dubner and signed by Tamra Moore. The signatures should match. (ztd, ) Modified to enter in error on 3/14/2019; disregard error notice. (znmw). (Entered: 02/26/2019) |
| 03/04/2019 | 45 | 26 | MEMORANDUM OPINION: Regarding Defendants' Motion to Dismiss 11, Plaintiffs' Motion for Summary Judgment 22, and Defendants' Motion for Summary Judgment 27. Signed by Judge Tanya S. Chutkan on 3/4/2019. (lctsc3) (Entered: 03/04/2019) |
| 03/04/2019 | 46 | 24 | ORDER denying Defendants' Motion to Dismiss 11 , granting Plaintiffs' Motion for Summary Judgment 22 , and denying Defendants' Motion for Summary Judgment 27 . Signed by Judge Tanya S. Chutkan on 3/4/2018. (lctsc3) (Entered: 03/04/2019) |
| 03/18/2019 | 47 | | MOTION for Hearing *Request for Status Conference* by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Thurston, Robin) Modified event title on 3/19/2019 (znmw). (Entered: 03/18/2019) |
| 03/18/2019 | | | MINUTE ORDER: The court will hold a status conference on March 19, 2019 at 11:30 a.m. Signed by Judge Tanya S. Chutkan on 3/18/2019. (lctsc3) (Entered: 03/18/2019) |
| 03/18/2019 | | | Set/Reset Hearings: Status Conference set for 3/19/2019, at 11:30 AM, in Courtroom 9, before Judge Tanya S. Chutkan. (kt) (Entered: 03/18/2019) |
| 03/19/2019 | | | Minute Entry for proceedings held before Judge Tanya S. Chutkan: Status Conference held on 3/19/2019. Defendants' submissions due by 4/3/2019; Plaintiffs' Response due by 4/8/2019. (Court Reporter: Elizabeth Saint Loth.) (kt) Modified on 3/19/2019 to correct apostrophe typo (kt). (Entered: 03/19/2019) |

| 04/01/2019 | 48 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− John C. Fox, :Firm− Fox, Wang & Morgan P.C., :Address− 315 University Avenue, Los Gatos, CA 95030,. Phone No. − 408−844−2350. Fax No. − 408−844−2351 Filing fee $ 100, receipt number 0090−6031985. Fee Status: Fee Paid. by DirectEmployers Association, Inc. (Attachments: # 1 Declaration Declaration of John C. Fox In Support Of Motion for Admission Pro Hac Vice, # 2 Text of Proposed Order Proposed Order Granting Motion for Admission of Attorney Pro Hac Vice)(Doucet, Madalyn) Modified to add address on 4/1/2019 (ztd). (Entered: 04/01/2019) |
| 04/01/2019 | 49 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Jay J. Wang, :Firm− Fox, Wang & Morgan P.C., :Address− 315 University Ave., Los Gatos, CA 95030. Phone No. − 408−844−2350. Fax No. − 408−844−2351 Filing fee $ 100, receipt number 0090−6032199. Fee Status: Fee Paid. by DirectEmployers Association, Inc. (Attachments: # 1 Declaration of Jay J. Wang In Support Of Motion for Admission Pro Hac Vice, # 2 Text of Proposed Order Granting Motion for Admission of Attorney Pro Hac Vice)(Doucet, Madalyn) . (Entered: 04/01/2019) |
| 04/01/2019 | 50 | | MOTION for Leave to File *Amici Curiae Brief* by DirectEmployers Association, Inc., AMERICAN SOCIETY OF EMPLOYERS (Attachments: # 1 Exhibit Amici Brief, # 2 Exhibit Corporate Disclosure Statement for DirectEmployers Association, Inc., # 3 Exhibit Corporate Disclosure for American Society fo Employers)(Isler, Edward) (Entered: 04/01/2019) |
| 04/01/2019 | 51 | | NOTICE of Appearance by Edward Lee Isler on behalf of AMERICAN SOCIETY OF EMPLOYERS, DirectEmployers Association, Inc. (Isler, Edward) (Entered: 04/01/2019) |
| 04/01/2019 | 52 | | NOTICE of Appearance by Micah Ephram Ticatch on behalf of AMERICAN SOCIETY OF EMPLOYERS, DirectEmployers Association, Inc. (Ticatch, Micah) (Entered: 04/01/2019) |
| 04/01/2019 | 53 | | NOTICE of Proposed Order by AMERICAN SOCIETY OF EMPLOYERS, DirectEmployers Association, Inc. re 50 MOTION for Leave to File *Amici Curiae Brief* (Isler, Edward) (Entered: 04/01/2019) |
| 04/03/2019 | 54 | | NOTICE *of Defendants' Submission in Response to the Court's Questions Raised During the March 19, 2019 Status Conference* by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION re Status Conference,, Set Deadlines, (Attachments: # 1 Declaration)(Moore, Tamra) (Entered: 04/03/2019) |
| 04/03/2019 | 55 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Camille Olson, :Firm− Seyfarth Shaw LLP, :Address− 233 S. Wacker Drive. Phone No. − 312−460−5000. Fax No. − 312−460−7000 Filing fee $ 100, receipt number 0090−6039997. Fee Status: Fee Paid. by CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Lorber, Lawrence) (Entered: 04/03/2019) |
| 04/03/2019 | 56 | | NOTICE of Appearance by Lawrence Z. Lorber on behalf of CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA (Lorber, Lawrence) (Entered: 04/03/2019) |

| 04/04/2019 | 57 | | MOTION for Leave to File *Amici Curiae Brief* by CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA (Attachments: # 1 Exhibit Amici Brief, # 2 Exhibit Corp Disc Stmt Chamber, # 3 Exhibit Corp Disc Stmt HR Policy, # 4 Exhibit Corp Disc Stmt ABC, # 5 Exhibit Corp Disc Stmt AGC, # 6 Exhibit Corp Disc Stmt CWC, # 7 Exhibit Corp Disc Stmt IWE, # 8 Exhibit Corp Disc Stmt NAM, # 9 Exhibit Corp Disc Stmt NFIB, # 10 Exhibit Corp Disc Stmt NRF, # 11 Exhibit Corp Disc Stmt RLC, # 12 Exhibit Corp Disc Stmt Retail Litigation, # 13 Exhibit Corp Disc Stmt SHRM, # 14 Exhibit Corp Disc Stmt Proposed Order)(Lorber, Lawrence) (Entered: 04/04/2019) |
| 04/04/2019 | 58 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Annette Tyman, :Firm− Seyfarth Shaw LLP, :Address− 233 S. Wacker Drive. Phone No. − 312−460−5000. Fax No. − 312−460−7000 Filing fee $ 100, receipt number 0090−6040013. Fee Status: Fee Paid. by CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Lorber, Lawrence) (Entered: 04/04/2019) |
| 04/04/2019 | 59 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Richard Lapp, :Firm− Seyfarth Shaw LLP, :Address− 233 S. Wacker Drive. Phone No. − 312−460−5000. Fax No. − 312−460−7000 Filing fee $ 100, receipt number 0090−6040014. Fee Status: Fee Paid. by CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Lorber, Lawrence) (Entered: 04/04/2019) |
| 04/05/2019 | 60 | | RESPONSE re 50 MOTION for Leave to File *Amici Curiae Brief*, 57 MOTION for Leave to File *Amici Curiae Brief* filed by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER. (Attachments: # 1 Exhibit A)(Thurston, Robin) (Entered: 04/05/2019) |
| 04/08/2019 | 61 | | REPLY to opposition to motion re 50 MOTION for Leave to File *Amici Curiae Brief* filed by AMERICAN SOCIETY OF EMPLOYERS, DIRECTEMPLOYERS ASSOCIATION, INC.. (Isler, Edward) (Entered: 04/08/2019) |
| 04/08/2019 | 62 | | RESPONSE re 54 Notice (Other), filed by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER. (Dubner, Jeffrey) (Entered: 04/08/2019) |
| 04/09/2019 | 63 | | REPLY re 54 Notice (Other), filed by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION. (Moore, Tamra) (Entered: 04/09/2019) |
| 04/11/2019 | 64 | | ORDER granting 50 and 57 . The court will hold a Hearing on the parties' Submissions, 54 , 62 and 63 , on April 16, 2019 at 2:00 p.m. See Order for further details and instructions. Signed by Judge Tanya S. Chutkan on 4/11/2019. (lctsc3) (Entered: 04/11/2019) |
| 04/12/2019 | | | Set/Reset Hearings: Hearing on submissions ECF Nos. 54, 62 and 63 now set for 4/16/2019 at 02:00 PM in Courtroom 9 before Judge Tanya S. Chutkan. (tb) (Entered: 04/12/2019) |
| 04/12/2019 | | | MINUTE ORDER: Granting 55 58 59 Motions for Leave to Appear Pro Hac Vice. Camille A. Olson, Annette Tyman, and Richard B. Lapp are hereby |

| | | | |
|---|---|---|---|
| | | | admitted pro hac vice to appear in this matter on behalf of amici Chamber of Commerce of the United States of America, the HR Policy Association, Associated Builders and Contractors, Associated General Contractors of America, the Center for Workplace Compliance, Institute for Workplace Equality, National Association of Manufacturers, National Federation of Independent Business, National Retail Federation, Restaurant Law Center, Retail Litigation Center, Inc., and Society for Human Resources Management. Signed by Judge Tanya S. Chutkan on 4/12/19. (DJS) (Entered: 04/12/2019) |
| 04/12/2019 | | | MINUTE ORDER: Granting 49 Motion for Leave to Appear Pro Hac Vice Jay J. Wang is hereby admitted pro hac vice to appear in this matter on behalf of amici DirectEmployers Association, Inc. and the American Society of Employers. Signed by Judge Tanya S. Chutkan on 4/12/19. (DJS) (Entered: 04/12/2019) |
| 04/15/2019 | 65 | | RESPONSE by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION re 64 Order on Motion for Leave to File,,, (Moore, Tamra) Modified text on 4/16/2019 (ztd). (Entered: 04/15/2019) |
| 04/16/2019 | | | MINUTE ORDER: By 5:00 p.m. on April 22, 2019, the parties may file written summations on the April 16, 2019 Hearing. If a party chooses to file a summation, it shall include a proposed Order and case law supporting its position. Signed by Judge Tanya S. Chutkan on 4/16/2019. (lctsc3) (Entered: 04/16/2019) |
| 04/16/2019 | | | Minute Entry Evidentiary Hearing on the parties' Submissions, 54, 62 and 63 held on 4/16/2019 before Judge Tanya S. Chutkan: Defendant's witness: Samuel Haffer. Arguments heard and taken under advisement. Order to be issued. (Court Reporter Lisa Moreira) (tb) (Entered: 04/17/2019) |
| 04/17/2019 | 66 | | TRANSCRIPT OF HEARING ON SUBMISSIONS before Judge Tanya S. Chutkan held on April 16, 2019; Page Numbers: 1−103. Date of Issuance:April 17, 2019. Court Reporter/Transcriber Lisa A. Moreira RDR, CRR, Telephone number (202) 354−3187, Transcripts may be ordered by submitting the Transcript Order Form  <br><br> For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from t he court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.  <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.  <br><br> Redaction Request due 5/8/2019. Redacted Transcript Deadline set for 5/18/2019. Release of Transcript Restriction set for 7/16/2019.(Moreira, Lisa) |

