No. 19-5130

# In the U.S. Court of Appeals for the District of Columbia Circuit

NATIONAL WOMEN'S LAW CENTER, *ET AL.*,
*Plaintiffs-Appellees,*

vs.

OFFICE OF MANAGEMENT & BUDGET, *ET AL.*,
*Defendants-Appellants.*

APPEAL FROM U.S. DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

**BRIEF FOR *AMICUS CURIAE* EAGLE FORUM
EDUCATION & LEGAL DEFENSE FUND
IN SUPPORT OF APPELLANTS AND REVERSAL**

Lawrence J. Joseph, D.C. Bar #464777
1250 Connecticut Ave, NW, Suite 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

Counsel for *Amicus Curiae* Eagle Forum
Education & Legal Defense Fund

## CORPORATE DISCLOSURE STATEMENT

Pursuant to FED. R. APP. P. 26.1 and Circuit Rule 26.1, counsel for *amicus curiae* Eagle Forum Education & Legal Defense Fund ("EFELDF") states that (a) EFELDF is a non-profit, tax-exempt corporation under §501(c)(3) of the Internal Revenue Code with no parent corporation; (b) no publicly traded entity – or any other entity – holds a ten-percent ownership interest in EFELDF; and (c) EFELDF is an education and legal defense fund that – as relevant to this litigation – advocates for traditional American values and constitutional government, including the separation of powers and confining the Judiciary to the confines of the case-or-controversy limits required by Article III of the Constitution.

Dated: August 26, 2019                    Respectfully submitted,


      /s/ Lawrence J. Joseph
Lawrence J. Joseph, D.C. Bar #464777
1250 Connecticut Ave. NW
    Suite 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Amicus Curiae Eagle Forum*
*Education & Legal Defense Fund*

## CERTIFICATE AS TO PARTIES, RULINGS & RELATED CASES

Pursuant to Circuit Rule 28(a)(1), counsel for *amicus curiae* Eagle Forum Education & Legal Defense Fund ("EFELDF") presents the following certificate as to parties, rulings, and related cases.

### A.     Parties and *Amici*

EFELDF adopts Appellants' statement of parties and *amici curiae*, with the addition of *amicus* Eagle Forum Education & Legal Defense Fund in this appeal.

### B.     Rulings Under Review

EFELDF adopts Appellants' statement of rulings under review.

### C.     Related Cases

EFELDF adopts the Appellants' statement of related cases.

Dated: August 26, 2019                    Respectfully submitted,


_/s/ Lawrence J. Joseph_____
Lawrence J. Joseph, D.C. Bar #464777
1250 Connecticut Ave. NW
       Suite 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Amicus Curiae Eagle Forum Education & Legal Defense Fund*

# **TABLE OF CONTENTS**

Corporate Disclosure Statement ................................................................i

Certificate as to Parties, Rulings & Related Cases ............................... ii

    A.    Parties and *Amici* ................................................... ii

    B.    Rulings Under Review ......................................... ii

    C.    Related Cases ...................................................... ii

Table of Contents ................................................................................. iii

Table of Authorities ...............................................................................v

Glossary.................................................................................................ix

Identity, Interest and Authority to File ...................................................1

Statement of the Case.............................................................................1

    Constitutional Background ....................................................2

    Statutory and Regulatory Background ..................................2

    Factual Background ..............................................................3

Summary of Argument............................................................................5

Argument.................................................................................................6

I.    Plaintiffs lack standing for the claims in their complaint.................6

    A.    Plaintiffs lack a legally protected interest in the
          information that they seek. ...................................7

    B.    Plaintiffs lack any rights to enforce in equity. ...................10

    C.    Plaintiffs' diverted-resources injuries are inadequate
          under binding precedent. ......................................11

    D.    Plaintiffs' claimed injuries do not establish standing
          under binding Circuit and Supreme Court precedent.........15

II.    The District Court's remedy against EEOC exceeded the
       District Court's authority. ................................................................17

       A.    Plaintiffs lack standing for the remedy against EEOC. ......................17

       B.    Plaintiffs lack the irreparable harm required for
             injunctive relief against EEOC. ...........................................................18

Conclusion ............................................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Action Alliance of Senior Citizens v. Heckler*,
   789 F.2d 931 (D.C. Cir. 1986)...................................................14, 16

*Alabama Power Co. v. Ickes*,
   302 U.S. 464 (1938) ..................................................................11

*Ass'n of Data Processing Serv. Org., Inc. v. Camp*,
   397 U.S. 150 (1970) ....................................................................2

*Beacon Theatres v. Westover*,
   359 U.S. 500 (1959) ..................................................................18

*Benson v. Schofield*,
   236 F.2d 719 (D.C. Cir. 1956).....................................................12

*Burford v. Sun Oil Co.*,
   319 U.S. 315 (1943) ..................................................................20

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) ..................................................................16

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ..................................................................12

*Cooper Indus., Inc. v. Aviall Serv., Inc.*,
   543 U.S. 157 (2004) ..................................................................15

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ..................................................................18

*Davis v. Mineta*,
   302 F.3d 1104 (10th Cir. 2002) ...................................................19

*Diamond v. Charles*,
   476 U.S. 54 (1986) .......................................................................8

