**[ORAL ARGUMENT NOT SCHEDULED]**
**No. 19-5130**

*In the*
United States Court of Appeals
*for the*
District of Columbia Circuit

———————————————

NATIONAL WOMEN'S LAW CENTER, *et al.*,

*Plaintiffs-Appellees,*

– v. –

OFFICE OF MANAGEMENT AND BUDGET, *et al.*,

*Defendants-Appellants.*

———————————————

On appeal from the
United States District Court for the District of Columbia
Case No. 17-2458

———————————————

**SUPPLEMENTAL APPENDIX OF PLAINTIFFS-APPELLEES**

———————————————

EMILY MARTIN
SUNU P. CHANDY
MAYA RAGHU
*National Women's Law Center*
*11 Dupont Center, Suite 800*
*Washington, D.C. 20036*
*(202) 588-5180*

JAVIER M. GUZMAN
ROBIN F. THURSTON
JEFFREY B. DUBNER
*Democracy Forward*
*Foundation*
*P.O. Box 34553*
*Washington, D.C. 20043*
*(202) 448-9090*

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

Plaintiffs' Request for a Status Conference, D. Ct. Dkt. No. 47 ..............1

    Att. C, D. Ct. Dkt. No. 47-3 ....................................................5

March 19 Hearing Transcript .................................................8

Plaintiffs' Post-Hearing Summation, D. Ct. Dkt. No. 68 ......................28

USCA Case #19-5130      Document #1811482         Filed: 10/18/2019      Page 3 of 48

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WOMEN'S LAW CENTER, *et al*., | : : : |
| *Plaintiffs*, | : : : |
| vs. | Civil Action No. 17-2458 (TSC) |
| OFFICE OF MANAGEMENT AND BUDGET, *et al*., | : : : |
| *Defendants*. | : : : |

### PLAINTIFFS' REQUEST FOR A STATUS CONFERENCE

Plaintiffs respectfully request that the Court convene a status conference in this matter to discuss Defendants' compliance with the Court's Memorandum Opinion and Order of March 4, 2019 (hereafter, collectively "Order").[1]

As the Court is aware, it entered summary judgment in Plaintiffs' favor on March 4, 2019, and issued an Order stating that: "OMB's stay of EEOC's revised EEO-1 form and the September 15, 2017 Federal Register Notice (Stay the Effectiveness of the EEO-1 Pay Data Collection, 82 Fed. Reg. 43362) announcing the same are VACATED." Dkt. No. 46. The Memorandum Opinion accompanying this Order also stated that "It is further ORDERED that the previous approval of the revised EEO-1 form shall be in effect." Dkt. No. 45.

---

[1] Plaintiffs conferred with Defendants as required by Local Civil Rule 7(m) regarding this request. Defendants' position is that "Defendants are working diligently to comply with the Court's recent order and therefore believe that Plaintiffs' request for a status conference is unnecessary at this time."

Defendant EEOC previously had announced that the reporting period for the 2018 EEO-1 Report would open in early March, later refining the date to March 18, 2019.[2]  Since the Court issued its Order, Plaintiffs have requested information about Defendants' plans for compliance from Defendants' counsel. Defendants have declined to provide any specific information. *See* Att. A. On Saturday March 16, 2019, Defendants' counsel emailed Plaintiffs' counsel stating that:

> EEOC has informed us that it intends to post the following notice on its website either tomorrow evening or early Monday morning: "As it announced at the end of January, the EEOC is opening its EEO-1 online portal to receive 2018 EEO-1 Component 1 data starting March 18, 2019 and ending May 31, 2019.  The EEOC is working diligently on next steps in the wake of the court's order in *National Women's Law Center, et al., v. Office of Management and Budget, et al.*, Civil Action No. 17-cv-2458 (TSC), which vacated the OMB stay on collection of Component 2 EEO-1 pay data.  The EEOC will provide further information as soon as possible."

*See* Att. B.

On March 18, 2019, the EEOC opened the 2018 EEO-1 Survey for employer reporting.[3]

The EEOC also issued the following statement:

**Statement on the 2018 EEO-1 Portal Opening for Component 1 Data**

As it announced on February 1, the EEOC is opening its EEO-1 online portal to receive 2018 EEO-1 **Component 1 data** starting March 18, 2019, and ending May 31, 2019.  Instructions for filing are available here: https://www.eeoc.gov/employers/eeo1survey/index.cfm.

The EEOC is working diligently on next steps in the wake of the court's order in National Women's Law Center, et al., v. Office of Management and Budget, et al., Civil Action No. 17-cv-2458 (TSC), which vacated the OMB stay on collection of

---

[2] EEOC, Press Release, "EEO-1 Survey for 2018 Will Open Early March 2019" (Feb. 1, 2019), https://www.eeoc.gov/eeoc/newsroom/release/2-1-19.cfm.
[3] EEOC, "2018 EEO-1 Survey", https://www.eeoc.gov/employers/eeo1survey/.

> **Component 2 EEO-1 pay data**. The EEOC will provide further information as soon as possible.[4]

In short, EEOC has opened the 2018 EEO-1 reporting period only as to Component 1 data, not as to the Component 2 pay data that is the subject of the instant litigation and the Court's Order. Both before and after this action, Plaintiffs have requested information about EEOC's timeframe for compliance and plans for alerting the reporting community to the obligation to submit Component 2 pay data, but Defendants' counsel has not provided any information beyond the content of the notice. *See* Atts. A, B.

Defendants' delay in complying with the Court's order, and inability or unwillingness to provide any information about their plans to do so, is especially concerning because Defendants previously represented that it would take OMB "1 day" to "get Component 2 'live' should plaintiffs prevail in this case." *See* Att. C. Defendants made this representation while seeking Plaintiffs' consent to extend the summary judgment briefing schedule, in response to Plaintiffs' concerns that further delay could put the collection of 2018 data at risk. Defendant EEOC did not contradict OMB's representation at that time, and Defendants have not explained the inconsistency with their current actions in response to Plaintiffs' recent inquiries.

Accordingly, Defendants are out of compliance with the Court's Order. Moreover, in light of the deadline of May 31, 2019 for employers to submit their EEO-1 reports for 2018, further delay in opening reporting for Component 2 pay data, and the possibility of employers submitting Component 1 data without Component 2 pay data, risks logistical difficulties and gaps in employer compliance. Plaintiffs therefore respectfully request that the Court convene a

---

[4] EEOC, "Statement on the 2018 EEO-1 Portal Opening for Component 1 Data", https://www.eeoc.gov/employers/eeo1survey/statement-2018-opening.cfm (emphasis in original).

status conference at its earliest possible convenience in order to obtain information regarding

Defendants' plan for compliance with the Court's Order and to provide guidance regarding the

Court's expectations for compliance.

Dated: March 18, 2019                    Respectfully submitted,


                                         /s/ *Robin F. Thurston*___

                                         Robin F. Thurston (DC Bar No. 1531399)
                                         Javier M. Guzman (DC Bar No. 462679)
                                         Jeffrey B. Dubner (DC Bar No. 1013399)
                                         Democracy Forward Foundation
                                         P.O. Box 34553
                                         Washington, DC 20043
                                         (202) 448-9090
                                         rthurston@democracyforward.org
                                         jguzman@democracyforward.org
                                         jdubner@democracyforward.org

                                         Fatima Goss Graves (DC Bar No. 481051)
                                         Emily J. Martin (DC Bar No. 991968)
                                         Sunu Chandy (DC Bar No. 1026045)
                                         Maya Raghu (DC Bar No. 1035558)
                                         National Women's Law Center
                                         11 Dupont Circle, NW, Ste 800
                                         Washington, DC 20036
                                         (202) 588-5180
                                         fgraves@nwlc.org
                                         emartin@nwlc.org
                                         schandy@nwlc.org
                                         mraghu@nwlc.org

                                         *Attorneys for Plaintiffs*

# Attachment C

**Robin Thurston**

| | |
|---|---|
| **From:** | Moore, Tamra (CIV) <Tamra.Moore@usdoj.gov> |
| **Sent:** | Monday, December 3, 2018 4:11 PM |
| **To:** | Robin Thurston |
| **Cc:** | Jeff Dubner; Westmoreland, Rachael (CIV) |
| **Subject:** | RE: NWLC, et al. v. OMB, et al. -- have a second to talk this morning? |

Hi Robin,

I apologize (again) for the delay.  I've heard back from OMB about your request to know how much time it will take OMB to get Component 2 "live" should plaintiffs prevail in this case.  OMB said "1 day."  We are waiting to hear back from EEOC – apparently the person who would have knowledge of this is out of the office today.  But they will get back to me tomorrow.
Does any of this help?