| | | | |
|---|---|---|---|
| | | | (Entered: 04/17/2019) |
| 04/22/2019 | 67 | | MOTION for Leave to File *Instanter A Summation of the April 16, 2019 Hearing* by CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA (Attachments: # 1 Exhibit Amici Brief, # 2 Text of Proposed Order Proposed Order)(Olson, Camille) (Entered: 04/22/2019) |
| 04/22/2019 | 68 | | NOTICE *of Post−Hearing Summation* by LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL WOMEN'S LAW CENTER (Attachments: # 1 Text of Proposed Order)(Thurston, Robin) (Entered: 04/22/2019) |
| 04/22/2019 | 69 | | NOTICE *of Defendants' Written Summation* by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION re Evidentiary Hearing, (Attachments: # 1 Text of Proposed Order, # 2 Text of Alternative Proposed Order, # 3 Declaration, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(Moore, Tamra) (Entered: 04/22/2019) |
| 04/24/2019 | | | MINUTE ORDER: The Motion for Leave to File of Amici The Chamber of Commerce of the United States of America, et al., 67 is granted to the extent that it summarizes testimony. Signed by Judge Tanya S. Chutkan on 4/24/2019.(lctsc3) (Entered: 04/24/2019) |
| 04/24/2019 | | | MINUTE ORDER: The court will issue its decision orally on April 25, 2019 at 11:00 a.m. Signed by Judge Tanya S. Chutkan on 4/24/2019. (lctsc3) (Entered: 04/24/2019) |
| 04/24/2019 | | | Set/Reset Hearings: Oral ruling set for 4/25/2019 at 11:00 AM in Courtroom 9 before Judge Tanya S. Chutkan. (tb) (Entered: 04/24/2019) |
| 04/25/2019 | | | Minute Entry: Status Conference ( Oral ruling from the bench) held on 4/25/2019 before Judge Tanya S. Chutkan regarding submissions, 54, 62 and 63: Written order forthcoming. (Court Reporter Bryan Wayne) (tb) (Entered: 04/25/2019) |
| 04/25/2019 | 70 | | TRANSCRIPT OF 4/25/19 ORAL RULING before Judge Tanya S. Chutkan held on April 25, 2019 Page Numbers: 1−24. Date of Issuance: 4/25/19. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting Transcript Order Form at www.dcd.uscourt.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (PDF, condensed, CD or ASCII) may be purchased from the court reporter.**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. Redaction Request due 5/16/2019. Redacted Transcript Deadline set for 5/26/2019. Release of Transcript Restriction set for 7/24/2019.(Wayne, Bryan) (Entered: 04/25/2019) |
| 04/25/2019 | 71 | 22 | ORDER following decision announced in court on April 25, 2019. Signed by Judge Tanya S. Chutkan on 4/25/2019. (lctsc3) (Entered: 04/25/2019) |

| 04/26/2019 | | | Set/Reset Deadlines: Status Report due by 5/3/2019 and continuing every 21 days thereafter. (tb) (Entered: 04/26/2019) |
| 05/03/2019 | 72 | 20 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 45 Memorandum & Opinion, 46 Order on Motion for Summary Judgment,, Order on Motion to Dismiss/Lack of Jurisdiction, 71 Order by VICTORIA A. LIPNIC, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, OFFICE OF MANAGEMENT AND BUDGET, JOHN MICHAEL MULVANEY, NEOMI RAO. Fee Status: No Fee Paid. Parties have been notified. (Ricketts, Jennifer) (Entered: 05/03/2019) |
| 05/03/2019 | 73 | | NOTICE of Filing of EEOC Report by VICTORIA A. LIPNIC, JOHN MICHAEL MULVANEY, OFFICE OF MANAGEMENT AND BUDGET, NEOMI RAO, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (Attachments: # 1 Exhibit (EEOC Status Report))(Ricketts, Jennifer) (Entered: 05/03/2019) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL WOMEN'S LAW CENTER, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>OFFICE OF MANAGEMENT AND BUDGET, *et al.*,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 17-cv-2458 (TSC)

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that Defendants, Office of Management and Budget ("OMB"),

Director of OMB, Acting Administrator of the Office of Information and Regulatory Affairs

("OIRA"), United States Equal Opportunity Employment Commission ("EEOC"), and Acting

Chair, EEOC, hereby appeal to the United States Court of Appeals for the District of Columbia

Circuit from the Court's Orders dated March 4, 2019 (ECF No. 45) and April 25, 2019 (ECF No.

71.

Date: May 3, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

*/s/*　　　　　
JENNIFER D. RICKETTS
Branch Director
CARLOTTA WELLS
Assistant Branch Director
TAMRA T. MOORE
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 514-3671

Facsimile: (202) 616-8460
Email: Jennifer.D.Ricketts@usdoj.gov

*Counsel for Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **NATIONAL WOMEN'S LAW CENTER**, *et al.,* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 17-cv-2458 (TSC) |
| **OFFICE OF MANAGEMENT AND BUDGET**, *et al.,* | ) ) ) ) | |
| Defendants. | ) ) ) | |

## ORDER

Based upon the post-summary judgment filings, the March 19, 2019 status conference, the April 16, 2019 hearing, the post-hearing summations, and the entire record herein, and for the reasons stated on the record on April 25, 2019, the court hereby issues the following declaratory and injunctive relief.  It is hereby

**ORDERED** and **DECLARED** that the court's summary judgment opinion and order, ECF Nos. 45, 46, require that Defendant EEOC collect EEO-1 Component 2 pay data for calendar years 2017 and 2018.  It is

**FURTHER ORDERED** that in lieu of collection of Component 2 data for calendar year 2017, EEOC may satisfy the court's Order requiring two years of data by collecting EEO-1 Component 2 data for 2019 during the 2020 EEO-1 reporting period.  If EEOC determines to exercise the option to collect EEO-1 Component 2 data for 2019 instead of 2017, it must notify the court and Plaintiffs of that decision by May 3, 2019.  It is

**FURTHER ORDERED** that Defendant Office of Management and Budget's August 29, 2017 stay of its approval of the revised EEO-1 form tolled the three-year period of that approval for the duration of the stay, which lasted 553 days.  Accordingly, the court **DECLARES** that barring further interruptions of the approval or extensions, the Paperwork Reduction Act approval for the revised EEO-1 form including Component 2 pay data, OMB Control No. 3046-0007, shall expire no later than April 5, 2021.  It is

**FURTHER ORDERED** that EEOC must immediately take all steps necessary to complete the EEO-1 Component 2 data collections for calendar years 2017 and 2018 by September 30, 2019.  If EEOC exercises its option to collect EEO-1 Component 2 data for 2019 in lieu of 2017, that collection must occur in the 2020 EEO-1 reporting period.  It is

**FURTHER ORDERED** that by April 29, 2019, EEOC must issue a statement on its website and submit the same for publication in the Federal Register notifying EEO-1 filers that they should prepare to submit Component 2 data no later than September 30, 2019.  EEOC must alert filers if it has decided by April 29, 2019 whether to collect 2017 or 2019 data.  If EEOC has not decided by April 29, 2019 whether to collect 2017 or 2019 data, it must issue a statement of its decision on its website and submit the same for publication in the Federal Register by May 3, 2019.  At minimum, on April 29, 2019, EEOC must issue a statement on its website and submit the same for publication in the Federal Register notifying EEO-1 filers that they will be submitting 2018 Component 2 data collection for calendar year 2018 no later than September 30, 2019.  It is

**FURTHER ORDERED** that beginning on May 3, 2019 and continuing every 21 days thereafter, EEOC must provide reports to Plaintiffs and the court of all steps taken to implement the EEO-1 Component 2 data collections since the prior report,[1] all steps to be taken during the ensuing three-week period, and indicating whether EEOC is on track to complete the collection(s) by September 30, 2019.  It is

**FURTHER ORDERED** that the EEO-1 Component 2 data collection(s) will not be deemed complete, for the purpose of this Order, until the percentage of EEO-1 reporters that have submitted their required EEO-1 Component 2 reports equals or exceeds the mean percentage of EEO-1 reporters that actually submitted EEO-1 reports in each of the past four reporting years.  It is

**FURTHER ORDERED** that the court will retain jurisdiction over this matter for the purposes of enforcing the March 4, 2019 summary judgment opinion and order as well as this Order.

**SO ORDERED.**


Date:  April 25, 2019


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[1] The May 3, 2019 report shall include notice of all steps taken to implement the EEO-1 Component 2 data collections since March 4, 2019.

Page **2** of **2**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **NATIONAL WOMEN'S LAW CENTER**, *et al.,*   ) | |
|   ) | |
| Plaintiffs,   ) | |
|   ) | |
| v.   ) | Civil Action No. 17-cv-2458 (TSC) |
|   ) | |
| **OFFICE OF MANAGEMENT AND BUDGET**, *et al.,*   ) | |
|   ) | |
| Defendants.   ) | |

### ORDER

Upon consideration of Defendants' Motion to Dismiss, ECF No. 11, Plaintiffs' Motion for Summary Judgment, ECF No. 22, and Defendants' Motion for Summary Judgment, ECF No. 27, and for the reasons set forth in the court's Memorandum Opinion dated March 4, 2019, ECF No. 45, it is hereby

**ORDERED** that Defendants' Motion to Dismiss, ECF No. 11, is **DENIED**.  It is further

**ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 22, is **GRANTED**. It is further

**ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 27, is **DENIED**. It is further

**ORDERED** that OMB's stay of EEOC's revised EEO-1 form and the September 15, 2017 Federal Register Notice (Stay the Effectiveness of the EEO-1 Pay Data Collection, 82 Fed. Reg. 43362) announcing the same are **VACATED**.

Page **1** of **2**

Date:  March 4, 2019

*Tanya S. Chutkan*
_____
TANYA S. CHUTKAN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATIONAL WOMEN'S LAW CENTER, *et al.,*<br><br>    Plaintiffs,<br><br>    v.<br><br>OFFICE OF MANAGEMENT AND BUDGET, *et al.,*<br><br>    Defendants. | Civil Action No. 17-cv-2458 (TSC) |

## MEMORANDUM OPINION

Pending before the court are Defendants' Motion to Dismiss, ECF No. 11; Plaintiffs' Motion for Summary Judgment, ECF No. 22; and Defendants' Motion for Summary Judgment, ECF No. 27. Having reviewed the parties' filings, the record, and the relevant case law, the court, for reasons set forth below, hereby **DENIES** Defendants' Motion to Dismiss, **GRANTS** Plaintiffs' Motion for Summary Judgment, **DENIES** Defendants' Motion for Summary Judgment, and **VACATES** the Office of Management and Budget's stay of the Equal Employment Opportunity Commission's revised EEO-1 form and the September 15, 2017 Federal Register Notice (Stay the Effectiveness of the EEO-1 Pay Data Collection, 82 Fed. Reg. 43362) announcing the same. It is further **ORDERED** that the previous approval of the revised EEO-1 form shall be in effect.

## I.    BACKGROUND

### A.  The Paperwork Reduction Act

The Paperwork Reduction Act of 1995, 44 U.S.C. § 3501 *et seq*. ("PRA"), was established to "minimize the paperwork burden" that the federal government may require "for

1

individuals, small businesses, educational and nonprofit institutions, Federal contractors, State, local and tribal governments, and other persons resulting from the collection of information by or for the Federal Government." 44 U.S.C. § 3501(1). The statute also strives to "improve the quality and use of Federal information to strengthen decisionmaking, accountability, and openness in Government and society." *Id.* § 3501(4).