*Ecosystem Inv., Partners v. Crosby Dredging, L.L.C.*,
   729 F.App'x 287 (5th Cir. 2018)...................................................13

*Edelman v. Jordan*,
   415 U.S. 651 (1974) ..................................................................20

\*   *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
   878 F.3d 371 (D.C. Cir. 2017)........................................... 7, 15-17

*Ex parte Young*,
   209 U.S. 123, 149 (1908) ...............................................................10

*Flast v. Cohen*,
   392 U.S. 83 (1968) ...................................................................... 8-9

*Florida Audubon Soc'y v. Bentsen*,
   25 ELR 21207 (D.C. Cir. 1995) ....................................................10

\* *Florida Audubon Soc'y v. Bentsen*,
   94 F.3d 658 (D.C. Cir. 1996) (*en banc*) ....................................5, 9-10, 16-17

*Gardner v. U.S.*,
   211 F.3d 1305 (D.C. Cir. 2000)......................................................18

*General Comm. of Adjustment, GO-386 v. Burlington Northern & Santa Fe
   Ry. Co.*, 295 F.3d 1337 (D.C. Cir. 2002).........................................15

*Gladstone, Realtors v. Bellwood*,
   441 U.S. 91 (1979) ........................................................................12

*Green v. Mansour*,
   474 U.S. 64 (1985) .................................................................. 20-21

\* *Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982)................................................ 5, 12-14, 17, 19

*In re Navy Chaplaincy*,
   534 F.3d 756 (D.C. Cir. 2008)........................................................19

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004) ........................................................................2

*LaShawn A. v. Barry*,
   87 F.3d 1389 (D.C. Cir. 1996) (*en banc*) ......................................15

*League of Women Voters of the United States v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016)............................................................20

*Lewis v. Casey*,
   518 U.S. 343 (1996) .................................................................. 17-18

*Linda R.S. v. Richard D.*,
   410 U.S. 614 (1973) .................................................................... 8-9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .....................................................................2, 7

\* *McConnell v. FEC*,
   540 U.S. 93 (2003).................................................................8-9, 16-17

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ........................................................................19

*Mountain States Legal Found. v. Glickman*,
    92 F.3d 1228 (D.C. Cir. 1996).......................................................13

*Nader v. Saxbe*,
    497 F.2d 676 (D.C. Cir. 1974).........................................................8

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578 (3d Cir. 2002) ........................................19

*Pennsylvania v. New Jersey*,
    426 U.S. 660 (1976) ......................................................................12

\*   *People for the Ethical Treatment of Animals v. U.S. Dept. of Agriculture*,
    797 F.3d 1087 (D.C. Cir. 2015)...............................11-12, 15-17

*Second City Music, Inc. v. City of Chicago*,
    333 F.3d 846 (7th Cir. 2003) ........................................................19

\*   *Shays v. FEC*,
    414 F.3d 76 (D.C. Cir. 2005)....................................................9, 17

*South Central Bell Tel. Co. v. Alabama*,
    526 U.S. 160 (1999) ......................................................................14

*Sierra Club v. Morton*,
    405 U.S. 727 (1972) ..................................................................7, 12

*Steel Co. v. Citizens for a Better Env't.*,
    523 U.S. 83 (1998) .........................................................................6

*Taylor v. Resolution Trust Corp.*,
    56 F.3d 1497 (D.C. Cir. 1995).......................................................19

*U.S. v. Mendoza*,
    464 U.S. 154 (1984) ......................................................................14

*U.S. v. Lee*,
    106 U.S. 196 (1882) ......................................................................10

*Univ. Med. Ctr. of Southern Nevada v. Shalala*,
    173 F.3d 438 (D.C. Cir. 1999)........................................................7

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982) ................................................7

\*   *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,
    529 U.S. 765 (2000)................................................8-9, 13, 16-17

*Wadley S. R. Co. v. Georgia*,
    235 U.S. 651 (1915) .......................................................................................10

*Warth v. Seldin,*
    422 U.S. 490 (1975) .......................................................................................13

*Waters v. Churchill*,
    511 U.S. 661 (1994) .......................................................................................15

*Wisconsin Gas Co. v. Fed'l Energy Regulatory Comm'n*,
    758 F.2d 669 (D.C. Cir. 1985)................................................................. 19-20

*Yakus v. U.S.*,
    321 U.S. 414 (1944) .......................................................................................20

*Youngberg v. Romeo*,
    457 U.S. 307 (1982) .......................................................................................10

## STATUTES

U.S. Const. art. III................................................... 1-2, 4-6, 8-9, 12-13, 17, 19, 21

U.S. Const. art. III, §2.......................................................................................2

U.S. Const. amend. V ......................................................................................10

U.S. Const. amend. XIV, §1, cl. 3 ..................................................................10

U.S. Const. amend. XIV, §1, cl. 4 ..................................................................10

Administrative Procedure Act,
    5 U.S.C. §§551-706 ............................................................... 1, 10-11, 18, 20

5 U.S.C. §706(2) ..............................................................................................21

5 U.S.C. §706(2)(A)..........................................................................................18

Title VII of the Civil Rights Act of 1964,
    42 U.S.C. §§2000e-2000e-17 ...................................................................2