Tamra

Tamra T. Moore
United States Department of Justice
Civil Division – Federal Programs Branch
1100 L Street N.W.
Washington, D.C. 20005
Direct Dial: (202) 305-8628
Fax: (202) 616-8470

This message and any attachments may be protected by the attorney-client privilege, work product doctrine, or other applicable protection.  If you are not the intended recipient or have received this message in error, please notify the sender and promptly delete the message.

**From:** Robin Thurston <rthurston@democracyforward.org>
**Sent:** Monday, December 03, 2018 12:50 PM
**To:** Moore, Tamra (CIV) <tammoore@CIV.USDOJ.GOV>
**Cc:** Jeff Dubner <jdubner@democracyforward.org>; Westmoreland, Rachael (CIV) <rwestmor@CIV.USDOJ.GOV>
**Subject:** Re: NWLC, et al. v. OMB, et al. -- have a second to talk this morning?

Hi Tamra,

Yes, that's the right framing of the question.  Thanks for passing it along.

Robin

On Mon, Dec 3, 2018 at 12:32 PM Moore, Tamra (CIV) <Tamra.Moore@usdoj.gov> wrote:

Ah, ok.  Let me pass that question along to both OMB and EEOC and get back to you with their respective responses.  And to make sure that I fully understand your question - -plaintiffs want to know how long it would take to get component 2 "live" for employer filing purposes?  Is that the correct framing of the question?  If not, please feel free to reframe it in the wording that you think makes most sense.  I'd hate to pass along the incorrect question.

Tamra T. Moore

United States Department of Justice

Civil Division – Federal Programs Branch

1100 L Street N.W.

Washington, D.C. 20005

Direct Dial: (202) 305-8628

Fax: (202) 616-8470

This message and any attachments may be protected by the attorney-client privilege, work product doctrine, or other applicable protection.  If you are not the intended recipient or have received this message in error, please notify the sender and promptly delete the message.

**From:** Robin Thurston <rthurston@democracyforward.org>
**Sent:** Monday, December 03, 2018 12:17 PM
**To:** Moore, Tamra (CIV) <tammoore@CIV.USDOJ.GOV>; Jeff Dubner <jdubner@democracyforward.org>
**Cc:** Westmoreland, Rachael (CIV) <rwestmor@CIV.USDOJ.GOV>
**Subject:** Re: NWLC, et al. v. OMB, et al. -- have a second to talk this morning?

Hi Tamra and Rachael,

Thank you for the email and the information.  We're talking with our clients, and will respond to your extension request later today.  In the meantime, it would also be helpful to know whether the agencies have an estimate of how much time, if any, they would like to implement a court ruling in plaintiffs' favor.  If we could signal that date to the Judge, that might alleviate some of our concern about time continuing to pass during a more prolonged briefing schedule.

Thanks very much,

Robin

On Mon, Dec 3, 2018 at 10:37 AM Moore, Tamra (CIV) <Tamra.Moore@usdoj.gov> wrote:

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
* * * * * * * * * * * * * * * *

NATIONAL WOMEN'S LAW,            )
CENTER, et al.,                  )  Civil Action
              Plaintiffs,        )  17-CV-2458
vs.                              )
                                 )
OFFICE OF MANAGEMENT AND         )  March 19, 2019
BUDGET, et al.,                  )  11:33 a.m.
              Defendants.        )
                                 )  Washington, D.C.

* * * * * * * * * * * * * * * *

**TRANSCRIPT OF STATUS CONFERENCE**
**BEFORE THE HONORABLE TANYA S. CHUTKAN,**
**UNITED STATES DISTRICT COURT JUDGE**

**APPEARANCES:**

FOR PLAINTIFFS:      ROBIN FRANCES THURSTON
                     JEFFREY B. DUBNER
                     Democracy Forward Foundation
                     P.O. Box 34553
                     Washington, DC 20043
                     (202) 448-9090
                     Email: Rthurston@democracyforward.org

                     SUNU P. CHANDY
                     National Women's Law Center
                     11 Dupont Circle, Suite 800
                     Washington, DC 20036
                     202-588-5180
                     Email: Schandy@nwlc.org

FOR DEFENSE:         TAMRA TYREE MOORE
                     U.S. Department of Justice
                     Civil Division, Federal Programs Branch
                     1100 L Street, NW
                     Washington, DC 20005
                     (202) 305-8628
                     Email: Tamra.moore@usdoj.gov

ALSO PRESENT:        Carlotta P. Wells, Federal Programs Branch

Court Reporter:      Elizabeth Saint-Loth, RPR, FCRR
                     Official Court Reporter

Proceedings reported by machine shorthand,
transcript produced by computer-aided transcription.

```
 1                        * * * * *
 2              THE DEPUTY:  Civil Action 17-2458, National
 3    Women's Law Center, et al. versus Office of Management and
 4    Budget, et al.
 5              Would counsel please approach the podium and
 6    identify yourselves for the record.
 7              MS. THURSTON:  Robin Thurston for plaintiffs.
 8    With me at counsel's table are Jeffrey Dubner and Sunu
 9    Chandy for the National Women's Law Center.
10              THE COURT:  Good morning.
11              MS. MOORE:  Good morning, Your Honor.
12    Tamra Moore on behalf of the Government.  And with me at
13    counsel's table is Carlotta Wells.
14              THE COURT:  Good morning.  Okay.
15              So Ms. Westmoreland isn't here?
16              MS. MOORE:  No, she's not.
17              THE COURT:  Okay.  We are here because I received
18    a request from the plaintiffs -- plaintiffs' request for a
19    status conference, Document 47, yesterday regarding an
20    announcement or a statement on the EEO website.
21              As the parties are aware, on March 4th, I entered
22    summary judgment in plaintiffs' favor in this case.  And my
23    order vacated OMB's stay of the EEOC's revised EEO-1 form,
24    and the September 15th, 2017 Federal Register notice
25    announcing the same.  In my opinion, I said that:  It is
```

1    further ordered that the previous approval of the revised

2    EEO-1 form shall be in effect.

3          I understand from the plaintiffs that the EEOC has

4    the following statement on its website that:  As it

5    announced on February 1, the EEOC is opening its EEO-1

6    online portal to receive 2018 EEO-1 Component 1 data

7    starting March 18, 2019, and ending May 31, 2019.

8          The announcement gives instructions for -- a link

9    for instructions for filing on the website, and then went on

10    to say that:  The EEOC is working diligently on next steps

11    in the wake of the court's order in *National Women's Law*

12    *Center, et al. versus Office of Management and Budget,*

13    *et al.*, Civil Action No. 17-CV-2458, which vacated the OMB

14    stay on collection of Component 2 EEO-1 pay data.  The EEOC

15    will provide further information as soon as possible.

16          And I think it's that last statement that has

17    plaintiffs concerned about when the EEOC plans to comply

18    with the Court's order.

19          It's my understanding that counsel for plaintiffs

20    have been trying to get information about EEOC's time frame

21    for compliance with this Court's order, but hasn't received

22    anything specific beyond the March 18th notice on the

23    website.  And plaintiff also states in its notice that

24    defendant OMB has previously represented that it would take

25    it about a day to get Component 2 live should plaintiffs

4

1       prevail in this case.

2               They attached an email to their notice which does

3       support that assertion.  And I realize that OMB has not had

4       a chance to respond, so I am going to hear from you,

5       Ms. Moore.

6               But my first question to you is -- plaintiffs

7       contend that you're out of compliance with my order; so

8       what's your response to that?

9               And I would also note, Ms. Moore, that they

10      represent that:  During negotiations to extend the summary

11      judgment briefing schedule, one of the factors that weighed

12      heavily on their agreeing not to oppose -- to agree on the

13      extension was OMB's statement that it would take one day to

14      get Component 2 live if plaintiffs won.

15              And so they agreed to the extended briefing

16      schedule based partially on that representation.  So what's

17      going on?

18              MS. MOORE:  Good morning, Your Honor.

19              I'm happy to address your questions.

20              As you noted, Your Honor, on March 4th this Court

21      issued its decision vacating OMB's stay, and further

22      ordering that the previous approval shall be in effect.