In striking the balance between minimizing the burden on the public and obtaining useful information for the government, Congress established a procedure in which federal agencies must obtain approval from the Office of Management and Budget ("OMB") to collect certain types of information from the public. Under the PRA, an agency that proposes to collect information first conducts its own "evaluation of the need for the collection of information" and the burden collecting such information would create. *Id.* § 3506(c)(1)(A)(i). Frequently, the agency is also required to publish a "sixty-day notice" in the Federal Register to solicit comments on the agency's proposal. *Id.* § 3506(c)(2)(A). After considering comments and making any revisions, the agency submits the proposed collection of information to OMB and publishes a second Federal Register notice. This notice announces the start of OMB's review and begins a 30-day comment period. *Id.* § 3507(a)-(b). "In [this] notice, the agency must set forth (1) a title for the collection of information, (2) a summary of the collection of information, (3) a brief description of the need for the information and the proposed use of the information, (4) a description of the likely respondents and proposed frequency of response to the collection of information, and (5) an estimate of the burden that shall result from the collection of information." *United to Protect Democracy v. Presidential Advisory Comm'n on Election Integrity*, 288 F. Supp. 3d 99, 102 (D.D.C. 2017) (citing 44 U.S.C. § 3507(a)(1)(D)(ii)(I)-(V)).

2

OMB may not act on the agency's request until after the comment period has closed.  44 U.S.C. § 3507(b).

Upon completion of its review, OMB, through the Office of Information and Regulatory Affairs ("OIRA"), makes one of three determinations: it (1) approves the collection of information; (2) disapproves the collection of information; or (3) instructs the agency to make changes to the collection of information.  *Id.* § 3507(c)(1), (e)(1).  Before approving a proposed collection, OMB must "determine whether the collection of information by the agency is necessary for the proper performance of the functions of the agency, including whether the information shall have practical utility."  *Id.* § 3508.  Once OMB grants approval, the agency may proceed with its collection, and OMB issues a control number that must be displayed on the collection-of-information form.  *Id.* § 3507(a)(2), (3).  An OMB approval is for three years, after which the agency must seek an extension from OMB.  *Id.* §§ 3507(g), (h)(1).

At any point before the approval period expires, OMB "may decide on its own initiative, after consultation with the agency, to review the collection of information."  5 C.F.R. § 1320.10(f).  This review can be started only "when relevant circumstances have changed or the burden estimates provided by the agency at the time of initial submission were materially in error."  *Id.*  OMB may also stay the prior approval of a collection of information not contained in a current rule, but only for "good cause."  *Id.* § 1320.10(g).

## B.  The EEO-1

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, employers are required to "make and keep such records relevant to the determination[] of whether unlawful employment practices have been or are being committed, . . . preserve such records" and produce reports as mandated by EEOC.  42 U.S.C. § 2000e-8(c)(1)-(3).  Since

3

1966, EEOC has required that employers with one hundred or more employees file with EEOC

the "Employer Information Report EEO-1" ("EEO-1").  29 C.F.R. § 1602.7.[1]  The EEO-1

requires employers to report the number of individuals employed by job category, sex, race, and

ethnicity.  Agency Information Collection Activities: Revision of the Employer Information

Report (EEO-1) and Comment Request, 81 Fed. Reg. 5113 (Feb. 1, 2016) ("Sixty-Day Notice").

EEOC makes aggregate EEO-1 information for major geographic areas and industry groups

publicly available on an annual basis.  Compl. ¶ 59.

### C.  Revision of EEO-1 – Component 2

In 2010, the EEOC "joined other federal agencies . . . to identify ways to improve

enforcement of federal laws prohibiting pay discrimination."  81 Fed. Reg. at 5114.

Subsequently, the EEOC "commissioned a study, and the NAS [National Academy of Sciences]

convened a Panel on Measuring and Collecting Pay Information from U.S. Employers by

Gender, Race, and National Origin."  *Id.*  NAS issued a report which "recognized the potential

value for enforcement of collecting pay data from employers by sex, race, and national origin

through a survey such as the EEO-1, and emphasized the importance of a definitive plan for how

the data would be used in coordination with other equal employment opportunity (EEO)

enforcement agencies."  *Id.*  NAS also "recommended that the EEOC conduct a pilot to inform

the parameters for any pay data collection."  *Id.* (footnote omitted).  Following NAS's

recommendation, "EEOC commissioned an independent Pilot Study to identify the most efficient

means to collect pay data."  *Id.*  The Pilot Study "made technical recommendations about several

central components of a data collection, including: The unit of pay to be collected; the best

---

[1] Certain federal contractors and subcontractors with more than fifty employees are also subject
to this requirement, which is enforced by the U.S. Department of Labor Office of Federal
Contract Compliance Programs ("OFCCP").  41 C.F.R. § 60-1.7(a).

summary measures of central tendency and dispersion for rates of pay; appropriate statistical

test(s) for analyzing pay data; and the most efficient and least costly methods for transmitting

pay data from employers." *Id.* It "also estimated employer burden-hour costs and the processing

costs associated with the recommended method of collection." *Id.*

In 2012, the EEOC held a two-day meeting with "employer representatives, statisticians,

human resources information systems (HRIS) experts, and information technology

specialists (work group)." *Id.* at 5114-15. This group "reviewed the current data collection

procedures, provided feedback on future modernization of the EEO surveys, and engaged in

brainstorming that led to ideas submitted individually by group participants on a number of

topics, including collecting pay data as well as multiple-race category data on the EEO-1." *Id.* at

5115. The report from this group "reflect[ed] feedback from participants that the burden of

reporting pay data would be minimal for EEO-1 filers." *Id.*

On February 1, 2016, following this interagency process, EEOC, in accordance with the

PRA, published a Federal Register notice announcing its intention to seek a three-year approval

from OMB of "a revised Employer Information Report (EEO-1) data collection." 81 Fed. Reg.

at 5113. The notice explained that the "revised data collection has two components. Component

1 collects the same data that is gathered by the currently approved EEO-1: Specifically, data

about employees' ethnicity, race, and sex, by job category. Component 2 collects data on

employees' W-2 earnings and hours worked, which EEO-1 filers already maintain in the ordinary

course of business." *Id.* EEOC proposed "collect[ing] aggregate W-2 data in 12 pay bands for

the 10 EEO-1 job categories." *Id.* at 5117. The notice provided a weblink to a sample data

collection form. *Id.* at 5118 ("An illustration of the data to be collected by both Components 1

and 2 can be found at [link].").[2]  The notice also anticipated that employers would provide the information either through online filing or by uploading an electronic file.  *Id.* at 5120.  EEOC estimated that the new pay data collection would increase the reporting time per filer by 3.4 hours.  *Id.* at 5119.  On March 16, 2016, EEOC held a public hearing on its proposed pay data collection.  Agency Information Collection Activities; Notice of Submission for OMB Review, Final Comment Request: Revision of the Employer Information Report (EEO-1), 81 Fed. Reg. 45479, 45480 (July 14, 2016).

On July 14, 2016, EEOC published a second Federal Register notice ("Thirty-Day Notice") seeking a three-year approval from OMB of a revised EEO-1 data collection.  81 Fed. Reg. 45479.  This notice explained that EEOC had to revise the EEO-1 for the enforcement of equal pay laws.  *Id.* at 45481-83.  EEOC intended to maintain its earlier "proposal to collect W-2 income and hours-worked data in the twelve pay bands . . . for each of the 10 EEO-1 job categories."  *Id.* at 45489.  The filings of EEO-1 reports would be done "either by digital upload or by data entry onto a password-protected, partially pre-populated digital EEO-1."  *Id.* at 45493.  For those employers who filed through data uploads, EEOC would post online the new data file specifications "for Components 1 and 2 of the modified EEO-1 as soon as OMB approve[d] the information collection."  *Id.* at 45487.  EEOC further explained that "[t]he EEO-1 data file specifications will be for data uploads (submitting EEO-1 data in one digital file), but they also will describe the formatting of data for direct data entry onto the firm's secure EEO-1 account with the Joint Reporting Committee."  *Id.*  "For reference," EEOC provided a link to a website with the then-current EEO-1 data file specifications.  *Id.*  EEOC estimated that the addition of Component 2 would increase the filing cost for each EEO-1 filed by $416.58.  *Id.* at 45493-94.

---

[2] This webpage is no longer active.  Decl. of Benjamin Link ¶ 3, ECF No. 22-2.

The collection of pay data would begin with the 2017 reporting cycle, and EEO-1 respondents would be required to submit their reports by March 31, 2018.  *Id.* at 45484.  On September 28, 2016, EEOC provided its Final Supporting Statement for the EEO-1 report to OMB for review.  Link Decl. ¶ 12, Ex. I.  OMB approved the proposed collection on September 29, 2016 and issued an OMB control number for the revised EEO-1.  *Id.* ¶ 11, Ex. H.

EEOC subsequently released an instruction booklet for the March 2018 EEO-1 survey, along with information about the revised EEO-1, including data file specifications for employers who planned to file through data upload.  *Id.* ¶¶ 5, 6.  The data file specifications included a sample EEO-1 form for pay data collection and a "data file layout" form.  *Id.* ¶ 5.  The data file layout form was a spreadsheet with instructions for formatting pay data submissions to EEOC.  *Id.* ¶ 7, Ex. D.

### D. OMB's Decision to Review and Stay Component 2

Just under a year after OMB approved the data collection, on August 29, 2017, Neomi Rao, the OIRA Administrator, sent a memorandum to Victoria Lipnic, the Acting Chair of the EEOC, stating that OMB had decided to initiate a review and stay of EEOC's new collection of pay data under Component 2.  In support of this decision, the memorandum stated in pertinent part:

> The PRA authorizes the Director of OMB to determine the length of approvals of collections of information and to determine whether collections of information initially meet and continue to meet the standards of the PRA.  In this context, under 5 CFR 1320.10(f) and (g), OMB may review an approved collection of information if OMB determines that the relevant circumstances related to the collection have changed and/or that the burden estimates provided by EEOC at the time of initial submission were materially in error.  OMB has determined that each of these conditions for review has been met.  For example, since approving the revised EEO-1 form on September 29, 2016, OMB understands that EEOC has released data file specifications for employers to use in submitting EEO-1 data.  These specifications were not contained in the Federal Register notices as part of the public comment process nor were they outlined in the supporting

7

statement for the collection of information. As a result, the public did not receive an opportunity to provide comment on the method of data submission to EEOC. In addition, EEOC's burden estimates did not account for the use of these particular data file specifications, which may have changed the initial burden estimate.

OMB has also decided to stay immediately the effectiveness of the revised aspects of the EEO-1 form for good cause, as we believe that continued collection of this information is contrary to the standards of the PRA. Among other things, OMB is concerned that some aspects of the revised collection of information lack practical utility, are unnecessarily burdensome, and do not adequately address privacy and confidentiality issues.

Memorandum from Neomi Rao, Adm'r, OIRA, to Victoria Lipnic, Acting Chair, EEOC (Aug. 29, 2017); JA020, ECF No. 44 ("Rao Memorandum").