42 U.S.C. §2000e-2(a) .......................................................................................3

42 U.S.C. §2000e-8(c)(1).................................................................................3

42 U.S.C. §2000e-8(c)(2).................................................................................3

42 U.S.C. §2000e-8(c)(3).................................................................................3

42 U.S.C. §4332(2)(C)......................................................................................9

Paperwork Reduction Act,
    44 U.S.C. §§3501-3521 ................................................................1-3, 5, 13-14

44 U.S.C. §3501(1) ................................................................3

44 U.S.C. §3501(4) ................................................................3

44 U.S.C. §3506(c)(1)(A)(i) ...................................................3

44 U.S.C. §3516 .....................................................................3

Equal Pay Act of 1963,
    PUB. L. NO. 88-38, 77 Stat. 56 ..........................................4

## RULES AND REGULATIONS

FED. R. APP. P. 29(a)(4)(E) ....................................................1

5 C.F.R. §1320.10(g) .............................................................3

40 C.F.R. §1502.19(c) ............................................................9

40 C.F.R. §1502.19(d) ...........................................................9

81 Fed. Reg. 5113 (Feb. 1, 2016) ..........................................3

81 Fed. Reg. 45,479 (July 14, 2016) ......................................3

82 Fed. Reg. 43,362 (Sept. 15, 2017) ....................................3

## OTHER AUTHORITIES

Charles E. James, Sr., Deputy Assistant Secretary for Federal Contract
    Compliance, U.S. Dep't of Labor, Foreword to An Analysis of the
    Reasons for the Disparity in Wages Between Men and Women
    (Jan. 12, 2009) ....................................................................4

## GLOSSARY

APA         Administrative Procedure Act, 5 U.S.C. §§551-706

EFELDF      Eagle Forum Education & Legal Defense Fund

*EPIC*        *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election
            Integrity*, 878 F.3d 371 (D.C. Cir. 2017)

*PETA*        *People for the Ethical Treatment of Animals v. U.S. Dept. of
            Agriculture*, 797 F.3d 1087 (D.C. Cir. 2015)

PRA         Paperwork Reduction Act, 44 U.S.C. §§3501-3521

## IDENTITY, INTEREST AND AUTHORITY TO FILE

*Amicus curiae* Eagle Forum Education & Legal Defense Fund ("EFELDF"), a nonprofit corporation headquartered in Saint Louis, Missouri, files this brief with all parties' written consent.[1] Since its founding in 1981, EFELDF has consistently defended the Constitution, including not only the separation of powers generally but also confining the Judiciary to the case-or-controversy limits required by Article III of the Constitution. For all the foregoing reasons, EFELDF has a direct and vital interest in the issues before this Court.

## STATEMENT OF THE CASE

Two interest groups (collectively, "Plaintiffs") have sued the Office of Management & Budget, its Director, and the Administrator of its constituent entity the Office of Information & Regulatory Affairs (collectively, "OMB") and the U.S. Equal Employment Opportunity Commission and its Acting Chair (collectively, "EEOC" and, together with OMB, the "Government") for violations of the Paperwork Reduction Act, 44 U.S.C. §§3501-3521 ("PRA"), and the Administrative Procedure Act, 5 U.S.C. §§551-706 ("APA"). Specifically, Plaintiffs seek to enjoin OMB's stay of an EEOC information-collection request under EEOC's authority

---

[1]    Pursuant to FED. R. APP. P. 29(a)(4)(E), the undersigned counsel certifies that: counsel for *amicus* authored this brief in whole; no counsel for a party authored this brief in any respect; and no person or entity – other than *amicus* and its counsel – contributed monetarily to this brief's preparation or submission.

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-2000e-17, for

data about employee pay for companies with 100 or more employees.

**Constitutional Background**

To establish the case or controversy that Article III requires for federal-court

jurisdiction, U.S. CONST. art. III, §2, a plaintiff must show that: (1) the challenged

action constitutes an "injury in fact," (2) the injury is "arguably within the zone of

interests to be protected or regulated" by the relevant statutory or constitutional

provision, and (3) nothing otherwise precludes judicial review. *Ass'n of Data*

*Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 153 (1970). An "injury in fact"

is (1) an actual or imminent invasion of a legally protected interest, (2) which is

causally connected to the challenged conduct, and (3) which likely will be redressed

by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992).

In addition to this constitutional baseline, standing doctrine also includes prudential

elements, including not only the foregoing zone-of-interests test, but also the need

for those seeking to assert absent third parties' rights to have their own Article III

standing and a close relationship with the absent third parties, whom a sufficient

"hindrance" keeps from asserting their own rights. *Kowalski v. Tesmer*, 543 U.S.

125, 128-30 (2004).

**Statutory and Regulatory Background**

Congress enacted the PRA to minimize the federal government's paperwork

burden and to improve the quality of the information collected. 44 U.S.C. §3501(1), 3501(4). Before collecting information, federal agencies must obtain OMB approval of the information collection request. *Id.* §3506(c)(1)(A)(i). The PRA requires OMB to "promulgate rules, regulations, or procedures necessary to exercise the authority," *id.* §3516, and those regulations authorize OMB to stay a previous OMB approval of an agency's information collection request. 5 C.F.R. §1320.10(g).