23              Since this Court's order, EEOC and defendants have

24      been working diligently to assess how to move forward.  As I

25      understand it, there are several considerations that

1    complicate --

2            THE COURT:  But how -- doesn't that -- "working

3    diligently to assess how to move forward," doesn't that

4    conflict with your representation to plaintiffs during

5    negotiations for the scheduling that you could go live in a

6    day?

7            MS. MOORE:  No, Your Honor.

8            In the context of -- as that email actually

9    states -- there are a couple of issues.

10           One, as the email states, OMB had said or had told

11   me at that time that they could revoke its stay decision

12   within one day.

13           As the email that plaintiffs' counsel appended to

14   her notice further states, I was waiting on defendant EEOC

15   to provide me information about how much time it would take

16   it to be able to comply if the Court issued an order

17   vacating the stay.

18           At the time, I did not -- as that email further

19   states, the person who had that information and would be

20   able to provide that information was out of the office.  So

21   counsel and I went forward with the information that I was

22   able to provide about OMB and agreed to a briefing schedule

23   that we subsequently filed briefs in response to.

24           Your Honor, I'd just further note that both

25   defendants are working to respond to the Court's order.

1         The issue here is that, when the Component 1 data

2    that's being collected now was actually collected at the end

3    of the calendar year 2018, employers had been told during

4    the stay that they should go ahead and collect the

5    Component 1 data and that the window opened to collect it

6    between October 1 and December 31st of last year.  So at the

7    time that this Court issued its order on March 4th,

8    employers had already collected the Component 1 data.

9    Because the stay had been in place, they had not collected

10   Component 2 data.

11         THE COURT:  And the longer you wait to tell them

12   that they need to collect it, the longer this is going to

13   take.

14         I mean, here is my concern, Ms. Moore:  This whole

15   briefing schedule was expedited by everybody; by plaintiffs,

16   defendants -- all worked together to move this quickly

17   because of the time limits that are inherent in this case.

18         This Court and her staff worked -- you know, I

19   worked over my vacation to try and get this opinion done.

20   And we all put in a lot of long hours and a lot of time

21   because of the time-sensitive nature of what's at issue

22   here.

23         So now -- I mean, you keep saying we're "working

24   diligently," but you have had since March 4th.  It doesn't

25   seem complicated to me.  Maybe I'm not understanding.

7

```
 1              MS. MOORE:  Yes, Your Honor.  I understand that
 2    everybody has been working diligently in order to be able to
 3    brief --
 4              THE COURT:  Right.  But I issued my order on the
 5    4th.  We're now -- that's two weeks ago.
 6              MS. MOORE:  Your Honor, there are a couple of
 7    issues that complicate this.  One, as the Court's order was
 8    issued on March 4th -- as I was trying to explain, employers
 9    had collected the data that they are now submitting at the
10    end of last calendar year.  They never collected the pay
11    data.
12              At the time that OMB issued its stay, on
13    August 29th, 2017, at that time, employers hadn't even begun
14    to collect pay data.  My understanding is that pursuant to
15    the revised EEO-1 --
16              THE COURT:  But wouldn't it make sense -- I'm
17    sorry to interrupt you.
18              But wouldn't it make sense that, as of March 4,
19    EEOC or OMB somebody says:  Hey, guess what, you all need to
20    start collecting this now.  You still haven't told them
21    that.  You're still telling them:  Hold on, wait and see.
22    Wait for what?
23              MS. MOORE:  Your Honor, my understanding is EEOC
24    is, right now, trying to assess when it would be in a
25    position to collect the pay data and also when it would be
```

```
1    in a position to instruct employers to start collecting it.

2    And, Your Honor, I just --

3              THE COURT:  That doesn't make any sense to me.

4              MS. MOORE:  Well, Your Honor, let me just take a

5    step back and explain that.

6              At the time that -- had OMB not issued its stay on

7    August 29th, 2017, employers would have had a month and a

8    half to get ready to begin collecting Component 1 and

9    Component 2 data.

10             THE COURT:  Right.

11             MS. MOORE:  That was in 2017.

12             OMB issued its stay.  It has been in effect, as

13   Your Honor noted, for a year and a half.

14             THE COURT:  Right.

15             MS. MOORE:  On March 4th this Court issued its

16   order vacating the stay, and further ordered that the

17   previous approval shall be in effect.  Both defendants are

18   acting consistent with this Court's order stating that OMB's

19   decision is vacated and that --

20             THE COURT:  Well, actually, you are not -- all you

21   are doing is saying:  The Court issued its decision, stay

22   tuned for what you need to do.  And that seems to me to be

23   ignoring a very real time constraint here, which is the

24   May 31st deadline.

25             MS. MOORE:  Your Honor, we're not entirely clear
```

1    that the -- I am not sure that the May -- the May 31st

2    deadline is for Component 1 data; and that deadline was

3    moved as a result of the Government shutdown.  So I am

4    trying to explain that employers had collected the

5    Component 1 data back in the 2018 calendar year.  They have

6    not collected --

7         THE COURT:  And they are not going to because you

8    haven't told them to start doing it.

9         MS. MOORE:  Right.  And, Your Honor, the EEOC -- I

10   understand the Court's frustration.  I understand

11   plaintiffs' frustration.  We are working.  The client is

12   working.  We are trying to get this information from the

13   client and moving forward.

14        THE COURT:  All right.  I am going to need more

15   than:  We are working diligently.

16        MS. MOORE:  Your Honor, we would ask that -- as I

17   was trying to explain the issues that were complicating

18   immediate response to the Court's order, as I noted, one,

19   that the stay had been in effect; Court's order was lifted.

20   Employers had not yet collected Component 2 --

21        THE COURT:  And this may be beyond your -- I

22   understand you are the lawyer; you are not the person who is

23   in charge of compliance.

24        But how -- what -- I don't understand why on March

25   5th or March 6th or March 7th there couldn't have been a

1    statement posted on the website saying:  There has been a

2    court order; start collecting this data.  We'll tell you how

3    to post it and how to file it, but you need to start

4    collecting it.

5          MS. MOORE:  Your Honor, I understand that.

6          There are a couple of things.  One, we were still

7    trying to process the Court's order.  Two, as I noted,

8    employers had not collected the Component 2 data.  They

9    don't -- as far as I understand, they need to be -- there

10   may be additional instructions that need to be provided.

11   It's going to take -- I understand that the Court issued its

12   order --

13         THE COURT:  You are not reinventing the wheel

14   here, are you?

15         I mean, employers used to collect this data before

16   OMB issued its stay.  No?

17         MS. MOORE:  No.  Your Honor, this is a completely

18   new collection of information.

19         THE COURT:  Okay.

20         MS. MOORE:  It has never before been collected.

21   Unlike the Component 1 data which EEOC has collected for 50

22   years.

23         THE COURT:  But, I mean, while I realize everybody

24   is confident in their position, surely, you-all -- EEOC must

25   have realized that it could lose?  I mean, surely there must

1    have been some preparation for a plan in place if you lost.

2            MS. MOORE:  Your Honor, we are working very hard

3    to get a plan in place.  As I noted, the plan that EEOC is

4    trying to devices is trying to take into account the fact

5    that employers had not made any preparation, had not

6    collected the Component 2 data.

7            And, Your Honor, I have also been told, since this

8    Court issued its order on March 4, that EEOC is in the

9    process of, I guess, revising or changing its IT system so

10   that they can better take in this information and be able to

11   process it in a way -- so there are a couple of different

12   issues that are complicating defendant EEOC's ability to

13   just issue an instruction that employers should immediately

14   submit information that they have not yet collected.

15           THE COURT:  This lawsuit was filed in -- remind me

16   when it was filed, Ms. Thurston, if you remember.

17           MS. MOORE:  2018.

18           MS. THURSTON:  November 2017.

19           THE COURT:  So it was filed in November 2017; it's

20   been pending since that time.

21           My concern is that -- while everybody hopes that

22   they're going to prevail in a lawsuit, EEOC has had time --

23           MS. MOORE:  Your Honor, they have.  They have not

24   just been sitting idly by.

25           They have hired a new chief data officer.  My

1    understanding is that he's done an assessment of -- from

2    what I've been told, he's done an assessment of their prior

3    IT infrastructure, and that they have been moving forward to

4    modernize their IT infrastructure.  That is what I have been

5    told since this Court issued its order.