The memorandum further directed EEOC to publish a notice in the Federal Register "announcing the immediate stay of effectiveness of the" pay data collection but "confirming that businesses may use the previously approved EEO-1 form in order to comply with their report obligations for FY 2017." *Id.* EEOC published this notice on September 15, 2017. Stay the Effectiveness of the EEO-1 Pay Data Collection, 82 Fed. Reg. 43362 (Sept. 15, 2017).

This stay remains in effect nearly a year and a half later.

### E. Plaintiffs' Lawsuit

Plaintiff National Women's Law Center ("NWLC") is "a 46-year-old nonpartisan, nonprofit organization that advocates for the rights of women and girls at school, at work, at home, and in their communities." Johnson Decl. ¶ 3. "[C]losing the gender wage gap, and in particular the race and gender wage gaps experienced by women of color," is "[o]ne of NWLC's primary and longstanding priorities." *Id.* ¶ 4. As part of its mission, NWLC strives to "educate employers, the public, and policymakers about race and gender wage gaps," *id.* ¶ 5, and "has published numerous analyses and reports about workplace pay disparities." *Id.* Many of these reports "cite data on pay inequality across a number of factors and reflect time-consuming analysis of Bureau of Labor Statistics and Census data undertaken by NWLC staff." *Id.*

8

Plaintiff Labor Council for Latin American Advancement ("LCLAA") is "a national 501(c)(3) representing the interests of approximately 2 million Latino/a trade unionists throughout the United States and Puerto Rico, as well as other non-unionized Latino workers," and "has 52 chapters around the country." Sanchez Decl. ¶ 3. LCLAA's "mission is to assist workers to advance their rights in their workplace and convince employers to take steps to improve working conditions, both through advocacy and through training and counseling workers and union members." *Id.* ¶ 4. Recently, "[c]losing the pay gap has been an increasing focus of LCLAA's work." *Id.* ¶ 5. For example, in 2012 "LCLAA created the Trabajadoras Initiative which specifically seeks to protect and advance the interests of Latina workers on issues that impact them, including seeking to eradicate the persistent pay gap." *Id.* ¶ 6. LCLAA's activities include educating its members, chapter presidents, and the public about the pay gap. *Id.* ¶¶ 7, 8. Starting in 2016, LCLAA has "host[ed] an annual National Latina Equal Pay Summit, which provides information, education and solutions to closing the pay gap." *Id.* ¶ 8. Moreover, as part of its education efforts, "LCLAA periodically issues reports . . . about the challenges encountered by Latinos and Latinas in the workforce. The reports discuss data compiled and published by the Government on income and employment—including EEO-I data. LCLAA uses these reports in advocating for policy change and enforcement of equal pay laws, and in educating its members on ways to negotiate with employers and encourage them to follow practices that reduce workforce discrimination." *Id.* ¶ 9.

On November 15, 2017, two months after the Rao Memorandum and the subsequent notice in the Federal Register staying the effectiveness of the EEO-1 pay data collection, Plaintiffs sued, naming as defendants: OMB; John Michael Mulvaney, Director of OMB; Neomi Rao, Administrator of OIRA; EEOC; and Victoria A. Lipnic, Acting Chair of EEOC. Plaintiffs

9

ask this court to: 1) declare that OMB Defendants violated the PRA and Administrative Procedure Act ("APA") and exceeded their statutory authority in reviewing and staying the collection of pay data as part of the EEO-1; 2) declare that the stay announced in the Rao Memorandum and the September 15, 2017 Federal Register notice was a nullity, and that the revised EEO-1 remains in effect; 3) vacate the stay and reinstate the revised EEO-1 reporting requirements; 4) order EEOC Defendants to publish a Federal Register notice announcing this reinstatement or take equivalent action necessary to immediately reinstate the pay data collection; 5) award Plaintiffs their costs, reasonable attorneys' fees, and other disbursements incurred in this action; and 6) grant such other relief as the court may deem just and proper. Compl. at 34-35.

NWLC claims, among other injuries, that if OMB had not stayed the pay data collection NWLC "would have been able to make its reports and advocacy more robust with additional data and analysis." Johnson Decl. ¶ 6. Possession of the aggregate EEO-1 pay data would allow NWLC to "focus its resources, analysis, and advocacy on the jobs, industries, and regions where intervention is most urgent." *Id.* ¶ 7. LCLAA similarly claims injury from OMB's decision to stay the pay data collection. With the information that otherwise would have been collected, LCLAA would "have presented statistics on pay equity within industries and across the nation, based on this data. This information would have materially improved LCLAA's and its members' ability to negotiate with and educate employers and to fulfill LCLAA's mission of improving the condition of Latinos and Latinas in the workforce." Sanchez Decl. ¶ 11.

Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), on the grounds that Plaintiffs lack standing, and pursuant to Federal Rule of Civil Procedure

12(b)(6), because Plaintiffs have not challenged a final agency action. Both sides have moved

for summary judgment.

## II.    MOTION TO DISMISS

### A. Legal Standard

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) "presents a threshold

challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).

"[T]he core component of standing is an essential and unchanging part of the case-or-

controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

The plaintiff bears the burden of establishing the elements of standing, *id.* at 561, and each

element "must be supported in the same way as any other matter on which the plaintiff bears the

burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of

the litigation." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Lujan*, 504 U.S. at

561). The plaintiff must "show a 'substantial probability' that it has been injured, that the

defendant caused its injury, and that the court could redress that injury." *Sierra Club v. EPA*,

292 F.3d 895, 899 (D.C. Cir. 2002) (citation omitted). With respect to a facial 12(b)(1) motion

to dismiss, the court must "accept the well-pleaded factual allegations as true and draw all

reasonable inferences from those allegations in the plaintiff's favor." *Arpaio*, 797 F.3d at 19. At

the summary judgment stage, the plaintiff "must support each element of its claim to standing by

affidavit or other evidence." *Scenic Am., Inc. v. U.S. Dep't of Transp.*, 836 F.3d 42, 48 n.2 (D.C.

Cir. 2016) (quotation marks and citation omitted).

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation

11

omitted).  However, a court "is not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks and citation omitted).

### B.  Informational and Organizational Standing

Because Plaintiffs are two organizations seeking to sue on their own behalf, i.e., seeking organizational standing, "like an individual plaintiff" they must show "[1] actual or threatened injury in fact [2] that is fairly traceable to the alleged illegal action and [3] likely to be redressed by a favorable court decision."  *People for the Ethical Treatment of Animals v. USDA* ("*PETA*"), 797 F.3d 1087, 1093 (D.C. Cir. 2015) (quotation marks and citation omitted).

#### 1.  Informational Standing

Although both plaintiffs base their claim of injury on the loss of information that Component 2 would have provided, both nevertheless lack so-called "informational standing." The D.C. Circuit has been clear that to demonstrate informational standing, a plaintiff must show that "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure."  *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016) (citation omitted).  It is undisputed that Plaintiffs here do not have a statutory right to the information they allege forms their injury in fact.  Therefore, any claim to informational standing "fails at the first part of the inquiry, the *sine qua non* of informational injury."  *Id.*

#### 2.  Organizational Standing

Whether Plaintiffs' loss of information can also serve as an injury in fact as a component of organizational standing, however, presents a more complicated question.  While the D.C.

Circuit has provided some conflicting guidance, this court concludes that under binding

precedent, in particular *PETA* and *Action Alliance of Senior Citizens of Greater Philadelphia v.*

*Heckler*, 789 F.2d 931 (D.C. Cir. 1986), Plaintiffs have demonstrated organizational standing.

The Supreme Court has said that "the injury-in-fact requirement requires a plaintiff to

allege an injury that is both concrete *and* particularized." *Spokeo, Inc. v. Robins*, 136 S. Ct.

1540, 1545 (2016) (quotation marks and citation omitted) (emphasis in original). "A

particularized injury is personal, individual, distinct, and differentiated—not generalized or

undifferentiated. An actual or imminent injury is certainly impending and immediate—not

remote, speculative, conjectural, or hypothetical." *Food & Water Watch, Inc. v. Vilsack*, 808

F.3d 905, 914 (D.C. Cir. 2015) (quotation marks and citation omitted). Plaintiffs must show that

they have "suffered a concrete and demonstrable injury to [their] activities." *Id.* at 919

(quotation marks and citation omitted).

In order to determine whether an organization has suffered an injury in fact, courts

conduct a "two-part inquiry— we ask, first, whether the agency's action or omission to act

injured the [organization's] interest and, second, whether the organization used its resources to

counteract that harm." *Id.* (quotation marks and citation omitted) (alteration in original).

In *Action Alliance*, plaintiffs were "four organizations that endeavor[ed], through

informational, counseling, referral, and other services, to improve the lives of elderly citizens."

789 F.2d at 935. They sued the Department of Health and Human Services ("HHS"), alleging

that HHS's regulation "significantly restrict[ed]" the flow of "information regarding services

available to the elderly" that, if possessed by plaintiffs, "would enhance [their] capacity . . . to

refer members to appropriate services and to counsel members when unlawful age discrimination

may have figured in a benefit denial." *Id.* at 937. The D.C. Circuit found that the plaintiffs

13

established standing, because the regulations kept plaintiffs from "access to information and avenues of redress they wish[ed] to use in their routine information-dispensing, counseling, and referral activities.  Unlike the mere 'interest in a problem' or ideological injury in *Sierra Club* [*v. Morton*, 405 U.S. 727, 735, 739 (1972)]," plaintiffs had "alleged inhibition of their daily operations, an injury both concrete and specific to the work in which they [were] engaged." *Action Alliance*, 789 F.2d at 937-38 (quotation marks omitted) (footnote omitted).

In *PETA*, plaintiff, an animal rights organization, sued the USDA and requested that the court order USDA to "extend enforcement of the AWA [Animal Welfare Act] to birds covered by the AWA, by enforcing the general AWA standards that presently exist."  797 F.3d at 1091 (quotation marks omitted) (footnote omitted).  PETA claimed that USDA's failure to investigate allegations of bird mistreatment denied the public reports of those alleged instances, and that it used the information in the reports to educate its members and the public.  *Id.* at 1095-96.  The district court found that PETA had standing because USDA's decision not to apply the AWA to birds "precluded PETA from preventing cruelty to and inhumane treatment of these animals through its normal process of submitting USDA complaints and it deprived PETA of key information that it relies on to educate the public."  *Id.* at 1094 (quotation marks and citation omitted).  The D.C. Circuit affirmed, noting that "[t]he key issue is whether PETA has suffered a concrete and demonstrable injury to [its] activities, mindful that, under our precedent, a mere setback to [PETA's] abstract social interests is not sufficient."  *Id.* at 1093 (second alteration in original) (quotation marks and citations omitted).  The Court explained that in determining "whether an organization's injury is concrete and demonstrable," a court asks "first, whether the agency's action or omission to act injured the [organization's] interest and, second, whether the organization used its resources to counteract that harm."  *Id.* at 1094 (alteration in original)

14

(quotation marks and citations omitted). Applying these standards, the Court found that PETA's alleged injuries were "materially indistinguishable from those alleged by the organizations in *Action Alliance*." *Id.* at 1094. It held that the "USDA's allegedly unlawful failure to apply the AWA's general animal welfare regulations to birds has perceptibly impaired PETA's ability to both bring AWA violations to the attention of the agency charged with preventing avian cruelty and continue to educate the public." *Id.* at 1095 (quotation marks and brackets omitted). Because PETA expended resources to counters its injuries, it established organization standing. *Id.* Significantly, plaintiffs did not allege a statutory right to the information. *See id.* at 1103 (Millett, J., concurring dubitante) ("Even as alleged by PETA, there is no suggestion that anything in the Animal Welfare Act or any regulation gives PETA any legal *right* to such information or reports.") (emphasis in original).