Title VII prohibits sex- and race-based discrimination in employment. 42 U.S.C. §2000e-2(a). As part of that, Title VII requires employers to keep records of their employment practices, *id.* §2000e-8(c)(1)-(2), and authorizes EEOC to act by order or regulation to require employers to submit reports of those records. *Id.* §2000e-8(c)(3). In early 2016, EEOC announced its intention to require expanded reporting of employer data, 81 Fed. Reg. 5113 (Feb. 1, 2016), which EEOC estimated would cost an additional $416.58 per employer. 81 Fed. Reg. 45,479, 45,493-94 (July 14, 2016). OMB approved EEOC's information collection request on September 29, 2016 and stayed that approval approximately a year later. *See* 82 Fed. Reg. 43,362 (Sept. 15, 2017).

**Factual Background**

EFELDF adopts the facts from the Government's brief. *See* Gov't Br. at 6-12. As Plaintiffs candidly admit, they seek the pay data to establish the need for "pay equity" aggregated across all employers, employees, and job types. JA:148-49.

Although this Court need not dwell on the underlying merits to resolve the Article III issues presented here, some additional background would perhaps aid this Court in assessing any entitlement to equitable relief: "the raw wage gap continues to be used in misleading ways to advance public policy agendas without fully explaining the reasons behind the gap." Charles E. James, Sr., Deputy Assistant Secretary for Federal Contract Compliance, U.S. Dep't of Labor, Foreword to An Analysis of the Reasons for the Disparity in Wages Between Men and Women, at 1 (Jan. 12, 2009). The perceived "pay gap" results from numerous sources having nothing to do with discrimination, including – but not limited to – the following:

> A greater percentage of women than men tend to work part-time. Part-time work tends to pay less than full-time work.

> A greater percentage of women than men tend to leave the labor force for child birth, child care and elder care. Some of the wage gap is explained by the percentage of women who were not in the labor force during previous years, the age of women, and the number of children in the home.

> Women, especially working mothers, tend to value "family friendly" workplace policies more than men. Some of the wage gap is explained by industry and occupation, particularly, the percentage of women who work in the industry and occupation.

*Id.* at 1-2. True "pay equity" (*i.e.*, equal pay for equal work) has been federal law for more than fifty years. Equal Pay Act of 1963, PUB. L. NO. 88-38, 77 Stat. 56. What Plaintiffs actually seek is the misleading raw data for their misleading campaign for elevated pay for unequal work.

## SUMMARY OF ARGUMENT

While concurring with the Government's arguments on Plaintiffs' standing, *amicus* EFELDF makes three additional arguments on standing under Article III:

- First, standing's injury-in-fact prong requires a legally protected interest that is lacking here, and Plaintiffs' claim of information-based standing conflicts with this Court's finding in *Florida Audubon Soc'y v. Bentsen,* 94 F.3d 658, 664-65 (D.C. Cir. 1996) (*en banc*), that – notwithstanding an information-based injury that would arise *if the desired information were produced but withheld* – a plaintiff must have a particularized injury under the statute requiring the information's production in order to assert the injury of an agency's not producing purportedly required information (Section I.A).

- Second, review in equity similarly requires direct injury that is absent when the plaintiff does not challenge the violation of a legal right (Section I.B).

- Third, Article III does not contemplate self-inflicted injuries like a group's diverted resources, and nothing in the PRA suggests the unusual contrary scenario found in statutes like the Fair Housing Act that legislatively dispense with prudential standing doctrines, *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372-73 (1982) (Section I.C).

Putting these three stands together with the arguments in the Government's brief, Plaintiffs lack organizational standing for their information-based and diverted-

resource injuries (Section I.D).

Even if Plaintiffs had standing to vacate OMB's stay of EEOC's information collection, Plaintiffs would lack standing for relief against EEOC because standing against one agency for one action does not equate to standing against another agency for another action (*i.e.*, standing is not dispensed in gross) and – again – Plaintiffs lack of a legally protected right to EEOC's collecting and disseminating the employer data (Section II.A). In addition, the requirement for irreparable harm is a higher standard than mere Article III injury and does not include self-inflicted injures like Plaintiffs' spending (Section II.B).

## **ARGUMENT**

## I. **PLAINTIFFS LACK STANDING FOR THE CLAIMS IN THEIR COMPLAINT.**

Before reaching the merits of any appeal, appellate courts must establish federal jurisdiction, both for appellate review and for the rulings of the courts below.

> Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it. And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it. When the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.

*Steel Co. v. Citizens for a Better Env't.,* 523 U.S. 83, 95 (1998) (citations, interior quotation marks, and alterations omitted). Both questions are easy. The Government

has standing to defend its actions, and Plaintiffs lack standing to challenge them.

## A.    Plaintiffs lack a legally protected interest in the information that they seek.

A plaintiff can, of course, premise its standing on non-economic injuries, *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 486 (1982), such as a "change in the aesthetics and ecology of [an] area," *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972), or the denial of information. *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) ("*EPIC*"). But the threshold requirement for "the irreducible constitutional minimum of standing" remains: did the plaintiff suffer an "injury in fact" through "an invasion of a *legally protected interest* which is … concrete and particularized" to that plaintiff? *Defenders of Wildlife*, 504 U.S. at 560 (emphasis added); *EPIC*, 878 F.3d at 380; *cf. Univ. Med. Ctr. of Southern Nevada v. Shalala*, 173 F.3d 438, 441 (D.C. Cir. 1999) ("alleged illegality without an injury-in-fact does not satisfy standing requirements"). To be sure, the requirement for particularized injury typically poses the biggest problem for plaintiffs — for example, *Valley Forge Christian College*, *Morton*, and *EPIC*, *supra*, all turned on the lack of a particularized injury — but the requirement for a legally protected interest is even more basic.