6        And that -- what I came here to state was that we

7    will be happy to provide the Court information -- more

8    detailed information about some of the issues that are

9    complicating the ability to respond immediately to the

10    Court's order.

11        I'd further note, Your Honor, that the Court's

12    order -- it does not provide a date certain by which this

13    data has to be collected.

14        THE COURT:  No, I didn't.  I didn't think I needed

15    to.  I understand how complicated this whole process is, and

16    I didn't want to -- I am not trying to get in the business

17    of running the EEOC.  I mean, I don't want to set an

18    unrealistic deadline.  I certainly expected that --

19        MS. MOORE:  Right.  Your Honor, I understand your

20    frustration.

21        THE COURT:  I can.

22        MS. MOORE:  I understand that, too.

23        THE COURT:  But I don't think you want me to.

24        MS. MOORE:  No, Your Honor, we do not want you to.

25        I know that we will be in a better position to

13

1    provide Your Honor with the full -- all of the information,

2    including this information about their efforts to --

3              THE COURT:  When?  When will you be in a position

4    to provide me the information?

5              MS. MOORE:  If Your Honor would -- could we have

6    until April 3rd to provide this information?

7              THE COURT:  When you say to provide this

8    information, are you talking about in the form of an

9    affidavit or something, a declaration?

10             MS. MOORE:  Just, Your Honor, to explain here are

11   some of the issues that the agency is grappling with, they

12   also include -- here is the issues that we're grappling

13   with, and here is how we plan to move forward.

14             THE COURT:  That is two weeks.

15             MS. MOORE:  Your Honor, I'd further note as I

16   noted before -- and I apologize, I understand your

17   frustration.  I, too, am frustrated.  I don't enjoy being

18   here anymore than anybody else wants to be here, Your Honor.

19             THE COURT:  Right.  I'm catching a train in an

20   hour.

21             MS. MOORE:  So I will not belabor this.  We will

22   be able to provide more information about some of the issues

23   that the agency --

24             THE COURT:  Well, I am going to want more than

25   information.  I'm going to want a time line, some projected

1   schedule.  But let me hear from Ms. Thurston.

2            MS. MOORE:  Thank you, Your Honor.

3            THE COURT:  Am I pronouncing your name correctly,

4   Thurston?

5            MS. THURSTON:  Yes.  Thank you, Your Honor.

6            It appears that Your Honor appreciates many of our

7   concerns about timing and compliance.

8            Our goal is an orderly collection of Component 2

9   data that occurs within the time frame that defendant has

10  their Component 1 data.  We appreciate that there may be

11  some implement -- that it takes effort on their part to

12  implement Your Honor's order.  But we agree that we need

13  more information than we have received to date.

14           We would like a time frame for when they intend to

15  comply and a plan for compliance, as well as a plan for

16  notifying employers about how to provide data, especially if

17  they've already begun to provide Component 1 data.

18           THE COURT:  I think that's reasonable.  I mean, I

19  take Ms. Moore's point that they haven't done this before.

20           Contrary to what a lot of people think, judges --

21  especially this judge -- are not interested in running the

22  Government.  I understand that there are complicated

23  procedures and processes in place.  I take your

24  representations in good faith.

25           My concern is I can't give you this open-ended

```
 1    like:  We're working diligently.  I mean, I'd like to know

 2    what the obstacles are.  I would like some representation

 3    from the Government -- you can give it to me in the form of

 4    affidavits, declarations, whatever -- about what you need to

 5    do to get into compliance with my order, how long you think

 6    it's going to take, a time line, as I said, or a time frame.

 7            Ms. Moore, are you saying that you don't think the

 8    collection of the Component 2 data is going to occur in the

 9    same time frame as the collection of the other data?

10            You can speak into that microphone right there.

11            MS. MOORE:  Your Honor, truthfully, I cannot make

12    any representations --

13            THE COURT:  I need to know that.

14            MS. MOORE:  Okay.  Just to clarify, Your Honor

15    wants to know whether employers will collect the Component 2

16    data at the same time that they have -- are submitting the

17    Component --

18            THE COURT:  Well, I don't know.  I mean, it says

19    component data -- you will be receiving component data.  You

20    will be opening your portal to receive Component 1 data

21    starting March 18th and ending May 31st.

22            What I'd like to know is:  Do you anticipate that

23    you will be collecting Component 2 data within that same

24    time period?  And if not, why?  And if not, when?  And I

25    want to know why not.
```

16

1        MS. MOORE:  Got it.

2        THE COURT:  I want to know as much as possible as

3   to when I can expect compliance with my order, why it is

4   taking however much time you say it's going to take, and

5   what the problems are.

6        MS. MOORE:  Got it, Your Honor.

7        MS. THURSTON:  I would like to make one other

8   point about timing.

9        THE COURT:  Yes.

10       MS. THURSTON:  As Your Honor knows, the original

11  PRA approval was for a period of three years.  It's our view

12  that the stay of the Component 2 collection tolled that

13  three-year period, but that's a legal issue that the Court

14  has not yet resolved.

15       We are concerned that approaching the expiration

16  of the three-year period there could be a dispute about

17  whether the EEOC is still bound by the Court's order, or

18  other legal issues.  It would be much -- Your Honor may have

19  to resolve those at some point.  It would be simpler if we

20  could be assured that the collection would occur, at least

21  for the 2018 data, before that period expired.

22       THE COURT:  Yes.  Ms. Moore, if you could address

23  that issue.  Because if your position is it might not, then

24  I am going to need briefing as to whether that running has

25  been tolled.  I am not anxious to delve into that unless I

1    have to right away.

2         MS. THURSTON:  And, finally, I will just note that

3    although this is the first time that Component 2 data has

4    been collected, there were significant preparations underway

5    before the stay.  The stay occurred approximately six

6    months --

7         THE COURT:  That's what I thought.  I don't think

8    it's just -- you know.  I was mistaken that it had happened

9    before, but I figured that there was some lead-in time.

10        MS. THURSTON:  Yes.  Indeed, the EEOC originally

11   approved the current -- proposed the current Paperwork

12   Reduction Act collection and gave employers a year to come

13   into compliance with Component 2.  So there was significant

14   time for employers and the agency to begin preparing for

15   that data collection.  It seems like much of those

16   preparations could be reinstated.

17        THE COURT:  It seems all right to me.

18        Let me hear from the EEOC.  They have not had a

19   chance to respond to this in writing.  But I would like to

20   know more than:  We're working diligently, especially

21   since -- you know, employers are waiting.

22        This is not -- I am mindful of the fact that this

23   is a significant burden for employers, or at least a

24   significantly increased obligation for collection of data.

25   They need to be given some guidance here, so that's also

```
 1         important from their perspective.  All right.

 2                   So wait.  Now, what is your position,

 3         Ms. Thurston, on their request for submission by April 3rd.

 4                   MS. THURSTON:  If they were to submit an actual

 5         plan for compliance and alert employers to the obligation to

 6         collect and provide the data to EEOC by April 3rd, I think

 7         that would be acceptable.  If it's --

 8                   THE COURT:  I think we're just talking about

 9         submitting a pleading to me.

10                   MS. THURSTON:  If it's just information about

11         problems and the potential future delays, it seems unlikely

12         to us that they will be able to complete the data collection

13         by May 31st; and we would request that information --

14         instead of April 3rd, have it occur within about a week.

15                   THE COURT:  Well, I'll give you the time that you

16         are asking for.  But incumbent upon what I think is a

17         relatively generous period of two weeks, I expect a lot.  I

18         expect some actual dates, not:  We hope to get this going in

19         the future as soon as possible; that's not going to be

20         acceptable.  All right?

21                   MS. MOORE:  Yes, Your Honor.

22                   THE COURT:  Thank you.

23                   MS. THURSTON:  Thank you, Your Honor.

24                   THE COURT:  Thank you, all.

25                   So defendants' submissions will be due on
```

1    April 3rd.

2              How much time do you think you'll need, if you

3    want to file a response, Ms. Thurston?

4              MS. THURSTON:  Do you know which day of the week

5    that is?

6              THE COURT:  I think it's a Wednesday.  Let me just

7    double-check, or a Thursday.

8              MS. MOORE:  Your Honor, we would be happy to move

9    it to a Friday.