Under *Action Alliance* and *PETA*, Plaintiffs have demonstrated an injury in fact. First, they have shown that the loss of pay data caused a "concrete and demonstrable injury" that is "more than simply a setback to [their] abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). As part of its mission to eradicate the gender wage gap, NWLC seeks to educate the public by publishing analyses and reports about workplace pay disparities. Johnson Decl. ¶ 4. When NWLC became aware that EEOC was planning to publish the pay data based on the revised EEO-1, it determined that this data could have revealed new information about the race and gender gaps. *Id.* ¶ 6. This information would have made NWLC's reports and advocacy more robust because they would have additional data and analysis. *Id.* The aggregate EEO-1 pay data would have enabled NWLC to focus its efforts where intervention was most urgent. *Id.* ¶ 7. With respect to NWLC's efforts to enforce and redress workplace discrimination, NWLC's pro bono representation would have benefited from

15

the EEO-1 pay data collection. *Id.* ¶ 8. With the aggregate pay data, NWLC would more easily

have been able to evaluate clients' claims. *Id.* ¶ 9. When representing their clients before the

EEOC and in courts, the NWLC "bear[s] the costs of amassing evidence about internal pay

inequities and comparators' pay practices to obtain redress." *Id.* ¶ 10. This evidence, the NWLC

represents, may help persuade EEOC to act or prove claims to a court or jury. *Id.* Finally, the

aggregate employee pay data would reduce NWLC's costs when representing clients "in the

EEOC charge process and beyond." *Id.* ¶ 11.

Similarly, as part of its advocacy and educational work, Plaintiff LCLAA issues reports

"about the challenges encountered by Latinos and Latinas in the workforce." Sanchez Decl. ¶ 9.

LCLAA would have used the EEO-1 aggregate pay data to present "statistics on pay equity

within industries and across the nation, based on this data. This information would have

materially improved LCLAA's and its members' ability to negotiate with and educate employers

and to fulfill LCLAAs mission of improving the condition of Latinos and Latinas in the

workforce." *Id.* ¶ 11.

Plaintiffs' declarations establish that NWLC and LCLAA would have used the EEOC

pay data to advance their missions by using the data in their publications and as part of their

public education and advocacy campaigns. The loss of the pay data constitutes the type of

informational harm the D.C. Circuit has found to be "both concrete and specific to the work in

which [these organizations] are engaged." *PETA*, 797 F.3d at 1095 (quotation marks and citation

omitted); *see id.* at 1094 (stating that the government "deprived PETA of key information that it

relies on to educate the public") (quotation marks and citation omitted); *Action Alliance*, 789

F.2d at 937-38 (noting that "the challenged regulations denied plaintiffs access to information

16

and avenues of redress they wish to use in their routine information-dispensing, counseling, and referral activities").

Second, Plaintiffs have shown that they have used their resources to "counteract [the] harm" caused by the stay of the data collection. *Food & Water Watch, Inc.*, 808 F.3d at 919 (citation omitted). After OMB stayed the data collection, NWLC "expended funding and staff time that would have been unnecessary absent the stay." Johnson Decl. ¶ 12. These additional expenditures included "time to engage with employers to encourage voluntary compliance with equal pay laws and changes in compensation practices and policies" and "voluntary self-audits of pay practices and internal wage gaps, in order to compensate for the self-evaluation of internal wage gaps that the EEO-1 pay data collection would have required employers to undertake." *Id.* ¶ 12. Moreover, "in order to meet the objective of improved enforcement of pay discrimination law and increased self-evaluation by employers of their own practices, NWLC has expended and will expend funding and staff time" on tasks that it is "compelled" to take in pursuit of "its mission of eradicating the pay gap." *Id.* ¶¶ 13, 14. These tasks require NWLC staff to "create model state and/or local pay data collection legislation; create educational materials setting out the need for such pay data collection and the interests it serves; build coalition and grassroots support in targets states and/or localities for these measures; and advocate at the state and local level for adoption and implementation of such legislation." *Id.* ¶ 13. These and similar endeavors have forced NWLC staff members to divert time from their daily operations. *Id.* ¶ 15.

LCLAA states that "[t]o replicate the same information LCLAA would obtain from the revised EEO-l, LCLAA would have to convince thousands of employers to voluntarily provide data and then employ statisticians to analyze the resulting raw data—efforts that would require enormous expense and *still* likely be unsuccessful, given LCLAA's inability to require

employers to comply." Sanchez Decl. ¶ 12 (emphasis in original). LCLAA further represents

that "any attempt to compile such data would almost certainly underreport pay inequities,

because employers with significant disparities would be particularly unlikely to provide data

voluntarily." *Id.* Because of the stay, LCLAA is considering whether to use a "very costly"

survey of workers to obtain the information it otherwise would have had. *Id.* ¶ 13. The stay also

"forced LCLAA to redeploy its limited staff resources away from their daily operations." *Id.*

¶ 14. For example, LCLAA had planned to have staff work on educational materials related to

the North American Free Trade Agreement and its impact for Latino/a workers—an initiative

that "is a core and common part of LCLAA's daily operations"—but it could not do so because it

had to redeploy its resources to working on obtaining the information that it likely would have

received but for OMB's decision to stay the data collection. *Id.* ¶ 16.

        The court must next determine whether Defendants caused Plaintiffs' injuries and

whether they can be redressed by a favorable court decision. To establish causation, Plaintiffs

must show "a causal connection between the injury and the conduct complained of—the injury

has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of]

the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504

U.S. 555, 560 (1992) (quotation marks and citation omitted) (alterations in original).

"Redressability examines whether the relief sought, assuming that the court chooses to grant it,

will likely alleviate the particularized injury alleged by the plaintiff." *West v. Lynch*, 845 F.3d

1228, 1235 (D.C. Cir. 2017) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C.

Cir. 1996) (en banc) (footnote omitted)). Standing is "substantially more difficult to establish,"

because Plaintiffs are not the object of the government action. *Lujan*, 504 U.S. at 562 (quotation

marks and citation omitted). "If the challenged conduct is at best an indirect or contributing

18

cause of the plaintiff's injury—*i.e.*, if the injury may or may not follow from the conduct, based on a chain of contingencies—the plaintiff faces an uphill climb in pleading and proving redressability." *West*, 845 F.3d at 1235–36 (quotation marks and citation omitted). Thus, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (quotation marks and citations omitted).

The government does not challenge the proposition that, but for OMB's stay of the data collection, EEOC would have collected the Component 2 pay data. Therefore, the key issue with respect to causation and redressability is whether Plaintiffs have shown that EEOC likely would have publicly published the aggregate pay data collected from Component 2.

EEOC has discretion whether to publicly report the Component 2 pay data. Therefore, this court pays particular attention to EEOC's statements about its intention to publicly publish this information. In its Thirty-Day Notice, EEOC said: "Using aggregated EEO-1 data, Census data, and potentially other data sources, the EEOC *expects* to periodically publish reports on pay disparities by race, sex, industry, occupational groupings, and Metropolitan Statistical Area (MSA)." 81 Fed. Reg. at 45491 (emphasis added).

Based on EEOC's statement that it "expects to periodically publish reports" based on the aggregated EEO-1 date—a declaration that EEOC has never repudiated—the court finds that EEOC likely would have published the information and made it available to the Plaintiffs. Moreover, EEOC explained how publishing the information would be useful: "Particularly after a few years of data collection, these reports will provide useful comparative data. For smaller employers and others that do not hire consultants to analyze their compensation structures, these reports will be especially informative in light of the business case for equal pay and the need to comply with state equal pay laws." 81 Fed. Reg. at 45491. The court has no reason not to take

19

the government at its word. *Cf. Wheaton Coll. v. Sebelius*, 703 F.3d 551, 552 (D.C. Cir. 2012)

("We take the government at its word and will hold it to it.").[3]  Therefore, the court finds that

Plaintiffs have demonstrated causation and redressability.

There is some uncertainty about whether an informational injury can exist in the absence

of a statutory or regulatory right to the information.  Judge Millett expressed this doubt in *PETA*,

even as she recognized that "the majority opinion hew[ed] faithfully to precedential lines" in

finding standing where the plaintiffs lacked any statutory or regulatory right to the information.

*PETA*, 797 F.3d at 1099 (Millett, J., concurring dubitante).  In Judge Millett's view, finding

injury in fact where plaintiffs seek information unconnected to the exercise of a right conferred

by statute is "tantamount to recognizing a justiciable interest in the enforcement of the law."  *Id.*

at 1106 (quotations marks and citation omitted); *see also Food & Water Watch, Inc.*, 808 F.3d at

926 (D.C. Cir. 2015) (Millett J., concurring) ("Because the majority opinion properly applies our

precedent to keep a bad jurisprudential situation from getting worse, I concur.  But I continue to

believe that our organizational standing doctrine should be revisited in an appropriate case.").

In a difference concurrence, Judge Williams questioned whether informational injury and

organizational injury should be viewed as separate categories:  "[O]rganizational standing is

merely the label assigned to the *capacity* in which the organization contends it has been harmed;

it is not a separate *type* of injury."  *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on

Election Integrity*, 878 F.3d 371, 381 (D.C. Cir. 2017) (Williams, J., concurring) (emphasis in

original) ("*EPIC*").

---

[3] Plaintiffs note that EEOC's expressed intention to publish reports is consistent with its
"historical practice of publishing annual reports based on aggregate EE0-1 data, in addition to
periodic industry specific reports."  Pls.' Opp. to Defs.' Mot. to Dismiss at 34, ECF No. 16
(citing EEOC, Job Patterns for Minorities and Women in Private Industry (EEO-1),
https://www.eeoc.gov/eeoc/statistics/employment/jobpat-eeo1/index.cfm).

Other cases have indicated that the Court intends for informational and organizational standing to continue to be viewed as distinct categories. *See Friends of Animals v. Jewell*, 828 F.3d 989, 994 (D.C. Cir. 2016) (criticizing the Sixth Circuit for conflating informational and organizational standing). Some, however, point in a different direction. *See EPIC*, 878 F.3d at 377 ("We conclude that EPIC lacks standing to obtain such relief because it has suffered no cognizable informational or organizational injury. We analyze and reject those two asserted types of injury in turn without necessarily agreeing that they are in fact analytically separate here."). Nonetheless, *Action Alliance* and *PETA* have not been overruled and remain binding on this court.

The government advances numerous arguments why Plaintiffs have not established organizational standing. All are unavailing. First, the government argues that the D.C. Circuit's decision in *EPIC* means that if an organization lacks informational standing it must also lack organizational standing. But *EPIC* could not and does not purport to overrule *Action Alliance* and *PETA*. *See General Comm. of Adjustment, GO–386 v. Burlington Northern & Santa Fe Ry. Co.*, 295 F.3d 1337, 1340 (D.C. Cir. 2002) (explaining that Circuit precedent "binds us, unless and until overturned by the court en banc or by Higher Authority") (quotation marks and citation omitted). Moreover, as indicated above, *EPIC* did not hold that informational and organizational standing are the same thing. *EPIC*, 878 F.3d at 377. *EPIC* did not make a statutory right to withheld information a necessary condition for both informational *and* organizational standing. Moreover, its analysis in rejecting standing was more nuanced than the government suggests.