As the Supreme Court recently explained in rejecting standing for *qui tam* relators based on their financial stake in a False Claims Act penalty, not all *interests*

are *legally protected* interests:

> There is no doubt, of course, that as to this portion of the recovery — the bounty he will receive if the suit is successful — a *qui tam* relator has a concrete private interest in the outcome of the suit. But the same might be said of someone who has placed a wager upon the outcome. *An interest unrelated to injury in fact is insufficient to give a plaintiff standing*. The interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right. A *qui tam* relator has suffered no such invasion[.]

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772-73 (2000) (emphasis added, interior quotation marks, citations, and alterations omitted); *accord McConnell v. FEC*, 540 U.S. 93, 226-27 (2003) ("political 'free trade' does not necessarily require that all who participate in the political marketplace do so with exactly equal resources" so "[t]his claim of injury … is, therefore, not to a legally cognizable right") (interior quotations and alterations omitted). Thus, even harm to a pecuniary interest does not *necessarily* qualify as an injury in fact. Rather, "Art. III standing requires an injury with a nexus to the substantive character of the statute or regulation at issue." *Diamond v. Charles*, 476 U.S. 54, 70 (1986).[2] As this Court

---

[2]     After rejecting standing based on an interest in a *qui tam* bounty, *Stevens* held that *qui tam* relators have standing on an assignee theory (*i.e.*, the government has an Article III case or controversy and assigns a portion of it to the *qui tam* relator). *Stevens*, 529 U.S. at 771-73. Outside of taxpayer-standing cases that implicate the Establishment Clause, the nexus test of *Flast v. Cohen*, 392 U.S. 83 (1968), typically arises in cases challenging a failure to prosecute. *See*, *e.g.*, *Nader v. Saxbe*, 497 F.2d 676, 680-82 (D.C. Cir. 1974); *Linda R.S. v. Richard D.*, 410 U.S. 614, 617-18 (1973) ("in the unique context of a challenge to a criminal statute, appellant has failed to

has explained, an "asserted injury [must] implicate[ a] 'legally cognizable right' …
to show invasion of [a] legally protected interest, as required for standing." *Shays v.
FEC*, 414 F.3d 76, 88 (D.C. Cir. 2005). Plaintiffs have no such claim here. Indeed,
to the contrary, it is *conceded* that they lack such a claim. JA:145. Accordingly,
Plaintiffs have not suffered an injury in fact under the statutes at issue here.[3]

Moreover, compelling the release of government information *in existence* is
not the same as compelling the production of information that *does not yet exist*. In
*Florida Audubon*, 94 F.3d at 664-65, the *en banc* Court held that a plaintiff seeking
to compel production of impact assessments "must show not only that the
defendant's acts omitted some procedural requirement, but also that it is
substantially probable that the procedural breach will cause the essential injury to
the plaintiff's own interest," without regard to the informational interest the plaintiff
would have in the public availability of such assessments. The *Florida Audubon*
information would have been publicly available *if prepared*, 42 U.S.C. §4332(2)(C);
40 C.F.R. §1502.19(c)-(d), but the question was whether a plaintiff could compel

---

allege a sufficient nexus between her injury and the government action which she
attacks"). Even without the *Flast* nexus test, Article III nonetheless requires that the
claimed interest qualify as a "legally protected right." *Stevens*, 529 U.S. at 772-73.

[3]        Although analogous to the prudential zone-of-interests test, *Stevens*, *Shays*,
and *McConnell* make clear that the need for a *legally protected interest* is an element
of the threshold inquiry under Article III of the Constitution, not a merely prudential
inquiry that a party could waive.

the production. Like Plaintiffs here, the *Florida Audubon* plaintiffs claimed an

informational injury in the denial of an environmental impact statement, 94 F.3d at

674 n.2 (Rogers, J., dissenting); *Florida Audubon Soc'y v. Bentsen,* 25 ELR 21207,

21208 (D.C. Cir. 1995) (plaintiffs "further claimed that the Secretary's failure to

prepare an [environmental impact statement] deprived them of information they

needed to protect the areas in question") (vacated panel decision), which this Court

*en banc* held insufficient to require the agency to undertake the procedure of

conducting an assessment that did not already exist.

**B.      Plaintiffs lack any rights to enforce in equity.**

In order to sue in equity, Plaintiffs need even more than an informational

injury that would — or at least *could* — suffice to confer standing under the APA.

Instead, an equity plaintiff or petitioner must invoke a statutory or constitutional

right for equity to enforce, such as life, liberty, or property under the Due Process

Clause or equal protection under the Equal Protection Clause or its federal equivalent

in the Fifth Amendment. *See*, *e.g.*, *U.S. v. Lee*, 106 U.S. 196, 220-21 (1882)

(property); *Ex parte Young*, 209 U.S. 123, 149 (1908) (property); *Youngberg v.