10             MS. THURSTON:  I mean, if we can move it up to a

11   Friday.  We just don't want to lose more days.

12             THE COURT:  The 3rd is a Wednesday.  You mean

13   you're asking for the 5th?

14             Well, if it's due the 3rd, when would you want --

15   how much time would you need to respond?

16             MS. THURSTON:  We could respond by that Friday,

17   the 5th.

18             THE COURT:  The 5th?  Really?  Maybe you should

19   take the 8th, give yourself the weekend.

20             MS. THURSTON:  We'll take the 8th.

21             THE COURT:  Yes.  Why don't you do that.

22             Okay.  So plaintiffs' response will be due Monday,

23   April 8th.

24             All right.  Thank you, all.

25             Ms. Moore, can you address, again, the issue of --

```
1    the tolling issue, whether you -- in other words, whether

2    you are going to be complying within the time line.  And, if

3    not, what your position is regarding the plaintiffs' tolling

4    argument.  You might as well tee that one up.

5              MS. MOORE:  Yes, Your Honor.

6              THE COURT:  All right.  Thank you.

7              Thank you, all.

8              THE DEPUTY:  All rise.

9              (Whereupon, the proceeding concludes, 11:57 a.m.)

10                         *  *  *  *  *

11                          CERTIFICATE

12

13              I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby

14    certify that the foregoing constitutes a true and accurate

15    transcript of my stenographic notes, and is a full, true,

16    and complete transcript of the proceedings to the best of my

17    ability.

18

19         Dated this 20th day of March, 2019.

20
              /s/ Elizabeth Saint-Loth, RPR, FCRR
21            Official Court Reporter

22

23

24

25
```

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL WOMEN'S LAW CENTER, *et al.*, | : | |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| vs. | : | Civil Action No. 17-2458 (TSC) |
| | : | |
| OFFICE OF MANAGEMENT AND BUDGET, *et al.*, | : | |
| | : | |
| *Defendants.* | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## PLAINTIFFS' POST-HEARING SUMMATION

Pursuant to the Court's Minute Order of April 16, 2019, Plaintiffs hereby submit their written summation on the April 16, 2019 Hearing.

Plaintiffs' primary concern is that the EEO-1 pay data that would have been collected during the period of the unlawful stay actually be collected and that the collection be done in an orderly fashion that does not compromise quality—in other words, nothing more and nothing less than what would have occurred but for Defendants' unlawful actions. As Plaintiffs argued in their Response to Defendants' April 5, 2019 Submission, Dkt. No. 62 ("Response"), Defendants' plan for the data collection does not provide adequate assurances either that the missing data will be collected in full or that the collection will be orderly. Accordingly, Plaintiffs respectfully request that the Court issue the following ancillary declaratory and injunctive relief, consistent with its equitable authority to enforce its orders:

- Declare that the summary judgment opinion and order requires the collection of the missing two years of Component 2 pay data.

- Declare that the unlawful stay tolled the expiration of the three-year Paperwork Reduction Act ("PRA") approval.

- Order the EEOC to immediately take all steps necessary to complete the Component 2 data collections by September 30, 2019 (or to complete a substitute collection of calendar year 2019 data in the 2020 reporting period).

- Order the EEOC to provide notice to employers regarding the Component 2 data collections by April 26, 2019.

- Require the EEOC to provide biweekly compliance reports to Plaintiffs and the Court beginning on May 3, 2019.

- Require Defendants to exercise their emergency extension authorities if the Component 2 data collections are not complete by September 30, 2019.

- And retain jurisdiction over this matter for compliance purposes.

**1.      The Court's Authority to Order the Requested Relief Against Both Defendants.**

As a preliminary matter, Defendants have suggested that the Court's authority either to order specific relief to ensure compliance with its summary judgment order in general or to compel compliance by the EEOC in particular is limited. Defs' Reply, Dkt. No. 63 ("Reply"), at 1-2; Apr. 16, 2019 Hr'g Tr., Dkt. No. 66 ("Hr'g Tr.") at 85-86. This suggestion is baseless.

As Plaintiffs noted in their Response and at the Hearing, the Court has inherent equitable authority to order ancillary relief to ensure that Defendants comply with the Court's Order. *See* Response at 13-14 (citing cases). Other Judges in this District recently have exercised this authority in APA cases after the vacatur of unlawful agency action. *See*, *e.g.*, Minute Order, *Nat'l Venture Cap. Ass'n v. Duke*, Civil No. 17-1912 (D.D.C. filed September 19, 2017) (Boasberg, J.), Minute Order, Dkt. No. 45 (granting Plaintiffs' motion for post-judgment

2

discovery in part) and Hearing Transcript, Dkt. No. 50, at 13-14 (the basis for permitting such discovery was to determine whether Defendants were delaying compliance with vacatur order and stating that the Court "has authority to make sure that my orders are being complied with"); *Mendoza v. Perez*, 72 F. Supp. 3d 168, 171 (D.D.C. 2014) (Howell, J.) (setting timeline for agency to conduct rulemaking to replace vacated guidance letters after the D.C. Circuit instructed the District Court to "craft a remedy to the APA violation" on remand). Thus, the type of ancillary relief requested by Plaintiffs is entirely within the Court's equitable authority to enforce its summary judgment order.

Nor does the EEOC Acting Chair's statutory administrative authority change this conclusion. Whatever discretion or administrative authority an agency has in the first instance, once the agency becomes subject to a Court order, as the EEOC is here, it does not have discretion not to comply with the conduct required by the order. While the EEOC asserted that the unlawful conduct at issue was primarily action taken by OMB, *see*, *e.g.*, Reply at 2, the EEOC is a party to the case; it was named in each of the Counts and the Prayer for Relief, Complaint, Dkt. No. 1 at 31-35; and the Court's summary judgment order vacated action by the EEOC, Mem. Op., Dkt. No. 45 at 41 (vacating the September 15, 2017 Federal Register Notice issued by the EEOC and reinstating the previously approved EEO-1 form). Put simply, as the Court noted at the Hearing, the EEOC cannot invoke its administrative authority as a basis not to comply fully or promptly with the Court's order. *See* Hr'g Tr. at 84 (stating that the EEOC cannot use its administrative authority to "delay the remedy" ordered).

This conclusion is buttressed by the fact that the EEOC's discretion as to the administration of the EEO-1 is limited by its own regulations, which require that employers file the operative version of the EEO-1 form annually. 29 C.F.R. § 1602.7. Per the Court's summary

judgment decision, the current EEO-1 form includes the Component 2 data collection. Neither

the regulations nor the PRA itself provide discretion for the Commission to waive this

requirement for a reporting year—as the Commission now proposes to do with 2017 calendar

year pay data.

### 2.   Collection of Two Years of Component 2 Data.

As Plaintiffs stated in their Response, Defendants have implicitly conceded that the

vacatur of OMB's stay of the data collection requires the collection of two years' worth of pay

data. Response at 13. In Defendants' own words, "[b]ut for OMB's decision to stay the

collection of this data, employers would have gathered 2017 Component 2 data during a pay

period of their choice between October 1, 2017, and December 31, 2017, and submitted that data

to the EEOC on or before March 31, 2018." Defs.' Submission, Dkt. No. 54 ("Submission") at 2

(footnote omitted). Defendants did not did not deny, either in their Reply or at the Hearing, that

the Court's order requires that this data be collected—yet they state that the Acting Chair has

determined that the EEOC will forego the collection of calendar year 2017 data, purportedly

based on her authority to administer the operations of the Commission. Reply at 2. As discussed

above, the Acting Chair does not have administrative authority to ignore the requirements of this

Court's summary judgment order. Accordingly, Plaintiffs request that the Court explicitly

require the EEOC to collect a second calendar year of Component 2 data in addition to calendar

year 2018 data.

The EEOC has objected to collecting Component 2 data for calendar year 2017 based on

"concerns" that doing so "could decrease response rates and increase errors in the entire data

collection process." Submission at 4. Plaintiffs have explained why these "concerns" are

speculative and not substantiated. Response at 13. At the Hearing, when questioned by the Court

about the stated concerns, the EEOC's Chief Data Officer, Dr. Samuel Haffer, speculated that

employers' databases might have changed in the intervening calendar year and that the EEOC has a better likelihood of receiving quality data by focusing employers' attention on one year of data. Hr'g Tr. at 53-54. Dr. Haffer's testimony did not provide specific reasons why collecting 2017 Component 2 data would not be feasible for the current collection period, nor has the EEOC established that it could not overcome its "concerns" through additional contracting support or by providing employers with brief additional time to comply. *See* Haffer Decl., Dkt. No. 54-1, ¶ 25 (cost of collecting Component 2 data for 2017 would increase EEOC's costs by only 25 percent).