In *EPIC*, plaintiff was "a nonprofit organization whose stated mission [was] to focus public attention on emerging privacy and civil liberties issues." *Id.* at 374 (quotation marks omitted). EPIC sought an injunction under the APA requiring the Presidential Advisory

21

Commission on Election Integrity to undertake privacy assessment review pursuant to the E-Government Act of 2002 before collecting voter data information. *Id.* EPIC based its claims of both information and organizational standing on the lack of access to these privacy assessments. *Id.* at 377. The D.C. Circuit found that EPIC lacked informational standing because the statute was designed to protect individuals' privacy rights, and therefore EPIC as an organization had no cognizable interest in the privacy assessment reviews. *Id.* at 378 ("As we read it, the provision is intended to protect *individuals*—in the present context, voters—by requiring an agency to fully consider their privacy before collecting their personal information. EPIC is not a voter and is therefore not the type of plaintiff the Congress had in mind.") (emphasis in original). The D.C. Circuit then found a lack of organizational injury because without a cognizable interest in the information, EPIC could not show that its efforts to obtain the information were not entirely discretionary budgetary choices. *Id.* at 378-79.

In contrast, this court has already found that both NWLC and LCLAA expended resources because of the government's refusal to collect and disseminate the Component 2 information. And, unlike in *EPIC*, Plaintiffs have sought information that is designed to protect far more than individuals' privacy rights.

The government further argues that *PETA* is inapplicable based on the Court's decision in *Food & Water Watch, Inc.* Defs.' Reply in Supp. of Mot. to Dismiss at 5, ECF No. 18. However, in that case, the D.C. Circuit described *PETA* as "instructive" in explaining why plaintiffs lacked standing. 808 F.3d at 920. The plaintiffs in *Food & Water Watch, Inc.* challenged a new USDA regulation, claiming that it would lead to an increase in foodborne illness from contaminated poultry—a claim that the D.C. Circuit found to be unsubstantiated. The organizational plaintiff also claimed standing because it would have to spend resources

22

educating the public about the fact that the new regulations did not sufficiently protect the public from unsafe poultry. *Id.* In *PETA*, the D.C. Circuit explained, because USDA did not apply animal welfare requirements to birds, it did not generate inspection reports. *Id.* This "denial of information perceptibly impaired" PETA's ability to bring statutory violations to USDA's attention and to continue to educate the public. *Id.* at 920-21 (quotation mark and citation omitted). In contrast, the organizational plaintiff in *Food & Water Watch, Inc.* could not "allege that the USDA's action restricts the flow of information that FWW uses to educate its members." *Id.* at 921. Thus, *Food & Water Watch, Inc.* does not advance the government's argument here, because as in *PETA,* Plaintiffs NWLC and LCLAA have shown that the stay of EEOC's data collection deprives them of information that they use to educate their members and the public.

The government further contends that it could not have caused Plaintiffs to incur costs "because the EEOC has never before collected Component 2 pay data, let alone provided aggregate pay data to the public." Defs.' Mot. to Dismiss at 16, ECF No. 11. Therefore, the government argues, "OMB's decision to initiate a review and stay of the same before covered employers ever submitted such data simply maintains the status quo." *Id.* Here, Defendants misunderstand the law. "[T]he baseline for measuring the impact of a change or rescission of a final rule is the requirements of the rule itself, not the world as it would have been had the rule never been promulgated." *Air All. Hous. v. EPA*, 906 F.3d 1049, 1068 (D.C. Cir. 2018). The government's argument is also inconsistent with both *PETA* and *Action Alliance*, where the Court of Appeals found injury in fact even though plaintiffs claimed an entitlement to information to which they previously did not have access. *See PETA*, 797 F.3d at 1089 ("Although the Agency has taken steps to craft avian-specific animal welfare regulations, it has yet to complete its task after more than ten years and, during the intervening time, it has

23

allegedly not applied the Act's general animal welfare regulations to birds."); *Action Alliance*, 789 F.2d at 937 (plaintiffs challenging a new Department of Health and Human Services regulation).

The government advances a new standing argument in its Motion for Summary Judgment, asserting that "Plaintiffs lack standing to challenge a decision rendered in the context of an informal adjudication to which they are not a party." Defs.' Opp. to Pls.' Mot. for Summ. J. and Mot. for Summ. J. at 16, ECF No. 27-1 (citation omitted).

An adjudication is "retroactive, determining whether a party violated legal policy . . . [while] rulemaking . . . is of only future effect." *Ameren Servs. Co. v. Fed. Energy Regulatory Comm'n*, 880 F.3d 571, 584 (D.C. Cir. 2018); *see also Catholic Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 922 (D.C. Cir. 2013) ("[A]n adjudication *must* have retroactive effect, or else it would be considered a rulemaking.") (emphasis in original). The Rao Memorandum relieves covered employers from their obligations to provide Component 2 pay data in the future, and EEOC's notice in the Federal Register does the same. The government provides the court with no precedent holding that an OMB determination under the PRA is considered an adjudication, and this court will not set a new course.[4]

In light of the foregoing, this court finds that Plaintiffs have met their burden to demonstrate organizational standing.[5]

---

[4] Moreover, even if the court were to determine that OMB's stay is an adjudication, Plaintiffs would still have standing to challenge it, because they "point [] to a particular imminent application of the disputed agency policy, the firmness of which is not in dispute, on a fast-arriving date certain." *Conference Grp., LLC v. FCC*, 720 F.3d 957, 964 (D.C. Cir. 2013) (quotation marks and citation omitted) (alteration in original).

[5] Given this finding, the court does not need to reach Plaintiffs' additional standing claims.

24

### C. Final Agency Action

The government moves to dismiss pursuant to Rule 12(b)(6), arguing that OMB's decision to reconsider and stay EEOC's collection of pay data is not a final agency action and thus not subject to judicial review. The APA limits judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. §704. "To be 'final,' agency action must 'mark the consummation of the agency's decisionmaking process' and 'be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Clean Air Council v. Pruitt*, 862 F.3d 1, 6 (D.C. Cir. 2017) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). "Case law interpreting this standard is 'hardly crisp,' and it 'lacks many self-implementing, bright-line rules, given the pragmatic and flexible nature of the inquiry as a whole.'" *Friedman v. Fed. Aviation Admin.*, 841 F.3d 537, 541 (D.C. Cir. 2016) (quoting *Rhea Lana, Inc. v. Dep't of Labor*, 824 F.3d 1023, 1027 (D.C. Cir. 2016)).

In *Clean Air Council*, "a group of environmental organizations, challenge[d] the Environmental Protection Agency's decision to stay implementation of portions of a final rule concerning methane and other greenhouse gas emissions." 862 F.3d at 4. The government argued that the EPA's decision to stay the rule was not reviewable because it was not a final agency action. The D.C. Circuit followed the familiar two-pronged *Bennett* analysis and held that the court had jurisdiction. *Id.* at 6-7. It found that the EPA's stay satisfied the first prong – that the agency action "mark[s] the consummation of the agency's decisionmaking process," *Bennett*, 520 U.S. at 177-78 (quotation marks and citation omitted) – because it "suspended the rule's compliance deadlines," which, "[was] essentially an order delaying the rule's effective date, and this court has held that such orders are tantamount to amending or revoking a rule." *Clean Air Council*, 862 F.3d at 6. As the court explained, "By itself, EPA's decision to grant reconsideration, which merely begins a process that could culminate in no change to the rule,

25

fails this [finality] test. The imposition of the stay, however, is an entirely different matter." *Id.* at 6.

The Court also found that EPA's stay affected the rights or obligations of the regulated parties. *Id.* at 7. (quotation marks omitted). The court explained:

> Absent the stay, regulated entities would have had to complete their initial monitoring surveys by June 3 and repair any leaks within thirty days. Failure to comply with these requirements could have subjected oil and gas companies to civil penalties, citizens' suits, fines, and imprisonment. The stay—which EPA made retroactive to one day *before* the June 3 compliance deadline—eliminates that threat, and thus relieves regulated parties of liability they would otherwise face.

*Id.* (citations omitted) (emphasis in original).

Just as in *Clean Air Council*, OMB's decision to reconsider and stay EEOC's collection of Component 2 pay data "mark[ed] the consummation of the agency's decisionmaking process." *Clean Air Council*, 862 F.3d at 6 (quotation marks and citation omitted). OMB—like EPA—did not choose solely to reconsider or review the previously approved collection of information; rather, it chose to review *and* stay it, thereby revoking its earlier approval of the Component 2 information collection. OMB's stay is not interlocutory simply because OMB will conduct future administrative proceedings to decide whether to approve EEOC's Component 2 data collection. "[T]he applicable test is not whether there are further administrative proceedings available, but rather whether the impact of the order is sufficiently final to warrant review in the context of the particular case." *Id.* at 7 (quoting *Friedman v. FAA*, 841 F.3d 537, 542 (D.C. Cir. 2016).

Moreover, OMB did not have to "review" *and* "stay" the data collection. The regulation's terms establish that these are separate decisions. OMB may "review" a data collection "when relevant circumstances have changed or the burden estimates . . . were

26

materially in error." 5 C.F.R. § 1320.10(f).  OMB may "stay" a data collection only for "good cause."  *Id.* § 1320.10(g).  OMB concedes that it made two decisions by acknowledging that it had "*also* decided to stay immediately the effectiveness of revised aspects of the EEO-1 form." Rao Memorandum at 2 (emphasis added).

OMB's stay also satisfies the second step of the *Bennett* test.  Before the stay, covered employers were legally obligated to submit the Component 2 pay data to the EEOC by March 31, 2018, and were required to file the EEO-1, 29 C.F.R. § 1602.7; 41 C.F.R. § 60-1.7(a)(1), and false reporting subjected them to fines or imprisonment, 29 C.F.R. § 1602.8.  Covered employers could be compelled by court order to file their EEO-1 if they failed or refused to do so.  *Id.* § 1602.9.  The stay eliminated the pay data from this mandatory requirement, therefore creating legal consequences for the regulated entities, no matter whether OMB ultimately decides to approve or disapprove the pay data.  *See Clean Air Council*, 862 F.3d at 7 ("Failure to comply with these requirements could have subjected oil and gas companies to civil penalties, citizens' suits, fines, and imprisonment.  The stay . . . eliminates that threat, and thus relieves regulated parties of liability they would otherwise face.") (citations omitted).

The government nevertheless contends that because the stay does not directly affect the Plaintiffs' rights or obligations it fails the second prong of the finality test because Plaintiffs do not have any legal right to the pay data EEOC would have collected.  Defs.' Mot. to Dismiss at 26-27, ECF No. 11.  This argument fails because the correct test asks whether the stay has legal consequences, not whether it affects the plaintiffs' legal obligations.  In *Clean Air Council*, the D.C. Circuit found that an environmental organization had standing where the stay affected the obligations of the regulated industries – oil and gas – not the environmentalists.  862 F.3d at 4; *see also Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 417 F.3d 1272, 1281

27

(D.C. Cir. 2005) ("Because the Corps' [policies] mark the completion of the Corps' decision-making process and affect the [regulated entities'] day-to-day operations, they constitute final agency action regardless of the fact that the Corps' action might carry different (or no) consequences for a different challenger, such as an environmental group.").  The government relies on *DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.*, 76 F.3d 1212 (D.C. Cir. 1996), but in that case the agency's actions did not have *any* legal consequence.  *Id.* at 1215 ("[This] is not a case in which legal consequences will flow from the agency action taken thus far.") (quotation marks and citation omitted).