Romeo*, 457 U.S. 307, 316 (1982) (liberty); *cf. Wadley S. R. Co. v. Georgia*, 235 U.S.

651, 661 (1915) ("any party affected by [government] action is entitled, by the due

process clause, to a judicial review of the question as to whether he has been thereby

deprived of a right protected by the Constitution"). Plaintiffs' claimed injuries here

fall short of what equity requires.

Unlike the APA, pre-APA equity review requires "direct injury," which means "a wrong which directly results in the violation of a legal right." *Alabama Power Co. v. Ickes*, 302 U.S. 464, 479 (1938). Without that elevated level of direct injury, there is no review:

> It is an ancient maxim, that a damage to one, without an injury in this sense, (*damnum absque injuria*), does not lay the foundation of an action; because, if the act complained of does not violate any of his legal rights, it is obvious, that he has no cause to complain. Want of right and want of remedy are justly said to be reciprocal. Where therefore there has been a violation of a right, the person injured is entitled to an action. The converse is equally true, that where, although there is damage, there is no violation of a right no action can be maintained.

*Id.* (alterations, citations, and interior quotation marks omitted). In short, Plaintiffs do not have an action in equity. But even if Plaintiffs did have an action in equity, they still would need to have standing. As already explained, Plaintiffs cannot meet that test. *See* Section I.A, *supra*.

## C. Plaintiffs' diverted-resources injuries are inadequate under binding precedent.

The District Court premised Plaintiffs' organizational standing on the theory that the withheld employer data injured Plaintiffs' interests and that Plaintiffs' use of their own resources to counteract that injury caused injury under *People for the Ethical Treatment of Animals v. U.S. Dept. of Agriculture*, 797 F.3d 1087 (D.C. Cir.

11

2015) ("*PETA*"). But "[m]ere loss of income in consequence of the action of Government or economic disadvantage, by itself, constitutes *damnum absque injuria* which does not confer standing." *Benson v. Schofield*, 236 F.2d 719, 722 (D.C. Cir. 1956). Moreover, because Plaintiffs' diverted-resources injury is entirely self-inflicted, *amicus* EFELDF respectfully submits that it would not suffice for Article III, even if the underlying injury were legally protected. *See* Section I.A, *supra*.

This type of diverted-resources standing derives from *Havens*; as Judge Millett explained in her *PETA* dissent, "[t]he problem is not *Havens*[; the] problem is what our precedent has done with *Havens*." 797 F.3d at 1100-01 (Millett, J., *dubitante*). Under the unique statutory and factual situation in *Havens*, a housing-rights organization's diverted resources provided it standing, but in most other settings such diverted resources are mere self-inflicted injuries. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013); *Pennsylvania v. New Jersey,* 426 U.S. 660, 664 (1976). If mere spending could manufacture standing, any private advocacy group could establish standing against any government action. But that clearly is not the law. *Morton,* 405 U.S. at 739 (organizations lack standing to defend "abstract social interests"). To avoid overstepping its constitutional authority, this Court must reconsider the diverted-resources rationale for Article III standing.

Relying on *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 102-09 (1979), *Havens* held that the Fair Housing Act at issue there extends "standing under § 812

… to the full limits of Art. III," so that "courts accordingly lack the authority to create prudential barriers to standing in suits brought under that section," 455 U.S. at 372, thereby collapsing the standing inquiry into the question of whether the alleged injuries met the Article III minimum of injury in fact. *Id.* The typical organizational plaintiff and typical statute lack several critical criteria from *Havens*.

First, the *Havens* organization had a statutory right (backed by a statutory cause of action) to truthful information that the defendants denied to it. Because "Congress may create a statutory right[,] … the alleged deprivation of [those rights] can confer standing." *Warth v. Seldin,* 422 U.S. 490, 514 (1975). Under a typical statute, a typical organizational plaintiff has no claim to any rights related to its own voluntarily diverted resources. So too under the PRA.

Second, and related to the first issue, the injury that an organizational plaintiff claims must align with the other components of its standing, *Stevens*, 529 U.S. at 772; *Mountain States Legal Found. v. Glickman,* 92 F.3d 1228, 1232 (D.C. Cir. 1996); *Ecosystem Inv., Partners v. Crosby Dredging, L.L.C.*, 729 F.App'x 287, 299 (5th Cir. 2018) (collecting cases), including the allegedly cognizable right. In *Havens,* the statutorily protected right to truthful housing information aligned with the alleged injury (costs to counteract false information, in violation of the statute). By contrast, under a typical statute, there will be no rights even *remotely* related to a third-party organization's spending. Here, Plaintiffs' alleged right to disseminate

13

government-collected information does not align with any right that Plaintiffs have alleged.

Third, the *Havens* statute eliminated prudential standing, so the zone-of-interest test did not apply. When a plaintiff – whether individual or organizational – sues under a statute that does not eliminate prudential standing, that plaintiff cannot bypass the zone-of-interest test or other prudential limits on standing.[4] Typically, it would be fanciful to suggest that a statute has private, third-party spending in its zone of interests. Here, this Court might – or might not – find that the PRA sought to ease Plaintiffs' missions with respect to disseminating employer data, but that is not uniformly true for all statutes or all institutional plaintiffs. It is important for any federal court to ask the prudential questions, if only to assure itself of its jurisdiction.