In any event, Dr. Haffer's testimony only concerned the perceived ability to collect data pertaining to a particular year, not to the ability to collect two years of data as a general matter. To the latter point, Dr. Haffer testified that the EEOC would be able to collect Component 2 data for 2019 during the 2020 reporting period without any of the concerns he identified to collection of the 2017 data. Hr'g Tr. at 55. While the EEOC has not established that collecting calendar year 2017 data during the present reporting period is not feasible or that it is not required to do so, Plaintiffs would not object to the collection of 2019 calendar year data during next year's reporting instead, if it were established clearly by the Court that the EEOC is required to do so and that such collection complies with the PRA authorization.

As set forth more specifically below, Plaintiffs request that the Court issue a declaration that its summary judgment order requires collection of two years of Component 2 data, and provide a date certain in the immediate future for the EEOC to determine whether it will collect calendar year 2017 data or calendar year 2019 data, in addition to calendar year 2018 data. Doing so would provide certainty to the EEOC about its legal obligations and the terms of any contract to collect the data and to the reporting community.

### 3. Timing for Collection of Calendar Year 2018 Data.

Plaintiffs previously requested that the Court require the EEOC to develop a plan to open the Component 2 data collection in advance of the current May 31, 2019 deadline. Dkt. No. 62 at 2. Dr. Haffer testified at the Hearing that the contractor identified by the EEOC to perform the Component 2 pay data collection, NORC at the University of Chicago ("NORC"), informed him that it would refuse to conduct the data collection if it were scheduled to conclude any earlier than September 30, 2019. Hr'g Tr. at 46.

Plaintiffs cannot verify the accuracy or completeness of Dr. Haffer's representation as to the timeframe needed to conduct the Component 2 data collection, because they have not had the opportunity to depose Dr. Haffer or any NORC official, to seek written discovery of the EEOC or NORC, or otherwise to probe the factual basis for NORC's statement as relayed by Dr. Haffer. Nonetheless, Plaintiffs appreciate the Court's cautionary statement that any such discovery, even if granted, would necessarily further delay the matter. Hr'g Tr. at 78. Accordingly, Plaintiffs will assume the accuracy of Dr. Haffer's representations about NORC's view and the time needed to prepare for Component 2 collection, and therefore withdraw their request that the Court order the EEOC to conclude the Component 2 collection earlier than September 30, 2019.

Plaintiffs' decision not to contest Defendants' proposed timeframe, however, makes Plaintiffs' requests that additional assurances as to the completeness of the collection, discussed in more detail below, all the more pressing.

### 4. Post-September 30, 2019 Period.

The unlawful stay has tolled the expiration of the three-year authorization of the Component 2 data collection, which otherwise would be scheduled to occur on September 30, 2019. Defendants did not oppose Plaintiffs' position on this legal question in their Submission or

Reply, despite the Court's request at the March 19, 2019 hearing that they address the issue. Hr'g Tr. at 5-9. It is therefore appropriate for the Court to treat this issue as conceded. Hr'g Tr. at 8.

The determination that the unlawful stay tolled the three-year authorization period is also legally correct. First, it is consistent with the plain language of the PRA, which only prohibits the Director of OMB from "approv[ing] collections of information for a period in excess of three years." 44 U.S.C. § 3507(g). The statute plainly connects the three-year limitation to *OMB's actions*, not to an external constraint, a fact also reflected in the regulation authorizing stays, which provides that an agency's collection activities will cease "while the submission is pending" review by OMB. 5 C.F.R. § 1320.10(g). Here, OMB exercised its approval authority for the maximum three-year period and subsequently stayed its authority, necessarily staying the running of the three-year period. In contrast, where Congress intends to tie the expiration of a statutory deadline to a fixed, external constraint, it has clearly expressed that intention. *See*, *e.g.*, Federal Advisory Committee Act, 5 U.S.C. app. 1 § 14 (requiring that advisory committees "terminate not later than the expiration of the two-year period *beginning on the date of its establishment*") (emphasis added).

The determination that the unlawful stay tolled the expiration of OMB's authorization is also consistent with the purpose of the PRA. The PRA seeks to minimize the burden to the public of information collection while maximizing the utility of information collected by the government. 29 U.S.C. § 3501. Construing the approval to have paused when the stay was initiated and restarted when the stay was lifted would not increase the burden on filers beyond what was envisioned by the three-year approval and the PRA; the same amount of data would be collected the same number of times as OMB originally approved, and a new approval would be needed to collect data for additional reporting years.

Consistent with the PRA's purpose, OMB regularly reauthorizes information collections after expiration of the existing three-year authorization period, sometimes with changes proposed by the agency based on its experience collecting the information over the prior period. As the EEOC explained in its post-PRA approval supporting statement about the Component 2 data collection before the Court:

> The EEOC will begin collecting pay data as of March 31, 2018, and will be positioned to utilize pay data in its investigations in 2019, after the first pay data collection has been thoroughly reviewed for accuracy. As these investigations may still be ongoing at the time the next information collection request package must be submitted to OMB in late 2019, there will be limited information to evaluate for purposes of that PRA approval process. *Consistent with the PRA requirements and its commitment to assess this collection, however, the agency will consider whether changes may be warranted to increase the practical utility of the data collection or to decrease the burden on EEO-1 filers.* For example, the EEOC may consider the utility and burden of retaining the existing EEO-1 job categories or pay bands as compared to adopting new categories or bands.

Declaration of Benjamin Link, Dkt. No. 22-2 ("Link Decl."), Ex. I, Supporting Statement at 8 (emphasis added). Tolling the running of the authorization period during the unlawful stay would permit the EEOC to conduct and evaluate the information collection as it would in the normal course and then use that information to determine whether or how to propose to modify the collection in any future request to OMB for reauthorization. Both the EEOC and OMB would then have that information to determine how best to maximize the utility of the Component 2 collection and decrease the burden of its collection in future EEO-1 reports.

Because of the paucity of PRA cases and the lack of precedent for OMB's actions here, there is no legal authority of which Plaintiffs are aware that addresses specifically the effect of an OMB stay on the Section 3507(g) time period. That said, it is well established that Courts have authority to authorize a remedy that extends beyond a statutory lapse date. *See*, *e.g.*, *Burr v. Ambach*, 863 F.2d 1071, 1078 (2d Cir. 1988), *vacated*, 492 U.S. 902 (1989), *aff'd on remand sub nom. Burr v. Sobol*, 888 F.2d 258 (2d Cir. 1989) (awarding IDEA plaintiff one and one-half

years of compensatory education, even though that would provide him with education past the statutory cutoff of age 21); *Connecticut v. Schweiker*, 684 F.2d 979, 997 (D.C. Cir. 1982) ("This court has repeatedly 'reaffirmed the power of the courts to order that funds be held available beyond their statutory lapse date if equity so requires.'"); *Andrulis Res. Corp. v. U.S. Small Bus. Admin.*, No. 90-2569, 1990 WL 169318, at *2 (D.D.C. Oct. 19, 1990) (extending expiration date by which Navy could enter into contract with plaintiff, due to SBA's unlawful activity impeding the contract; collecting cases); *see also Bell v. Hood*, 327 U.S. 678, 684 (1946) (footnote omitted) ("[I]t is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.")