Defendants argue that *Clean Air Council* is inapposite.  They point out that *Clean Air Council* involved the stay of a rule promulgated pursuant to notice and comment, the PRA permits the review and stay of the collection of information not contained in a rule, and permits only review but not the stay of information contained in a rule, and OMB's stay of Component 2 data is a stay of a collection of information not contained in a rule.  While each of these points is correct, the Defendants cannot weave them together in a way that demonstrates why the stay in this case is not final.

First, OMB discusses the legislative history of the PRA with respect to the decision to permit stays of some collections of information but not others, *see* Defs.' Reply in Supp. of Mot. to Dismiss at 14-15, but this discussion reveals only that Congress granted substantive authority to allow a stay in one place and withheld authority to grant a stay elsewhere.  It does not speak to the finality of a stay.[6]

---

[6] Defendants suggest that the notice and comment underpinnings of the rule stayed in *Clean Air Council* were critical to the court's finding that the stay amounted to final action.  *See* Defs.' Reply in Supp. of Mot. to Dismiss at 17.  However, the language that Defendants quote does not

In any event, Defendants have failed to account for the fact that this case involves the interplay between two governmental entities, OMB and EEOC, and by staying EEOC's collection of information, OMB has effectively stayed its own prior approval of the collection—an approval which was itself granted only after two rounds of notice and comment.  *See* 81 Fed. Reg. 5113; 81 Fed. Reg. 45479.  Moreover, Defendants do not argue that judicial review would be unavailable if OMB had initially disapproved the collection of information by EEOC.  *Cf.* 44 U.S.C. § 3507 (d)(6) (expressly stating that certain actions are not subject to judicial review).  If such disapproval would have been judicially reviewable, it does not make any sense that OMB could evade judicial review by first approving the collection and then staying it.

## III.    SUMMARY JUDGMENT

### A.  Legal Standard

When a plaintiff challenges an agency's final action under the APA, summary judgment "is the mechanism for deciding whether as a matter of law an agency action is supported by the administrative record and is otherwise consistent with the APA standard of review."  *Louisiana v. Salazar*, 170 F. Supp. 3d 75, 83 (D.D.C. 2016) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971)).  A court must "hold unlawful and set aside agency action" that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

---

come from the portion of the opinion dealing with the finality of the stay; it comes from the portion of the opinion finding the stay arbitrary and capricious.

29

### B. Analysis of Whether the Stay Violates OMB's Regulations or is Arbitrary and Capricious

Under its own regulations, OMB may review a previously approved collection of information only when "relevant circumstances have changed or the burden estimates provided by the agency at the time of initial submission were materially in error." 5 C.F.R. § 1320.10(f). If either requirement is met, OMB may stay a prior approval of a collection of information not contained in a rule, but only for "good cause" shown and "after consultation with the agency." *Id.* § 1320.10(g). OMB has not shown that a relevant circumstance has changed or that the burden estimate provided was materially in error. Moreover, it has not shown good cause.

In staying EEOC's data collection, OMB stated that the "data file specifications for employers to use in submitting EEO-1 data . . . were not contained in the Federal Register notices as part of the public comment process nor were they outlined in the supporting statement for the collection of information." Rao Memorandum at 1. Therefore, OMB claimed that 1) "the public did not receive an opportunity to provide comment on the method of data submission to EEOC"; and 2) "EEOC's burden estimates did not account for the use of these particular data file specifications, which may have changed the initial burden estimate." *Id.*

OMB's assertion that the data file specifications were not contained in the Federal Register, thereby depriving the public of an opportunity to comment on them, is misdirected, inaccurate, and ultimately unpersuasive. The claim is misdirected, because the data file specifications consisted of a sample spreadsheet and formatting specifications which explained how to format a spreadsheet; they did not change the content of the information collected. In both the Sixty-Day and Thirty-Day notices, EEOC described in detail the information it proposed to collect. The government's argument therefore focuses on a technicality that did not affect the employers submitting the data.

30

The government's claim that employers lacked an opportunity to comment on the data file specifications is strained, because the Thirty-Day Notice explicitly stated that for employers who were going to file through data uploads, the EEOC would post online the new data file specifications "for Components 1 and 2 of the modified EEO-1 as soon as OMB approves the information collection."  81 Fed. Reg. at 45487.  Moreover, the Sixty-Day Notice directed employers to a website with sample data collection forms which provided "an illustration of the data to be collected by both Components 1 and 2 [of the revised EEO-1]."  81 Fed. Reg. at 5118. The sample spreadsheets in the data file specification match in all material respects the sample form provided in the Sixty-Day Notice.  *Compare id.* with Link Decl. ¶ 8, Ex. E.  Thus, employers not only knew that the data file specifications would be posted after OMB's approval, but also knew what the specifications would look like, putting the employers in a good position to comment if they desired.

Moreover, OMB gave its approval knowing that the Thirty-Day Notice stated that the file data specifications would be posted "as soon as" OMB approved the information collection. Plainly, OMB and employers expected *some* file specifications, so OMB's assertion that anyone was caught off guard by the mere posting of data file specifications rings hollow.  Unable to point to any material variance between the sample form in the Sixty-Day Notice and the specifications ultimately posted, OMB's burden was to show how the file data specifications altered the content of the information required from employers or significantly increased the burden on employers in producing that information.  OMB did not carry that burden.  Moreover, OMB did not explain why posting the data file specifications after OMB approved the Component 2 collection should jeopardize the collection, when OMB had previously allowed data file specifications to be submitted after it approved EEO-1 forms.  *See, e.g.*, Agency

31

Information Collection Activities: Notice of Submission for OMB Review; Final Comment

Request, 70 Fed. Reg. 71294, 71301 (Nov. 28, 2005); Agency Information Collection Activities:

Proposed Collection; Submission for OMB Review, 79 Fed. Reg. 72678 (Dec. 8, 2014).

OMB's assertion that "EEOC's burden estimates did not account for the use of these

particular data file specifications, which may have changed the initial burden estimate," Rao

Memorandum at 1, is also unavailing. First, as noted, EEOC's sample form in the Sixty-Day

Notice and description in both the Thirty-Day and Sixty-Day notices of the pay data that would

be collected were consistent with the data file specifications. Second, OMB did not actually *find*

that the data file specifications would change the initial burden estimates; rather, it stated that

data file specifications "*may* change the initial burden estimate." Rao Memorandum at 1

(emphasis added). This equivocation is not surprising given that OMB's assertion was

unsupported by any analysis.

The only "changed circumstance" alleged by OMB is the release of the data file

specifications. But this is far from a "changed circumstance" in any meaningful sense. As

mentioned, in the Thirty-Day Notice, EEOC informed OMB and the public that it would post file

specifications after OMB approved the collection of information. After OMB approved the

collection of information, EEOC released the data file specifications. There was no changed

circumstance. EEOC proceeded exactly as planned and as OMB had approved.

Moreover, OMB merely speculated that the initial burden estimate "may" be incorrect,

while failing to support its speculation with any analysis. This omission is remarkable because

OMB did not assert that EEOC's previous analyses were based on formats meaningfully

different from the file data specifications. *See* 81 Fed. Reg. at 5119-20, 81 Fed. Reg. at 45492-

95 (earlier burden analyses). OMB's unsupported conjecture falls short of showing *any* prior

32

error, let alone a material one.  "Though an agency's predictive judgments . . . are entitled to deference . . .  deference to such ... judgment[s] must be based on some logic and evidence, not sheer speculation."  *Sorenson Commc'ns Inc. v. FCC*, 755 F.3d 702, 708 (D.C. Cir. 2014) (quotation marks and citations omitted) (alteration in original); *see also Water Quality Ins. Syndicate v. United States*, 225 F. Supp. 3d 41, 70 (D.D.C. 2016) ("speculation … is an inadequate replacement for the agency's duty to undertake an examination of the relevant data and reasoned analysis") (quoting *Horsehead Res. Dev. Co. v. Browner*, 16 F.3d 1246, 1269 (D.C. Cir. 1994)).

OMB also failed to demonstrate good cause for the stay.  It did not explain in any substantive way why it believed that the revised EEO-1 was contrary to PRA standards.  *See Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) ("[A]n agency must explain 'why it chose to do what it did.'  And to this end, conclusory statements will not do; an 'agency's statement must be one of *reasoning*.'") (emphasis in original) (quoting *Tourus Records v. Drug Enf't Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001); *Butte Cty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010)); *see also Bauer v. DeVos*, 325 F. Supp. 3d 74, 105 (D.D.C. 2018) ("[T]he APA . . . requires that agencies 'provide an explanation that will enable the court to evaluate the agency's rationale at the time of decision.'") (citation omitted).  OMB's stated reason when issuing the stay also conflicted with its prior findings that EEOC's data collection had practical utility, 81 Fed. Reg. at 45481-83, was designed to minimize the burden on reporting employers, *id.* at 45492-95, and provided adequate privacy and confidentiality protections, *id.* at 45491-92. OMB failed to explain these inconsistencies.  *See Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 59 (D.C. Cir. 2015) ("We have often declined to affirm an agency decision if there are unexplained inconsistencies in the final rule."); *Bauer*, 325 F. Supp. 3d at 109 ("[T]he

33

Department failed to acknowledge, much less to address, the inconsistency between its current

view that those provisions stand on legally questionable footing, and its prior conclusion that

they were legally sound. . . . [A]n unacknowledged and unexplained inconsistency is the

hallmark of arbitrary and capricious decision-making.").[7]

An agency's action is arbitrary and capricious if the agency "(1) has relied on factors

which Congress has not intended it to consider, (2) entirely failed to consider an important aspect

of the problem, (3) offered an explanation for its decision that runs counter to the evidence

before the agency, or (4) offers an explanation that is so implausible that it could not be ascribed

to a difference in view or the product of agency expertise." *Am. Wild Horse Pres. Campaign v.*

*Perdue*, 873 F.3d 914, 923 (D.C. Cir. 2017) (quotation marks and citation omitted).  While

"[a]gencies are free to change their existing policies," in doing so they must "provide a reasoned

explanation for the change." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016)

(citations omitted).  OMB's action in staying EEOC's collection of Component 2 was arbitrary

and capricious for the same reasons the agency violated its own regulation: OMB's decision to

stay the collection of information totally lacked the reasoned explanation that the APA requires.[8]

In urging this court to uphold OMB's decision to stay EEOC's pay data collection, the

government contends that "OMB's interpretation of its 'review and stay' regulations is entitled

to deference," unless it is "plainly erroneous or inconsistent with the regulation," because

"neither the PRA nor OMB's regulations define when 'relevant circumstances have changed,'

---

[7] OMB did not explain why a stay was necessary, when the percentage of employers likely to use data upload is small, perhaps as low as two percent, 81 Fed. Reg. at 5119 n.55, 5120 n.62, and no employer is required to use data upload rather than data entry.

[8] Because the court finds that OMB's stay of EEOC's pay data collection violated the PRA and was arbitrary and capricious, it does not need to reach Plaintiffs other arguments.