Non-mutual estoppel does not apply to the federal government, *U.S. v. Mendoza,* 464 U.S. 154, 162 (1984), and *stare decisis* cannot be applied so conclusively that, in effect, it operates as preclusion against non-parties to the prior litigation. *South Central Bell Tel. Co. v. Alabama,* 526 U.S. 160, 167-68 (1999). While Judge Millett acknowledged problematic precedent under *Havens*, those

---

[4]    For example, applying *Havens* to diverted resources in *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 939 (D.C. Cir. 1986) (R.B. Ginsburg, J.), then-Judge Ginsburg correctly recognized the need to ask whether those diverted resources fell within the zone of interests of the Age Discrimination Act. 789 F.2d at 939. There was no such inquiry here or in most diverted-resource decisions.

"cases cannot be read as foreclosing an argument that they never dealt with." *Waters v. Churchill*, 511 U.S. 661, 678 (1994) (plurality); *Cooper Indus., Inc. v. Aviall Serv., Inc.,* 543 U.S. 157, 170 (2004). *Amicus* EFELDF respectfully submits that this Court has a constitutional obligation to consider diverted-resource standing, without considering either issue preclusion or preclusive resort to *stare decisis* from decisions that did not expressly consider the issues that the Government and *amicus* EFELDF raise.

### D.    Plaintiffs' claimed injuries do not establish standing under binding Circuit and Supreme Court precedent.

In general, "[o]ne three-judge panel… does not have the authority to overrule another three-judge panel of the court." *LaShawn A. v. Barry,* 87 F.3d 1389, 1395 (D.C. Cir. 1996) (*en banc*); *accord General Comm. of Adjustment, GO-386 v. Burlington Northern & Santa Fe Ry. Co.*, 295 F.3d 1337, 1340 (D.C. Cir. 2002) (Circuit precedent binding unless overturned by the *en banc* Court or the Supreme Court). That said, *amicus* EFELDF respectfully submits that the lack of preclusion against the federal government and a prior Circuit precedent's failure to consider a controlling Circuit and Supreme Court precedent – such as those cited above – would readily allow a three-judge panel of this Court to reject a prior panel decision. As applied here, that principle would allow a three-judge panel to reject the District Court's reliance on Circuit precedent such as *PETA*. If Plaintiffs question the *EPIC* panel's authority to buck *PETA*, this Court must question the *PETA* panel's authority

15

to buck *Florida Audubon*,[5] *Stevens*, and *McConnell*. Since *PETA* – not *EPIC* – is inconsistent with controlling Circuit and Supreme Court precedent, that is not a fight Plaintiffs can win.

Then-Judge Ginsburg's *Action Alliance* decision is simply inapposite. That case involved a challenge to an agency-specific information-restrictive regulation that – if stricken – would enable the plaintiffs to obtain information under a more permissive, government-wide regulation. *See* 789 F.2d at 936-37. Unlike EEOC's information-collection actions here, the regulations at issue in *Action Alliance* had the force of law. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979) (duly promulgated substantive or legislative rules have the force of law). Thus, the *Action Alliance* plaintiffs asserted a legally protected interest in information under the permissive regulation that would exist if a court struck the allegedly unlawful agency-specific restrictive regulation. Here, by contrast, Plaintiffs have no legally protected interest in EEOC's data-collection and data-dissemination plans.

*PETA*, by contrast, might aid Plaintiffs here, but for at least two drawbacks: (1) *PETA* did not consider whether the plaintiffs there had a legally protected interest and so *PETA* cannot control on that issue; (2) the Supreme Court in *Stevens* and

---

[5]    Although *Florida Audubon* might be called a "procedural standing" case, that is only because the plaintiffs' "informational standing" argument was flatly rejected. Neither *PETA* nor Plaintiffs have explained why *PETA* could disregard the *en banc* decision in *Florida Audubon*.

*McConnell* and this Court pre-*PETA* in *Shays* mandate that this Court consider whether a plaintiff has a legally protected interest. *See also* Gov't Br. at 22-24 (distinguishing *PETA*); note 5, *supra* (discussing *PETA*'s inconsistency with *Florida Audubon*). *Amicus* EFELDF respectfully submits that this case might present an appropriate occasion to revisit *Havens* along the lines suggested above, *see* Section I.C, *supra*, and by Judge Millett. 797 F.3d at 1100-01 (Millett, J., *dubitante*). But this Court easily could decide this case for the Government without revisiting *PETA* by focusing on the lack of a legally protected interest here, an issue on which the *PETA* majority was silent. On the other hand, before this Court rejects *EPIC* in favor of the previously decided *PETA*, this Court would first need to square *PETA* with the *en banc* rejection of information-based standing in *Florida Audubon* and the requirement for a legally protected interest in *Stevens*, *McConnell*, and *Shays*.

## II.    THE DISTRICT COURT'S REMEDY AGAINST EEOC EXCEEDED THE DISTRICT COURT'S AUTHORITY.

Assuming *arguendo* that this Court finds the Plaintiffs had standing to void *OMB's stay* would not automatically mean that the District Court had either the authority or even the Article III jurisdiction for relief *against EEOC*.