The conclusion is buttressed where, as here, the reasons for a post-September 30 collection result entirely from the agencies' actions, including the unlawful stay in the first instance, both agencies' total failure to engage in any "review" during the stay, the EEOC's failure to prepare a contingency plan for Component 2 data collection, and the incomplete information regarding timing for compliance provided during the litigation, Response at 3-4, Hr'g Tr. at 14. *See Carey v. Klutznick*, 637 F.2d 834, 837 (2d Cir. 1980) ("We see nothing sacred in the due date of the filing, especially when the work of the Census Bureau, at least as preliminarily demonstrated below, is incomplete. … It is the Bureau's own fault that the deadline is not being met."). The record is now clear that the agencies did not undertake any meaningful review of the Component 2 collection during the stay—OMB's purported reason for the stay in the first place—despite their representations to the Court that the existence of such a review should prevent judicial review. *See*, *e.g.*, Dkt. No. 11-1 at 22 ("OMB's decision to review and stay Component 2 is … the first step in the agency's administrative reconsideration process, a

process that, if the Court permits it to continue, is designed to result in a final approval or

disapproval decision by OMB."); Dkt. No. 27-1 at 18 (characterizing the stay as the "first step in

OMB's multi-step reconsideration process… [which ]includes consultation with the EEOC to

address the concerns raised in the challenged August 2017 memorandum."). Contrary to these

representations, as Plaintiffs previously noted, OMB's Director earlier testified that he did not

give the pay data collection additional consideration following the stay. Dkt. No. 19 at 5. And

Dr. Haffer testified that he was completely unaware of any internal "review" process. Hr'g Tr. at

64. The EEOC did not therefore appear to take any action in response to the Rao Memorandum's

directive that it prepare a new information collection package for OMB to review. Rao Memo.,

Dtk. No. 11-2, at 2. In addition, as Plaintiffs pointed out in their Response and as Dr. Haffer's

testimony confirmed, EEOC took no action to prepare to implement the Component 2 collection

during the current EEO-1 reporting period in the event that the stay lifted or Plaintiffs succeeded

in this litigation. Response at 5-6, Hr'g Tr. at 65-66.

　　　It would be profoundly inequitable for Defendants to prevent the Component 2 data

collection from ever occurring by implementing an unlawful stay that ran through the original

authorization period (or for enough of the original authorization period that completing the data

collection would be impossible before the authorization period expired). The Court has authority

to prevent this outcome. *See Burr v. Ambach*, 863 F.2d 1071, 1078 (2d Cir. 1988), *vacated*, 492

U.S. 902 (1989), *aff'd on remand sub nom. Burr v. Sobol*, 888 F.2d 258 (2d Cir. 1989), 888 F.2d

258 (2d Cir. 1989) ("We do not believe that Congress intended to create a right without a

remedy. If, in this case, we do not allow an award of compensatory education, then Clifford's

right to an education between the ages of three and twenty-one is illusory. Clifford cannot go

back to his previous birthdays to recover and obtain the free education to which he was entitled

when he was younger.") (citing *School Comm. of the Town of Burlington v. Dept. of Educ.*, 471 U.S. 359, 374 (1985) ("equitable considerations are relevant in fashioning relief")). Allowing Defendants to forgo the collections or conduct collections of reduced quality due to the expiration of the original three-year authorization would create problematic incentives both in this case and in future cases. It could incentivize Defendants to slow-walk the collections this year, in the hopes that it would be delayed beyond September 30 and thus never occur. It would also incentivize those employers that have objected to the pay data collection to delay reporting in order to avoid having to comply at all. Hr'g Tr. at 69-71. And even more troublingly, it would give the OMB a roadmap to thwarting any collection that it disliked going forward: it could simply stay the collection and run out the clock until it was too late to restore it, knowing that its actions would be irremediable even if (as here) a court found them to be unlawful.

Thus, determining that the expiration date is tolled is the correct conclusion both legally and equitably. This determination would also provide certainty to both the EEOC and the reporting community that the missing Component 2 data collections will in fact occur, even if they are not complete by September 30, 2019. Accordingly, as set forth specifically, below, Plaintiffs request that the Court issue a declaration that expiration of the PRA authorization is tolled. In addition, however, Plaintiffs request that the Court order the agencies to exercise their emergency extension authorities, *see*, *e.g.*, 5 C.F.R. § 1320.13, to extend the current PRA authorization as necessary to complete the collection of two years of pay data. The emergency extension authority is a long-established and recognized power of OMB's, and its use would further protect Plaintiffs' remedy in the event of a post-September 30 data collection.

### 5.     The Inadequacies of the EEOC's Plan Remain.

While Plaintiffs withdraw their challenge to the EEOC's September 30 deadline, it is still the case that the EEOC has not provided assurances that it will complete the Component 2 data

collection in a prompt and orderly manner. *See* Response at 11-12. Neither Dr. Haffer's testimony at the Hearing nor Defendants' counsel's representations have corrected this deficiency. To the contrary, the Court has rightly noted the concern that Defendants are "slow-rolling" implementation of the data collection, Hr'g Tr. at 83, and providing information to Plaintiffs and the Court in "dribs and drabs". Hr'g Tr. at 20. Those tactics, coupled with the serious deficiencies in EEOC's plan, require additional assurances that Defendants will fully comply with the Court's Order and specific ancillary relief to secure that compliance.

First, the EEOC has not finalized the contract with NORC to collect the Component 2 pay data and was not able to state definitively when it would do so or the cause of the delay. Hr'g. Tr. at 42-43; 82-83. Accordingly, Plaintiffs request an order requiring the EEOC to immediately take all steps necessary to complete the Component 2 data collection by September 30, 2019, along with regular intermediate reporting requirements to Plaintiffs and the Court.

Second, the EEOC has not provided a date certain by which it will notify EEO-1 reporters that they must report Component 2 data during the current EEO-1 reporting cycle and has failed to provide any persuasive rationale for why it has not already provided such notification. Hr'g Tr. at 66. Commission staff will not do so until the Acting Chair instructs them to "move forward" with the data collection. *Id*. This is the case even though employers have already relied on the delay in notification to resist compliance with the eventual data collection. Response at 11, n. 15. Nor does Dr. Haffer's testimony that such a notification would result in increased communications from the employer community justify the prolonged delay, Hr'g Tr. at 34-35—at a minimum, the EEOC could notify the employer community that it will establish a process to respond to employer questions as soon as it is able to do so. Finally, the EEOC has not issued, nor even apparently considered issuing, a Federal Register Notice to notify the regulated

community that the stay has been lifted. Hr'g Tr. at 52.  Accordingly, Plaintiffs request a date

certain by which the EEOC must issue such a notification statement on its website and submit

the same for publication in the Federal Register.  Plaintiffs propose April 26, 2019, for this

deadline, which appears entirely feasible based on the testimony provided by Dr. Haffer and

avoids further unnecessary delay.

Third, the EEOC has not adequately explained the decision to remove the prior

Component 2 guidance from its website. Response at 4-5; *see also* Link Decl. ¶¶ 4-10

(describing information, including sample data file specifications, discovered by Plaintiffs on

archived EEOC websites). While Dr. Haffer testified that his understanding was that the EEOC

could not keep the website active as a result of the stay, Hr'g Tr. at 33-34, the regulations

authorizing a stay do not state such a requirement. 5 C.F.R. § 1320.10(g). Rather it would be

consistent with OMB's purported ongoing "review" for the EEOC to continue publishing its

website information regarding the Component 2 data collection so long as the website also

plainly stated that the EEOC was not presently conducting or sponsoring the collection of

information. *Cf.* 5 C.F.R. §§ 1320.5(a), (b).

More importantly for present purposes, EEOC also has not justified its prolonged delay in

restoring this information to its website now that the stay has been lifted, especially given that

the information still accurately describes the data to be collected, as Dr. Haffer acknowledged,

Hr'g Tr. at 58-59, and given his expressed concern that the employer community will have many

questions about the pay data collection. While employers may have additional questions about

special circumstances, *id*. at 59[1], the EEOC previously provided detailed definitions of the data

---

[1] Indeed, EEOC already has guidance on mid-year mergers and acquisitions, one of the scenarios
identified by Dr. Haffer as possibly causing confusion, for the EEO-1 Component 1 data

to be collected, which remain valid and provide clear guidance for most situations. *See*, *e.g*, Link

Decl. ¶ 6, Ex. C ("Instruction Booklet") at 4-5 and 5-11 (appendix with six pages of definitions,

including "Description of Pay-Related Terminology").

Fourth, the EEOC appears to have abandoned the internal work it did to implement the

Component 2 data collection in the period before the unlawful stay. Dr. Haffer testified that he

does not know (and apparently has not reviewed) what internal work EEOC had done on

employer guidance in the eleven months after OMB approval of Component 2 before the stay

was entered in August 2017. Hr'g. Tr. at 60-61. Yet it is reasonable to expect that significant

work of this sort was performed, because the EEOC was on track to implement the Component 2

collection on time, by January 2018, before it was stayed. *Id*. at 61. It is inexplicable that the

agency would not revisit and review this work once the stay was lifted.