34

what constitutes a 'material error' in the burden estimates initially provided, or when 'good cause exists.'"  Defs.' Opp. to Pls. Mot. for Summ. J and Mot. for Summ. J. at 19-20.  Plaintiffs counter that because "the Rao Memorandum is almost entirely conclusory, parroting regulatory language," it lacks reasoning and is not entitled to deference.  Pls.' Reply in Supp. of Mot. for Summ. J. and Opp. to Defs.' Mot. for Summ. J. at 6, ECF No. 32.  Moreover, Plaintiffs argue that OMB has previously articulated a definition of a "good cause" standard and should be held to it.  In the preamble to a PRA regulation, OMB stated that good cause "exists when continued collection of information would be significantly contrary to the standards of the Act." Controlling Paperwork Burdens on the Public; Proposed Rulemaking, 47 Fed. Reg. 39515, 39522 (Sept. 8, 1982).  As part of this good cause standard, OMB must "take into consideration any disruption such reconsideration would create in the agency's program."  *Id.*  The government responds that as a general matter, preambles to rules are not binding on agency actions.  *See* Defs.' Mot. for Summ. J. at 21 n.4.

The court need not decide whether the good cause standard provided in the preamble applies here.  Even without holding OMB to those requirements, the court finds that OMB provided inadequate reasoning to support its decision to stay the data collection.  Courts "do not defer to an agency's conclusory or unsupported suppositions."  *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 214 (D.C. Cir. 2013) (quotation marks and citation omitted).

In further support of its claim that OMB's decision to stay EEOC's collection of Component 2 information is a reasonable interpretation of the regulations and supported by the record, the government relies on four letters OMB received in early 2017, after the posting of the file specifications.  Defs.' Opp. to Pls.' Mot. for Summ. J. and Mot. for Summ. J. at 22-23. These letters, according to the government, expressed concern about the lack of adequate notice

35

and comment and buttressed OMB's finding that "Component 2 could impose a burden on regulated entities." *Id.* at 23. However, the Rao Memorandum does not indicate that OMB relied on these comments or even took them into consideration. Moreover, one of the four letters (from the Chamber of Commerce) does not discuss the data file specifications. *See* Letter re Request for Review; EEOC's Revision of the Employer Information Report from Randel K. Johnson, Senior Vice President, Labor, Immigration & Employee Benefits and James Plunkett, Director, Labor Law Policy, U.S. Chamber of Commerce, to John M. Mulvaney, Dir., Office of Management and Budget (Feb. 27, 2017); JA046. The other letters do not provide any analysis or conclude that the data formatting specifications increase the burden on EEO-1 filers. An agency's speculation cannot suffice for APA review purposes. *Sorenson Commc'ns Inc.*, 755 F.3d at 708. Similarly, an agency cannot simply rely on the speculation of commenters. Instead, the agency must conduct a critical examination of comments on which it relies. *See Nat'l Ass'n of Regulatory Util. Comm'rs v. FCC*, 737 F.2d 1095, 1125 (D.C. Cir. 1984) (agency may not rely on comments "uncritically" and must apply its "expert evaluation"); *Am. Great Lakes Ports Ass'n v. Zukunft*, 296 F. Supp. 3d 27, 39 (D.D.C. 2017) ("Thus, an agency may, for example, rely on comments submitted during the notice and comment period as justification for [a] rule, so long as the submissions are examined critically.") (quotation marks and citations omitted) (alteration in original). Finally, the government omits mention of the comments OMB received in support of the file data specifications. For instance, NWLC, with 82 organization signatories, submitted a comment on April 12, 2017, around the same time that OMB received the four letters it cites. NWLC explained both why the data file specifications did not increase any burden and did not constitute a change in circumstances. *See* Letter re Opposition to Reopening Review of the Equal Employment Opportunity Commission's Employment Information (EEO-1)

Report (OMB Control Number 3046-0007), from NWLC, et al., to John M. Mulvaney, Dir., Office of Management and Budget (Apr. 12, 2017); JA115.  Without explaining why, an agency cannot rely on some comments while ignoring comments advocating a different position.  *AARP v. U.S. Equal Emp't Opportunity Comm'n*, 267 F. Supp. 3d 14, 32 (D.D.C. 2017) ("An agency must explain *why* it chose to rely on certain comments rather than others.") (emphasis in original).

The government further contends that the Rao Memorandum "simply summarizes the four months of meetings, emails, and conference calls between OMB and EEOC during which each issue underlying the Administrator's decision to review and stay was discussed."  Defs.' Opp. to Pls.' Mot. for Summ. J. and Mot. for Summ. J. at 30.  Nothing in the record supports this claim.  Further, the government's assertion does not mean that the discussions involved an analysis of evidence supporting a conclusion of changed circumstances or materially erroneous burden estimates.  In fact, the only evidence in the record of documented agency analysis rejects the government's current contention about the data file specifications.  According to an April 14, 2017 EEOC memorandum:

> The EEOC's published filed specifications are not a new requirement but rather simply a familiar tool to make it easier for employers to submit EEO-1 data to the EEOC.  The EEOC provided this tool to employers for use with the 2016 EEO-1, as evident on the EEOC website where the file specifications for the 2016 EEO-1 were published … Like those later published for the EEO-1 pay data collection, the 2016 specifications were in comma-separated values format ("csv"), a format that enables employers to convert tabular data (like that in the EEO-1) for importation and exportation to a database.  Employers that used data upload technology for their 2016 EEO-1 reports used these csv specifications.

> Publication of the file specifications after OMB's approval of the pay data collection is not a "significant" change that warrants OMB's reconsideration.  As noted above, EEOC indicated in the 30-day notice its intent to post updated specifications, and stated that it would provide support to employers and HRIS vendors as they transitioned to the new reporting requirements.  EEAC had notice of these data specifications, was probably

37

familiar with the 2016 version, and had ample opportunity to raise questions or concerns before OMB's approval of the revised EEO-1, but did not do so.

Memorandum from Peggy Mastroianni to Victoria Lipnic, Acting Chair, EEOC (Apr. 14, 2017); JA126.

The government now claims that Component 2 required "significant formatting changes." Defs. Mem at 23. But the Rao Memorandum did not reach that conclusion. Administrator Rao's letter said only that the data file specifications "may have changed the initial burden estimate." Rao Memorandum at 1. Moreover, even if OMB had relied on a finding of "significant formatting changes" at the time of the stay, its conclusion would have lacked analytic and evidentiary support. This court cannot "fill in critical gaps in an agency's reasoning. We can only look to the [agency's] stated rationale. We cannot sustain its action on some other basis the [agency] did not mention." *Point Park Univ. v. NLRB*, 457 F.3d 42, 50 (D.C. Cir. 2006); *see also NAACP v. Trump*, 298 F. Supp. 3d 209, 237 (D.D.C. 2018) ("[B]ecause 'a reviewing court ... must judge the propriety of [agency] action solely by the grounds invoked by the agency,' *post hoc* explanations that the agency did not articulate when it acted are insufficient." (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196, (1947)) (alteration in original).

The government's position rests on hyper-technical formatting changes that have no real consequences for employers. While there may be instances when formatting changes could be burdensome, that is not the case here. Similarly, it is conceivable that the government could impose formatting requirements that made the presentation of collected information far more difficult for employers. But in this case, OMB and the regulated entities knew what the formatting would look like before OMB gave its approval to the Component 2 collection, and the government has failed to demonstrate any likelihood that the data file specifications meaningfully increase the burden on employers. Indeed, neither the Rao Memorandum nor the

38

administrative record as a whole demonstrates that before issuing its stay, OMB ever analyzed the data file specifications in an effort to determine whether they meaningfully changed the burden of collecting Component 2 information.

## IV.    REMEDY

Because the court has determined that OMB's stay of EEOC's pay data collection was illegal, it must fashion an appropriate remedy.  The APA provides that a court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The D.C. Circuit has stated that "vacatur is the normal remedy" for an APA violation.  *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014).  The APA "itself contemplates vacatur as the usual remedy when an agency fails to provide a reasoned explanation for its regulations."  *AARP v. U.S. Equal Emp't Opportunity Comm'n*, 292 F. Supp. 3d 238, 242 (D.D.C. 2017).  The presumption of vacatur, "however, is not absolute, and a remand without vacatur may be 'appropriate [if] "there is at least a serious possibility that the [agency] will be able to substantiate its decision" given an opportunity to do so, and when vacating would be "disruptive.""'  *Bauer v. DeVos*, 332 F. Supp. 3d 181, 184 (D.D.C. 2018) (quoting *Radio-Television News Dirs. Ass'n v. FCC*, 184 F.3d 872, 888 (D.C. Cir. 1999)) (alterations in original).  "Courts in this Circuit . . . have long recognized that 'when equity demands, an unlawfully promulgated regulation can be left in place while the agency provides the proper procedural remedy.'"  *Shands Jacksonville Med. Ctr. v. Burwell*, 139 F. Supp. 3d 240, 267 (D.D.C. 2015) (quoting *Fertilizer Inst. v. EPA,* 935 F.2d 1303, 1312 (D.C. Cir. 1991) (citation omitted) (footnote omitted)).  A court's decision to remand without vacatur "depends on the 'seriousness of the order's deficiencies' and the likely 'disruptive consequences' of vacatur."

*Allina Health Servs.*, 746 F.3d at 1110 (quoting *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,* 988 F.2d 146, 150-51 (D.C. Cir. 1993)).

OMB's deficiencies were substantial, and the court finds it unlikely that the government could justify its decision on remand, despite its assertion that "OMB could easily cure the defects in its memorandum by further explanation of its reasoning." Defs.' Opp. to Pls.' Mot. for Summ. J. and Mot. for Summ. J. at 33. The government's deficiency is not that it failed to explain OMB's "reasoning," but that OMB's reasoning lacked support in the record.

The government also argues that "vacatur *could* upset the current expectation of filers, who *may* not be aware of this litigation nor its potential impact on their obligation to complete their Component 2 submissions." Defs.' Reply in Supp. of Mot. to Dismiss or in Alt. Mot. for Summ. J. at 19 (emphasis added), ECF No. 36. This speculation is unsupported by the record. Moreover, the revised pay data collection had been in place for almost a year by the time it was stayed. The government's argument that a stay is only temporary further undercuts its argument that vacatur would be disruptive, because affected entities were on notice that the stay could be withdrawn at any time. The court therefore finds that vacatur will not have potentially disruptive consequences.

Accordingly, this court finds that both *Allied-Signal* factors favor vacatur as the appropriate remedy.

## V.    CONCLUSION

For the foregoing reasons, the court hereby **DENIES** Defendants' Motion to Dismiss, ECF No. 11; **GRANTS** Plaintiffs' Motion for Summary Judgment, ECF No. 22; **DENIES** Defendants' Motion for Summary Judgment, ECF No. 27; and **VACATES** OMB's stay of the

EEOC's revised EEO-1 form and the September 15, 2017 Federal Register Notice (Stay the

Effectiveness of the EEO-1 Pay Data Collection, 82 Fed. Reg. 43362) announcing the same.

It is further **ORDERED** that the previous approval of the revised EEO-1 form shall be in

effect.

Date:  March 4, 2019

*Tanya S. Chutkan*
_____
TANYA S. CHUTKAN
United States District Judge