### A.    Plaintiffs lack standing for the remedy against EEOC.

Even if Plaintiffs have standing against OMB, it need not follow that Plaintiffs have standing against EEOC. Instead, a plaintiff must establish its standing for each claim raised and each form of relief requested: "standing is not dispensed in gross."

17

*Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 & n.5 (2006). Because the standing inquiry asks whether a plaintiff has a legally protected interest in the relief the plaintiff seeks, *see* Section I.A, *supra*, this Court must resolve whether – in addition to having standing against OMB's allegedly unlawful stay – Plaintiffs also have standing to compel EEOC to take action that EEOC is under no legal obligation whatsoever to take. Here, Plaintiffs lack any such claim against EEOC, which is not even open to dispute:

> It is undisputed that Plaintiffs here do not have a statutory right to the information they allege forms their injury in fact.

JA:145. Accordingly, Plaintiffs cannot have standing against EEOC, even if they had it against OMB.

### B. Plaintiffs lack the irreparable harm required for injunctive relief against EEOC.

Injunctive relief traditionally requires both the lack of an adequate remedy and the existence of irreparable harm in the absence of relief, *Beacon Theatres v. Westover*, 359 U.S. 500, 507 (1959); *Gardner v. U.S.*, 211 F.3d 1305, 1311 (D.C. Cir. 2000), but the APA relaxes that standard: "The reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A). While EFELDF does not concede that Plaintiffs have standing against either OMB or EEOC, *see* Sections I (OMB), II.A (EEOC), *supra*,

18

merely having standing is not enough. Even with standing, Plaintiffs would lack the irreparable harm required for the District Court's injunctive relief beyond *vacatur* of the allegedly unlawful *OMB stay*.

Although the irreparable-harm and standing inquiries overlap, *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1508 (D.C. Cir. 1995), plaintiffs must show even more to establish irreparable harm. *In re Navy Chaplaincy*, 534 F.3d 756, 766 (D.C. Cir. 2008) ("to show irreparable harm, a plaintiff must do more than merely allege harm sufficient to establish standing") (internal quotations and alternations omitted). Indeed, injuries that qualify as sufficiently immediate under Article III can nonetheless fail to qualify under the higher bar for irreparable harm. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149-50, 162 (2010). Plaintiffs cannot make the showing required for injunctive relief.

Moreover, even assuming that Plaintiffs' self-inflicted injuries somehow constitute standing under *Havens*, *but see* Section I.C, *supra*, self-inflicted expenditures cannot qualify as irreparable injury: "self-inflicted wounds are not irreparable injury." *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003); *accord Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("injury … may be discounted by the fact that [a party] brought that injury upon itself"); *Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002). Instead, the "the injury must be both

19

certain and great." *Wisconsin Gas Co. v. Fed'l Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985). Plaintiffs cannot meet the high bar that irreparable harm requires because EEOC has no obligation either to collect or to disseminate the information that Plaintiffs seek, and Plaintiffs could avoid their expenditures by simply stopping them.

To be sure, there is "a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (internal quotations omitted). By the same token, the public interest also contemplates the potential to improperly *frustrate* government:

> It is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of … governments in carrying out their domestic policy.

*Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943); *Yakus v. U.S.*, 321 U.S. 414, 440 (1944) (equitable relief that affects competing public interests "has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff"). Under the circumstances, *vacatur* of OMB's stay should have terminated the District Court's jurisdiction by terminating the only allegedly ongoing unlawful agency action. *Cf. Green v. Mansour,* 474 U.S. 64, 66-67 (1985). Both the officer-suit exception to sovereign immunity and the APA do not provide for *retrospective* relief. *Edelman v. Jordan*, 415 U.S. 651, 668 (1974); *Mansour*, 474

U.S. at 68-69; 5 U.S.C. §706(2). Even assuming *arguendo* that Article III posed no

barrier here, the District Court should not have – in effect – granted Plaintiffs relief

in a second case *against EEOC* when it is doubtful Plaintiffs have a cause of action

to assert that case.

## **CONCLUSION**

This Court should reverse the District Court's decision and orders and remand

with instructions to dismiss for lack of standing. But even if this Court finds standing

to pursue the underlying action against OMB, this Court should vacate the relief

against EEOC.

Dated: August 26, 2019                    Respectfully submitted,


<u>    /s/ Lawrence J. Joseph                    </u>
Lawrence J. Joseph, D.C. Bar #464777
1250 Connecticut Ave. NW
        Suite 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Amicus Curiae Eagle Forum*
*Education & Legal Defense Fund*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32</u>

1.    The foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 5,069 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Circuit Rule 32.2.

2.    The foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in Times New Roman 14-point font.

Dated: August 26, 2019          Respectfully submitted,


    /s/ Lawrence J. Joseph

Lawrence J. Joseph, D.C. Bar #464777
1250 Connecticut Ave. NW
    Suite 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Amicus Curiae Eagle Forum
Education & Legal Defense Fund*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of August, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system, causing the service on counsel for the parties to this action via electronic means.

/s/ Lawrence J. Joseph
Lawrence J. Joseph, D.C. Bar #464777
1250 Connecticut Ave, NW, Suite 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Amicus Curiae Eagle Forum
Education & Legal Defense Fund*