The third and fourth factors thus support Plaintiffs' requests for a date certain by which

the EEOC must provide notice regarding Component 2 to employers; and that the EEOC be

ordered to immediately take all steps necessary to complete the Component 2 data collection by

September 30, 2019 along with regular intermediate reporting requirements.

Fifth, the EEOC does not have a plan for collecting Component 2 pay data after

September 30, 2019. Response at 11-12. The agency has refused to state what it will do if there

are any delays by either it or NORC in the proposed timeline. *See*, *e.g*., Hr'g Tr. at 80-82. While

Defendants' counsel stated that "in the ordinary course" the EEOC and OMB would consult and

agree to extend the PRA expiration, neither Defendant has provided a commitment that it would

exercise its authority to do so in this case. Hr'g Tr. at 82. Even absent such delays, the EEOC has

---

collection. *See*, *e.g*., EEO-1 Survey User's Guide at 28-29, 79, 119-125,
https://www.eeoc.gov/employers/eeo1survey/upload/2018-EEO1-Users-Guide-Version-1-2.pdf.

not provided a plan for how it would act affirmatively to secure compliance by employers that do not submit pay data by September 30. Rather, Dr. Haffer has stated that the EEOC could simply passively accept such data should employers choose to submit it, but the agency will take no steps after September 30, 2019 to solicit this data from employers who failed to provide it. Hr'g Tr. at 70-71.

Accordingly, Plaintiffs request that the Court declare that the expiration of the September 30, 2019 PRA authorization is tolled by the unlawful stay; that it order Defendants to use their emergency extension powers if the collections are not complete by September 30, 2019; and that it specify that the Component 2 data collections will not be deemed complete until the typical number of EEO-1 reporters submit the required Component 2 reports.[2]

Finally, Plaintiffs are concerned that several of the reasons identified by the EEOC for its delay in complying with the Court's Order are unrelated to the feasibility of prompt compliance. For example, the EEOC raised the issue of privacy and data security in its Submission and the Declaration from Dr. Haffer. *See*, *e.g.*, Haffer Decl. ¶ 21. As Plaintiffs explained in their Response, this issue does not provide a basis for delay. Response at 10; *see also* 30-Day Notice, 81 Fed. Reg. 45479, 45,491 ("The EEOC has successfully protected the confidentiality of EEO-1 data for over 50 years, since this data was first collected."), Link Decl., Ex. H, EEOC Supporting Statement, at 9-10. Dr. Haffer's testimony confirmed the point. *See* Hr'g Tr. at 50 (stating that his goal is to *exceed* federal standards, not questioning that the approved data collection would not meet current federal standards); 51-2 (confirming no known data breach of EEOC systems);

---

[2] Plaintiffs suggest that typicality be defined as the percentage of EEO-1 reporters who have submitted their required Component 2 reports equals or exceeds the mean percentage of EEO-1 reporters that actually submitted EEO-1 reports in each of the past four collection years.

52 (confirming that storage of aggregate pay data does not make EEOC's security measures less effective).[3]

Similarly irrelevant to whether the EEOC should move promptly with collection is Dr. Haffer's view of the utility of the Component 2 data collection, specifically the adequacy of the EEOC's prior pilot study and the decision to use pay bands. Both were thoroughly considered by the agency, the public, and OMB, during the initial PRA approval process. *See*, *e.g.*, 60-Day Notice, 81 Fed. Reg. 5113, 5114-15, & 5116-17, 30-Day Notice, 81 Fed. Reg. 45479, 45489.[4] Plaintiffs are concerned that the EEOC's untimely revisiting of these issues in this proceeding raises questions about its commitment to promptly and fully implementing the Component 2 data collection.

This final factor also supports Plaintiffs' requests for the various ancillary relief sought, including their requests that the Court declare that two years of data are required and that the expiration of the PRA authorization is tolled, and that the Court order the EEOC to take immediate action to complete the Component 2 collection, including providing employer notice by April 26, 2019, and intermediate reporting requirements.

### 6. Plaintiffs' Requested Ancillary Relief.

For the reasons set forth above, Plaintiffs respectfully request that the Court issue the attached proposed order which contains the following declarations and injunctive requirements:

---

[3] The EEOC already has policies in place to prevent the only specific concern that Dr. Haffer identified—release of information that could be reverse-engineered to identify an individual person—by its policy of not releasing aggregate information derived from small sample sizes. *See* Response at 10, n. 14.

[4] Similarly, Dr. Haffer conflated the questions of whether the measure of pay to be reported (based on IRS W-2 box 1 information) meets the goals of the data collection with whether this measure of pay is clear to employers. Hr'g Tr. at 59. He agreed that the definition itself is clear. *Id*. Nevertheless, his conflation raises the concern that his apparent personal questions about the utility of the approved pay data collection are impacting his view as to whether and how promptly the EEOC should press forward to complete the Component 2 collection.

- The Court's summary judgment opinion and order requires that the EEOC collect Component 2 data for calendar years 2017 and 2018.

- In lieu of collection of Component 2 data for calendar year 2017, the EEOC may satisfy the Court's order requiring two years of data collection by collecting Component 2 data for 2019 during the 2020 EEO-1 reporting period. If the EEOC determines to exercise the option to collect Component 2 data for 2019 instead of 2017, it must so notify the Court and Plaintiffs of that decision by May 3, 2019.

- OMB's unlawful stay of its approval of the revised EEO-1 form tolled the three-year period of that approval for the duration of the stay, *i.e.*, one year and 188 days (553 days). Accordingly, barring further interruptions of the approval or extensions, the PRA approval for OMB Control No. 3046-0007 shall expire no later than April 5, 2021.

- The EEOC must immediately take all steps necessary to complete the Component 2 data collections for calendar years 2017 and 2018 by September 30, 2019 (unless the EEOC exercises its option to collect Component 2 data for 2019 in lieu of 2017, in which case that collection may occur in the 2020 EEO-1 reporting period).

- By April 26, 2019, the EEOC must issue a statement on its website and submit the same for publication in the Federal Register notifying EEO-1 filers of the Court's March 4, 2019 order reinstating the Component 2 data collection and that they should prepare to submit Component 2 data no later than September 30, 2019.

- The EEOC must provide reports to Plaintiffs and the Court beginning on May 3, 2019, and continuing biweekly thereafter, providing notice of all steps taken to implement the Component 2 data collections since the prior report, notice of all steps to be taken during the

ensuing two week period, and indicating whether EEOC is on track to complete the collection by September 30, 2019.

- If the Component 2 data collections for calendar years 2017 and 2018 are not complete by September 30, 2019 or if the EEOC determines to collect calendar year 2019 data in lieu of calendar year 2017 data, Defendants must exercise all authorities to provide for emergency extensions of the September 29, 2016 PRA authorization for the collection (OMB Control Number 3046-0007) until the data collections are complete.

- The Component 2 data collections will not be deemed complete, for the purpose of the preceding paragraphs, until the percentage of EEO-1 reporters that have submitted their required Component 2 reports equals or exceeds the mean percentage of EEO-1 reporters that actually submitted EEO-1 reports in each of the past four reporting years. Until such time as the EEOC reaches completion by that metric, EEOC must exercise its authority to ensure compliance with the reporting requirement as it has in prior years, and Defendants must extend the approval period to the extent necessary and permissible under law to allow such steps.

- The Court will retain jurisdiction over this matter for the purposes of enforcing the March 4, 2019 summary judgment opinion and order as well as any additional orders regarding compliance.

Dated: April 22, 2019                    Respectfully submitted,


                                         /s/ *Robin F. Thurston*___

                                         Robin F. Thurston (DC Bar No. 1531399)
                                         Javier M. Guzman (DC Bar No. 462679)
                                         Jeffrey B. Dubner (DC Bar No. 1013399)
                                         Democracy Forward Foundation
                                         P.O. Box 34553
                                         Washington, DC 20043

(202) 448-9090
rthurston@democracyforward.org
jguzman@democracyforward.org
jdubner@democracyforward.org

Fatima Goss Graves (DC Bar No. 481051)
Emily J. Martin (DC Bar No. 991968)
Sunu Chandy (DC Bar No. 1026045)
Maya Raghu (DC Bar No. 1035558)
National Women's Law Center
11 Dupont Circle, NW, Ste 800
Washington, DC 20036
(202) 588-5180
fgraves@nwlc.org
emartin@nwlc.org
schandy@nwlc.org
mraghu@nwlc.org

*Attorneys for Plaintiffs*