[Oral Argument Not Scheduled]
**No. 19-5130**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

NATIONAL WOMEN'S LAW CENTER, *et al.*,
*Plaintiffs-Appellees,*

v.

OFFICE OF MANAGEMENT AND BUDGET, *et al.*,
*Defendants-Appellants.*

BRIEF FOR CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND
HOUSING, CONNECTICUT COMMISSION ON HUMAN RIGHTS AND
OPPORTUNITIES, STATE OF DELAWARE, DISTRICT OF COLUMBIA,
ILLINOIS DEPARTMENT OF HUMAN RIGHTS, MAINE HUMAN RIGHTS
COMMISSION, MARYLAND COMMISSION ON CIVIL RIGHTS, MINNESOTA
DEPARTMENT OF HUMAN RIGHTS, NEVADA EQUAL RIGHTS
COMMISSION, NEW JERSEY DIVISION ON CIVIL RIGHTS, STATE OF NEW
YORK, OREGON BUREAU OF LABOR AND INDUSTRIES, PENNSYLVANIA
HUMAN RELATIONS COMMISSION, RHODE ISLAND COMMISSION FOR
HUMAN RIGHTS, VIRGINIA OFFICE OF THE ATTORNEY GENERAL
DIVISION OF HUMAN RIGHTS, WASHINGTON STATE HUMAN RIGHTS
COMMISSION, BALTIMORE OFFICE OF CIVIL RIGHTS AND WAGE
ENFORCEMENT, NEW YORK CITY COMMISSION ON HUMAN RIGHTS, AND
PHILADELPHIA COMMISSION ON HUMAN RELATIONS AS AMICI CURIAE
IN SUPPORT OF APPELLEES AND SUPPORTING AFFIRMANCE

On Appeal from the U.S. District Court for the District of Columbia

XAVIER BECERRA
Attorney General of California
MICHAEL L. NEWMAN
Senior Assistant Attorney General
CHEROKEE DM MELTON
Supervising Deputy Attorney General
LISA C. EHRLICH
Deputy Attorney General

1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 879-0173
Fax: (510) 622-2270
*Attorneys for Amici Curiae*
*California Department of Fair*
*Employment and Housing*

*Additional Counsel on signature page*

## CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Amici Curiae certify:

**(A) Parties and Amici:** To Amici's knowledge, all parties, intervenors, and Amici appearing in this Court are listed in the Briefs for Appellants and Appellees in this case, No. 19-5130. All Amici participating in the district court are listed in the Brief for Appellants. All Amici participating as Amici Curiae in support of Appellants in this Court are listed in the brief of Appellees. Amici participating as Amici Curiae in support of Appellees are listed on the cover page of this brief.

**(B) Rulings Under Review:** To Amici's knowledge, an accurate reference to the rulings at issue appears in the Brief for Appellees in this case, No. 19-5130.

**(C) Related Cases:** To Amici's knowledge, an accurate statement of related cases appears in the Brief for Appellees in this case, No. 19-5130.

Dated:  October 25, 2019        /s/*Lisa C. Ehrlich*

## CERTIFICATE OF COUNSEL REGARDING CONSENT TO FILE AND NECESSITY OF SEPARATE AMICUS BRIEFING

Pursuant to D.C. Circuit Rule 29(d), I certify that Amici are submitting a separate brief on behalf of a coalition of state and local civil rights law enforcement agencies due to our distinct interests in this case. To our knowledge, this brief is the only amicus brief focused on the entitlement to and use of EEO-1 Component 2 data by state and local civil right law enforcement agencies. Accordingly, filing a joint brief would not be practicable.

All parties have consented to the filing of this brief.

As required by D.C. Circuit Rule 29(a), I certify that no counsel for a party authored this brief in whole or in part, and no counsel, party, or person contributed money intended to fund the participation or submission of this brief.

Dated: October 25, 2019        /s/*Lisa C. Ehrlich*

# TABLE OF CONTENTS

**Page**

Glossary of Abbreviations ............................................................. 1

Interest of Amici Curiae ............................................................... 3

Summary of Argument .................................................................. 13

Argument ....................................................................................... 15

    I.    The Additional Data is Essential to Identifying Serious and Longstanding Pay Gaps ................................................... 15

    II.    Under Title VII's Cooperative Enforcement Scheme, Agency Amici are Statutorily Entitled to the Additional Pay Data ..................................................................................... 18

    III.    Agency Amici Have the Right to Access the Additional Data and Decide How to Use it to Help Close the Pay Gap ................................................................................................ 20

        A.    Agency Amici's Intended Use of Component 2 Data is Consistent with the EEOC's Longstanding Practices ............................................................................. 20

            1.    Complaint-driven Enforcement and Hidden Disparities .......................................................... 20

            2.    EEOC's Use of Data to Address Hidden Disparities .......................................................... 22

            3.    Agency Amici's Ability to Use Data to Address Hidden Disparities ............................... 25

        B.    Component 2 Data Would Have Heightened Utility in Agency Amici Jurisdictions with Strong Local Protections ........................................................ 27

    IV.    Similar Pay Transparency Measures Have Proven Effective in the Public and Private Sector .............................. 30

    V.    Collection of Wage Data Imposes Minimal Burdens on Employers ............................................................................... 33

i

# TABLE OF CONTENTS
## (continued)

|  |  | Page |
|---|---|---|
| VI. | Existing Law and Federal-State Agency Worksharing Agreements Protect Confidential Information | 36 |
| Conclusion | | 38 |
| Certificate of Compliance | | 41 |
| Certificate of Service | | 42 |

# TABLE OF AUTHORITIES

**Page**

CASES

*Avagliano v. Sumitomo Shoji America, Inc.*
103 F.R.D. 562 (S.D.N.Y. 1984).............................................................. 24

*Bryant v. Southland Tube*
294 F.R.D. 633 (N.D. Ala. 2013) ........................................................... 24

*Cal. Fed. Sav. and Loan Ass'n v. Guerra*
479 U.S. 272 (1987)................................................................................ 27

*EEOC v. Cosmair, Inc.*
821 F.2d 1085 (5th Cir. 1987) ............................................................... 20

*EEOC v. Shell Oil Co.*
466 U.S. 54 (1984)............................................................................ 20, 21

*EEOC v. Waffle House, Inc.*
534 U.S. 279 (2002)................................................................................ 21

*Ellis v. Costco Wholesale Corp.*
240 F.R.D. 627 (N.D. Cal. 2007) .......................................................... 24

*Jackson v. Concord Co.*
54 N.J. 113 (1969) ................................................................................. 25

*NAACP v. N. Hudson Reg'l Fire & Rescue*
742 F. Supp. 2d 501 (D.N.J. 2010)........................................................ 31

*United States v. New Hampshire*
539 F.2d 277 (1st Cir. 1976)............................................................ 30, 31

STATUTES

FEDERAL

29 U.S.C.
§ 206(d)................................................................................................... 28

iii

## TABLE OF AUTHORITIES
### (continued)

Page

42 U.S.C.
  § 2000e-1 ........................................................................... 33
  § 2000e-5 ........................................................................... 21
  § 2000e-8 ........................................................................ 3, 36
  § 2000e-9 ........................................................................... 26
  § 2000e(f) .......................................................................... 33
  § 2000h-4 ........................................................................... 27

**STATE**

5 M.R.S. § 4566 ......................................................................6

Cal. Gov't Code
  § 6254 ................................................................................. 36
  § 12930 ............................................................................ 4, 28
  § 12960 ............................................................................... 25
  §§ 12963-12963.5 ............................................................... 26

Cal. Labor Code § 1197.5 ...................................................... 28

Conn. Gen. Stat. § 46a to 56 ...................................................5

Md. Code Ann., State Gov't § 20-601 .......................................7

Minn. Stat. § 363A.28 .......................................................... 26

N.J. Stat. Ann.
  § 10:5-6 ...............................................................................8
  § 10:5-8(j) ....................................................................... 8, 28
  § 10:5-12(t) ..................................................................... 8, 28

N.Y.C. Charter §§ 904-905 .................................................... 12

N.Y. Exec. Law § 290 .............................................................9

Nev. Rev. Stat. Chapters 233 and 613 ......................................8

## TABLE OF AUTHORITIES
### (continued)

**Page**

Or. Rev. Stat.
    § 651.030 ...................................................................9
    § 651.060 ...................................................................9
    § 659A.850 .................................................................9

43 P.S. §§ 951-963 ..........................................................9

R.I Gen. Laws § 28-5-13(10) ........................................ 10

Va. Code § 2.2-3900.A .................................................. 10

Wash. Rev. Code
    § 49.58.020 .............................................................. 28
    § 49.60 ...................................................................... 11
    § 49.60.230(b) .......................................................... 26

### OTHER AUTHORITIES

29 C.F.R.
    § 1601.1 ................................................................... 21
    § 1601.11 ................................................................. 21
    §§ 1601.70-1601.80 ...................................................3
    §§ 1602.7-1602.14 .............................................. 15, 18

41 C.F.R. § 60-1.7......................................................... 16, 18

81 Fed. Reg. 45479-01, at 45487.................................. 34

DFEH, *DFEH Task Force on the Prevention of Sexual Harassment in the Workplace*................................... 29

DFEH, *FY 2019 EEOC/FEPA Model Worksharing Agreement* .................. 19

EEOC, *Advancing Opportunity: A Review of the Systemic Program of the U.S. Equal Employment Opportunity Commission* (July 7, 2016) ........................................ 23

## TABLE OF AUTHORITIES
### (continued)

Page

EEOC, *EEO-1 Frequently Asked Questions and Answers* ........................... 22

EEOC, *EEO-1 Job Classification Guide 2010* ............................................ 16

EEOC, *EEOC Regional Attorney's Manual, Services Provided
by the Office of Research, Information and Planning* ...................... 22, 23

EEOC, *FY 2012 EEOC/FEPA Model Worksharing Agreement* ................. 19

EEOC, *State and Local Government Information (EEO-4)* ......................... 30

*The Equality Act 2010 (Gender Pay Gap Information)
Regulations 2017* ................................................................................ 32

Hatch Institute, *The Contently Foundation's U.S. Government
Payroll Project* .................................................................................... 18

Human Resource Management, *Directory of Salary Surveys* ..................... 35

Institute for Women's Policy Research, *Quick Figures: Pay
Secrecy and Wage Discrimination*, IWPR #Q016 (Jan. 2014) .............. 18

Jake Rosenfeld and Patrick Denice, *The Power of
Transparency: Evidence from a British Workplace Survey*
(Sept. 1, 2015) ..................................................................................... 32

Legislative Assembly of Ontario, *Bill 203, Pay Transparency
Act, 2018* .............................................................................................. 32

Mary C. Daly, Bart Hobijn & Joseph H. Pedtke, *Disappointing
Facts about the Black-White Wage Gap*, Fed. Reserve Bank
of San Francisco Economic Letter (Sept. 5, 2017) .................................. 17

Morten Bennedsen, Elena Simintzi, and Margarita Tsoutsoura,
*Do firms respond to gender pay gap transparency?* (Nov. 5,
2018 ...................................................................................................... 32

N.Y.C. Admin. Code § 8-109(c) ................................................................. 26

## TABLE OF AUTHORITIES
### (continued)

**Page**

National Research Council of the National Academies,
*Collecting Compensation Data Form Employers*, at 4 (2012)............... 33

Oracle, *E1:08: 2019 EEO-1 Component 2 - New Reporting
Functionality is Available (Doc ID 2576794.1)* (Oct. 3,
2019) ....................................................................................................... 34

Radford Surveys.............................................................................................. 35

Sage City, *Update: New pay data requirements for EEO-1
reporting due Sept. 30* (Sept. 6, 2019)....................................................... 34

*Scheduling Letter and Itemized Listing ¶ 19* ................................................ 34

U.S. Bureau of Labor Statistics, *BLS Reports: Highlights of
Women's Earnings in 2017* (Aug. 2018).................................................... 17

U.S. Bureau of Labor Statistics, *Women's Earnings in New
Jersey – 2017* (Sept. 2018) ...................................................................... 17

U.S. Department of Labor, Office of Federal Contract
Compliance Programs, Directive 2018-05 (2018) .................................. 31

U.S. Office of Personnel Management Report, *Governmentwide
Strategy on Advancing Pay Equality in the Federal
Government* (2014) ................................................................................. 18

vii

## GLOSSARY OF ABBREVIATIONS

Pursuant to D.C. Circuit Rule 28(a)(3), Amici's brief uses the following abbreviations and acronyms:

**BOLI**      Oregon Bureau of Labor and Industries

**CHRO**      Conn. Commission on Human Rights and Opportunities

**DFEH**      California Department of Fair Employment and Housing

**DHR**       Virginia Attorney General – Division of Human Rights

**DCR**       New Jersey Division on Civil Rights

**EEOC**      United States Equal Employment Opportunity Commission

**FEPA**      Fair Employment Practices Agency

**HRIS**      Human Resource Information Systems

**IHDR**      Illinois Department of Human Rights

**MCCR**      Maryland Commission on Civil Rights

**MDHR**      Minnesota Department of Human Rights

**MHRC**      Maine Human Rights Commission

**NERC**      Nevada Equal Rights Commission

**NYCCHR**    New York City Commission on Human Rights

**NYSDHR**    New York State Division of Human Rights

**OFCCP**     United States Department of Labor, Office of Federal Contract Compliance Programs

1

| | |
|---|---|
| **OHR** | District of Columbia Office of Human Rights |
| **PCHR** | Philadelphia Commission on Human Relations |
| **PHRC** | Pennsylvania Human Relations Commission |
| **RICHR** | Rhode Island Commission for Human Rights |
| **WSHRC** | Washington State Human Rights Commission |

**INTEREST OF AMICI CURIAE**

Amici are state and local civil rights enforcement agencies, including some of the approximately 90 Fair Employment Practices Agencies ("FEPAs") under Title VII of the Civil Rights Act of 1964 ("Agency Amici"), and who have a statutory right to the employer pay data ("Component 2") that the district court below ordered the United States Equal Employment Opportunity Commission ("EEOC") to collect. 42 U.S.C. § 2000e-8(c)-(d); 29 C.F.R. §§ 1601.70-1601.80.  Under Title VII, every employer shall make, keep, and preserve EEO-1 data and other "records relevant to the determinations of whether unlawful employment practices have been or are being committed."  42 U.S.C. § 2000e-8(c).  And, when collected, "[t]he Commission shall furnish upon request and without cost to any State or local agency charged with the administration of a fair employment practice law information obtained . . . from any employer . . . subject to the jurisdiction of such agency."  42 U.S.C. § 2000e-8(d).  Agency Amici, whose jurisdictions account for 69 million workers in the Civilian Labor Force (42% nationwide), thus have a right to access and use the Component 2 data for 2017 and 2018 collected per the district court's order below.

3

The newly-collected Component 2 data would increase Agency Amici's ability to fulfill their mandates to prevent, deter, and remedy pay discrimination across their jurisdictions by providing information to address hidden pay disparities.

Amici are:

**California Department of Fair Employment and Housing** ("DFEH") is the state agency charged with enforcing California's civil rights laws.  The DFEH is a certified FEPA, a state or local agency charged with enforcing laws prohibiting discrimination that works with the EEOC on enforcement, often through an official Worksharing Agreement.  Both Title VII and the Worksharing Agreement provide FEPAs with a right to access EEO-1 information, which may then be used in investigations and enforcement efforts.  Complaints filed with the FEPA are deemed filed with the EEOC and vice versa, called "dual filing."  The DFEH is expressly authorized to issue reports for the purpose of educating the public and preventing and eliminating discrimination.  Cal. Gov't Code § 12930(i).  The DFEH intends to use aggregate Component 2 wage data for California to prepare reports consistent with confidentiality provisions.

4

**Connecticut Commission on Human Rights and Opportunities** ("CHRO"): The CHRO is the nation's oldest state civil rights law enforcement agency. The CHRO partners with the EEOC through a Worksharing Agreement. General Statutes of Connecticut, sections 46a to 56(a)(2) and (4) authorize the CHRO to "[c]ompile facts concerning discrimination in employment," and to "report to the Governor . . . making recommendations for the removal of such injustices as it may find to exist," respectively.

**Delaware:** Delaware's Attorney General, the State's chief law enforcement officer, has broad responsibility to combat crime, safeguard families, fight fraud, and protect consumers in the First State. The Attorney General's office provides legal advice, counsel and services to state agencies, including the Delaware Department of Labor, Office of Anti-Discrimination, which is the State's FEPA agency.

**District of Columbia:** The District of Columbia's Attorney General is the chief legal officer of the District. The Office enforces the laws of the District, protects the interests of the District's citizens, and defends and provides legal advice to the District's government agencies, including the District's Office of Human Rights ("OHR"). OHR was

established to eradicate discrimination, increase equal opportunity, and protect human rights, and the EEOC is a critical partner in its efforts.

**Illinois Department of Human Rights** ("IDHR") is the state agency charged with enforcing Illinois' civil rights law. The mission of IDHR is to secure freedom from unlawful discrimination for all individuals within Illinois, and to establish and promote equal opportunity and affirmative action as the policy of the State for all residents, a mandate which includes eliminating wage disparity based upon a discriminatory factor. IDHR is a certified FEPA and partners with the EEOC through a Worksharing Agreement. Data collected by the EEOC increases IDHR's efficacy in fulfilling its statutory mandate to prevent, deter and remedy pay discrimination.

**Maine Human Rights Commission** (MHRC) is a quasi-independent state commission charged with investigating discrimination claims under the Maine Human Rights Act. 5 M.R.S. § 4566. The MHRC partners with the EEOC through a Worksharing Agreement. The MHRC has the duty to investigate discrimination, and has the authority to study and publish research to support its mission. *Id.*

6

**Maryland Commission on Civil Rights** ("MCCR") was established to exercise the State's police power to ensure equal employment opportunity for all through the enforcement of the Maryland Fair Employment Practices Act.  Md. Code Ann., State Gov't § 20-601 *et. seq*.  MCCR has Worksharing Agreements with the EEOC. The data being collected by the EEOC is a valuable resource for assisting MCCR in identifying issues of pay disparity and recommending best practices for its elimination in Maryland.

**Minnesota Department of Human Rights** ("MDHR") is responsible for the enforcing the Minnesota Human Rights Act, the state's robust anti-discrimination statute.  MDHR partners with the EEOC through a Worksharing Agreement.  Minnesota has some of the worst racial disparities in the country and the information the EEOC collects would be instrumental to further the work of the agency and address these disparities.

**Nevada Equal Rights Commission** (NERC) was established in 1961 and is responsible for administering the state's equal rights laws. NERC is a certified FEPA and has a Worksharing Agreement with the EEOC.  NERC is expressly authorized to issue reports for the purpose

of educating the public and preventing and eliminating discrimination. Nev. Rev. Stat. Chapters 233 and 613.

**New Jersey Division on Civil Rights** (DCR) was established in 1945 to enforce the state's Law Against Discrimination. N.J. Stat. Ann. § 10:5-6. DCR is a certified FEPA with an EEOC Worksharing Agreement. As part of its mandate to protect New Jerseyans from discrimination, DCR is tasked with enforcing the Diane B. Allen Equal Pay Act, one of the country's broadest equal pay laws. *Id.* § 10:5-12(t). DCR would benefit greatly from Component 2 data for the purposes of investigating pay disparity and composing reports on the wage gap consistent with its obligation to "[i]ssue such publications . . . and research tending to promote good will and to minimize or eliminate discrimination," *id.* § 10:5-8(j), while complying with all confidentiality obligations.

**New York:** New York's Attorney General, the State's chief law enforcement officer, has broad responsibility to enforce civil rights laws, and provides legal advice, counsel and services to state agencies, including the New York State Division of Human Rights ("NYSDHR"). NYSDHR is a FEPA charged with enforcing the New York State

Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, through the investigation of individual discrimination complaints, as well as prosecution by its Division Initiated Investigations Unit of systemic discriminatory practices. The difficulties employees experience in determining whether salary disparities exist make salary transparency an essential element for NYSDHR to accomplish its mission to eradicate workplace discrimination, and the Component 2 data is integral to that effort.

**Oregon Bureau of Labor and Industries** ("BOLI") is the state agency that enforces Oregon's civil rights laws. It is headed by an independently elected commissioner who is empowered to conduct investigations, hold administrative hearings, and issue orders determining whether civil rights laws were violated and affording relief to complainants. Or. Rev. Stat. §§ 651.030, 651.060, 659A.850.

**Pennsylvania Human Relations Commission** ("PHRC") is one of the nation's oldest civil rights enforcement agencies created pursuant to the Pennsylvania Human Relations Act, which creates a civil right to be free from unlawful discrimination in employment. 43 P.S. §§ 951-963. The Act has two primary enforcement mandates—the non-

9

discretionary in nature requirement for the PHRC to receive and investigate complaints of unlawful discriminatory practices; and the PHRC's discretionary ability to prosecute and adjudicate complaints of discrimination after its investigation has found probable cause.

**Rhode Island Commission for Human Rights** ("RICHR") is the state agency that enforces Rhode Island's civil rights laws. RICHR is a certified FEPA and has a Worksharing Agreement with EEOC. RICHR has the duty to: "Issue any publications and any results of investigations and research that in its judgment will tend to promote good will and minimize or eliminate discrimination." R.I. Gen. Laws § 28-5-13(10). RICHR intends to use aggregate Component 2 data for Rhode Island to prepare educational reports, consistent with confidentiality provisions, and assist in determining whether pay discrimination has occurred when investigating charges containing such allegations.

**Virginia Attorney General's Office – Division of Human Rights** ("DHR") is the state agency created to "safeguard all individuals within the Commonwealth from unlawful discrimination" in employment. Va. Code § 2.2-3900.A. To enforce the Virginia Human

10

Rights Act, the DHR investigates alleged violations of laws that prohibit such discrimination. The DHR partners with the EEOC through a Worksharing Agreement. Moreover, the DHR, through engagement plan agreements with the EEOC, undertakes activities to further the EEOC's 2017-2021 Strategic Enforcement Plan initiatives, including engaging in activities that focus on identifying and eliminating gender pay disparities consistent with the EEOC's Strategic Enforcement Priority 4 – Ensuring Equal Pay Protections for All Workers. The information collected by the EEOC is vital to the DHR's ability to identify and investigate allegations of unequal pay in order to fulfill its mission to enforce state and federal laws that prohibit pay discrimination based on sex.

**Washington State Human Rights Commission** ("WSHRC") was established in 1949 and is the state agency charged with enforcing the Washington State Law Against Discrimination. *See* Wash. Rev. Code § 49.60. WSHRC has the authority to investigate and report on equal pay issues and has received several such complaints recently. WSHRC is a certified FEPA and works with the EEOC through a Worksharing Agreement. Complaints filed with the WSHRC may call for use of

11

Component 2 data during the course of investigating and remedying such complaints.

**Baltimore Office of Civil Rights and Wage Enforcement** is a certified FEPA devoted to upholding federal and local civil rights laws, as well as the local minimum, living, and prevailing wage laws.  The office includes the Community Relations Commission, Baltimore's official FEPA.

**New York City Commission on Human Rights** ("NYCCHR") is the city agency charged with enforcing the New York City Human Rights Law.  The NYCCHR is a certified FEPA and is party to a Worksharing Agreement with the EEOC.  The NYCCHR is expressly authorized to hold hearings, conduct studies, and issue reports to fulfill its mandate to combat prejudice, intolerance, bigotry, and discrimination, and to share its findings with the public so that communities can pull from useful data when seeking funding and other resources.  N.Y.C. Charter §§ 904-905.

**Philadelphia Commission on Human Relations** ("PCHR"), established in 1951 under the Home Rule Charter, is a FEPA agency that administers and enforces all laws prohibiting discrimination,

12

resolves community conflicts, and promotes equality and understanding throughout the city.

## SUMMARY OF ARGUMENT

On April 25, 2019, the district court ordered Defendants-Appellants to take specific actions to ensure collection of Component 2 pay data in accordance with its March 4, 2019 summary judgment order. The district court felt it necessary to order further relief: Defendants-Appellants had created the impression that summary judgment in favor of Plaintiffs-Appellees would result in the immediate collection of the pay data, but after judgment suggested that the EEOC could not begin collecting the Component 2 data until 2021. Defendants-Appellants' in their new objections to collection asserted the limited utility of the pay data, the burden of reporting, and confidentiality concerns. While Defendants-Appellants have now collected data pursuant to court order, they and their amici renew these arguments on appeal. *See, e.g.*, Appellants' Br. 10-12, 29-31, 34; Chamber of Commerce of the U.S.A., *et al.* Amicus Br. 9-15, 17-22. Agency Amici are uniquely situated to address these concerns and

provide the Court with further information supporting the district court's determination.

Despite local, state, and federal prohibitions against pay discrimination in nearly every American workplace, the pay gap between genders and between different races and ethnicities persists across the country, including in Agency Amici's jurisdictions, in large part because it is hidden. Without the information necessary to identify a potential violation, pay discrimination victims are, in Agency Amici's experience, less likely to file complaints than victims of other forms of discrimination. This effectively excludes victims of pay discrimination from the complaint-driven civil rights enforcement schemes.

Agency Amici are entitled to obtain Component 2 data from the EEOC under Title VII. Many intend to use the data in the same way that EEO-1 Component 1 data has been used for decades—to identify, investigate, and remedy civil rights violations in their jurisdictions. By revealing otherwise hidden disparities to government enforcement agencies, the Component 2 data, like Component 1 data, will serve as an effective tool for remedying pay discrimination.

14

Many Agency Amici could use the data to measure pay trends for 2017 and 2018 (and any future years collected) to inform strategic enforcement priorities; to issue aggregate reports of pay trends and disparities in their jurisdictions to educate the public; to assist employees in determining whether to file discrimination claims with Agency Amici; and to encourage voluntary compliance with the law.

Agency Amici support the collection of Component 2 data because similar pay transparency measures have proven useful in both the public and private sector. The burden on employers—who are already required to maintain the same or more extensive compensation data under other laws—would be minimal. Additionally, the EEOC and certified FEPAs are subject to stringent statutory confidentiality obligations.

## ARGUMENT

## I. THE ADDITIONAL DATA IS ESSENTIAL TO IDENTIFYING SERIOUS AND LONGSTANDING PAY GAPS

Since 1966, the EEOC has required certain employers[1] to submit annual EEO-1 forms, which show the representation of men and women

---

[1] Private employers with 100 or more employees are required to file annual EEO-1 reports under EEOC regulations, 29 C.F.R. §§ 1602.7-

15

of different racial and ethnic groups in ten different occupational classifications ("Component 1").[2] Agency Amici, like the EEOC, can—and many already do—use Component 1 data to enforce anti-discrimination employment laws. 42 U.S.C. § 2000e-8(c)-(d). The EEOC, after a multi-year agency process, decided to also collect Component 2 pay data, which consists of W-2 earnings data for employees by sex, race, ethnicity, and job category. With the Component 2 pay data added to the EEO-1 form, federal, state, and local civil rights agencies have access to the private sector's pay practices, trends, and disparities across their jurisdictions for the first time in over fifty years of equal pay enforcement—closing a longstanding gap in both information and enforcement.

Despite pay discrimination being outlawed for decades, the lack of pay transparency measures has enabled the pay gap between genders and different races and ethnicities to remain the status quo in Agency

---

1602.14, and federal contractors with 50 or more employees are required to do the same under U.S. Department of Labor's Federal Contract Compliance Programs (OFCCP) regulations, 41 C.F.R. § 60-1.7.

[2] EEOC, *EEO-1 Job Classification Guide 2010*, https://www.eeoc.gov/employers/eeo1survey/jobclassguide.cfm.

Amici's jurisdictions.  For example, in 2017, women in New Jersey earned only 81.6% of their male counterparts.[3]  Nationwide, the average black male worker earned just 70% of the hourly wage of the average white male worker in 2016,[4] while black women earned only 83% as much as white women, and only 68% as much as white men.[5] Discrimination and bias contribute to the wage gap even when factors such as education, experience, and region are taken into account.[6]

America's pay gap persists in large part because it is hidden—particularly in the private sector.  According to one study, 62% of women and 60% of men working for private employers reported that discussion of salary information is discouraged or prohibited at their workplace, compared to only 18% of women and 11% of men in the

---

[3] U.S. Bureau of Labor Statistics, *Women's Earnings in New Jersey – 2017*, at 1 (Sept. 2018), https://www.bls.gov/regions/new-york-new-jersey/news-release/pdf/womensearnings_newjersey.pdf.
[4] Mary C. Daly, Bart Hobijn & Joseph H. Pedtke, *Disappointing Facts about the Black-White Wage Gap*, Fed. Reserve Bank of San Francisco Economic Letter, at 2 (Sept. 5, 2017), https://www.frbsf.org/economic-research/files/el2017-26.pdf.
[5] U.S. Bureau of Labor Statistics, *BLS Reports: Highlights of Women's Earnings in 2017*, at 3 (Aug. 2018), https://www.bls.gov/opub/reports/womens-earnings/2017/pdf/home.pdf.
[6] *Disappointing Facts*, at 2.

public sector.[7]  In part due to transparency, the pay gap is smaller in the federal government than the pay gap nationally.[8]

Employees, who may be underpaid because of their gender or race or both, often lack information about pay disparities due to widespread pay secrecy.  Without the information necessary to identify potential violations, pay discrimination victims and the enforcement agencies created to protect them, are restricted from realizing the promise of state and local equal pay laws.

## II.  UNDER TITLE VII'S COOPERATIVE ENFORCEMENT SCHEME, AGENCY AMICI ARE STATUTORILY ENTITLED TO THE ADDITIONAL PAY DATA

Under Title VII, FEPAs have an important co-enforcement role supported by the requirement that the EEOC "shall furnish" them with EEO-1 information, including both Component 1 and Component 2 data.  42 U.S.C. § 2000e-8(c)-(d); 29 C.F.R. §§ 1602.7-1602.14; 41 C.F.R.

---

[7] Institute for Women's Policy Research, *Quick Figures: Pay Secrecy and Wage Discrimination*, IWPR #Q016 (Jan. 2014), https://iwpr.org/wp-content/uploads/wpallimport/files/iwprexport/publications/Q016%20(1).pdf.

[8] U.S. Office of Personnel Management Report, *Governmentwide Strategy on Advancing Pay Equality in the Federal Government* (2014); *see also* The Hatch Institute, *The Contently Foundation's U.S. Government Payroll Project*, https://thehatchinstitute.org/government-wage-gap-data?rq=pay.

§ 60-1.7(a).  Agency Amici's ability to request and receive data is not dependent upon the EEOC deciding to use it in enforcement or otherwise make it public.

In addition, some Agency Amici are also contractually entitled to Component 2 data.  For example, the DFEH's Worksharing Agreement with the EEOC—which follows the Model EEOC/FEPA Worksharing Agreement[9]—states that "the EEOC shall make available for inspection and copying to appropriate officials from the [DFEH] *any information that may assist* [DFEH] in carrying out its responsibilities."  2019 EEOC-DFEH Worksharing Agreement, § IV(A) (emphasis added).[10] Many Agency Amici are thus entitled to the Component 2 data collected by the EEOC pursuant to the district court order, whether or not the EEOC plans to use it or make it public.

---

[9] EEOC, *FY 2012 EEOC/FEPA Model Worksharing Agreement*, https://www.eeoc.gov/employees/fepa_wsa_2012.cfm.
[10] DFEH, *FY 2019 EEOC/FEPA Model Worksharing Agreement*, https://www.dfeh.ca.gov/wp-content/uploads/sites/32/2019/01/ WorksharingAgreementFY2019WSA.pdf.

III. **AGENCY AMICI HAVE THE RIGHT TO ACCESS THE ADDITIONAL DATA AND DECIDE HOW TO USE IT TO HELP CLOSE THE PAY GAP**

Component 2 data could be used by state and local civil rights enforcement agencies in the same ways that Component 1 data has been used for decades—to identify, investigate, and remedy claims of discrimination, to educate the public, and to deter future violations.

A. **Agency Amici's Intended Use of Component 2 Data is Consistent with the EEOC's Longstanding Practices**

1. **Complaint-driven Enforcement and Hidden Disparities**

Typically, civil rights enforcement begins when an individual files a complaint with a government agency or otherwise puts the government "on notice that someone . . . believes that an employer has violated [anti-discrimination statutes]." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68 (1984); *see also EEOC v. Cosmair, Inc.*, 821 F.2d 1085, 1089 (5th Cir. 1987) (primary purpose of a charge is "to inform the EEOC of possible discrimination"). The EEOC and FEPAs may then use this notice as the starting point for their own investigations.

However, in pay disparity cases, pay secrecy effectively shuts discrimination victims out of the notice-complaint driven civil rights

20

enforcement scheme.[11]  When individuals have no access to comparative pay data, they often do not know a disparity exists, much less have enough information to file a complaint with the government to put it on notice of the potential discrimination.  Thus, in many circumstances, Component 2 data may be the only available notice of potential pay disparities that enforcement agencies receive.

Once uncovered, the EEOC and Agency Amici can investigate potential violations through agency-initiated complaints.[12]  The Supreme Court has stated that "it is crucial that the [EEOC's] ability to investigate charges of systemic discrimination not be impaired." *Shell Oil*, 466 U.S. at 69.  The Component 2 data critically enhances this ability, and the lack of such data makes identifying, investigating, and remedying pay discrimination cases more difficult.  *Cf. EEOC v. Waffle House, Inc.*, 534 U.S. 279, 296 n.11 (2002) (Court reluctant to "jeopardize the EEOC's ability to investigate and select cases from a broad sample of claims.").

---

[11] Equal Pay Act charges, for example, were less than 1.6% of total EEOC charges from FY 1997 to FY 2018.  *See* https://www.eeoc.gov/eeoc/statistics/enforcement/charges.cfm.

[12] Agency-initiated complaints exist at the EEOC and FEPAs.  *See* 42 U.S.C. § 2000e-5(b); 29 C.F.R. §§ 1601.1, 1601.11.

### 2.    EEOC's Use of Data to Address Hidden Disparities

Using Component 2 data to address pay discrimination would be consistent with the EEOC's own longstanding practice of using the EEO-1 data to investigate potential claims, particularly in areas that involve "hidden" discrimination.  The EEOC has "used EEO-1 data since 1966 . . . to support civil rights enforcement and to analyze employment patterns, such as the representation of women and minorities within companies, industries or regions."[13]  Indeed, EEOC attorneys are instructed on specific ways EEOC's social scientists can parse the data and compare an employer to their field to investigate, for example, potential hiring discrimination.[14]  "This helps predict the

---

[13] EEOC, *EEO-1 Frequently Asked Questions and Answers*, https://www.eeoc.gov/employers/eeo1survey/faq.cfm.

[14] EEOC, *EEOC Regional Attorney's Manual, Services Provided by the Office of Research, Information and Planning*, https://www.eeoc.gov/ eeoc/litigation/manual/4-1-c_services_orip.cfm  ("All of this data (the EEO-1 through EEO-6 and Census data) are available for various labor market parameters, including job categories and geographic area. [EEOC's social scientists] will prepare special computer-generated reports upon request. Additionally, a great deal of this data is aggregated by various labor market characteristics and published annually for private employers . . . in EEOC's *Job Patterns* books.").

22

possible impact of potential Commissioner Charges . . . and charges being considered for expansion to a class investigation."[15]

On average, the EEOC filed about 13 agency-initiated charges (Commissioner's Charges) per year from 2002 to 2015.[16]  In these types of systemic investigations, data collected from employers—such as EEO-1 data for private employers, EEO-4 data for state or local government entities, or EEO-5 data for school districts—would be routinely used by the EEOC.[17]

This data is particularly helpful to EEOC investigations in areas of hidden discrimination where it is often difficult for workers to identify and challenge discriminatory practices.  For example, "approximately 75 percent of Commissioner Charges have focused on discrimination in hiring, as victims typically lack information about a discriminatory hiring policy or practice. . . .  [A]n applicant is unlikely

---

[15] *Id.*

[16] EEOC, *Advancing Opportunity: A Review of the Systemic Program of the U.S. Equal Employment Opportunity Commission*, at 17-18 (July 7, 2016) (Table 4), https://www.eeoc.gov/eeoc/systemic/review/upload/review.pdf.

[17] *See, e.g.*, *EEOC Regional Attorney's Manual*, at Part 4(I)(C).

23

to know about the effect of hiring tests or assessments, or have the resources to challenge them."[18]

The EEOC has stated the same is true of pay discrimination: "Employees are often unaware of potentially discriminatory pay practices, making such practices particularly difficult for them to challenge.  EEOC's investigatory authority makes the agency uniquely situated to address these policies and practices."[19]

Courts agree that EEO-1 data is critical to assess claims of discrimination, particularly in cases where relevant information may be hidden from individual complainants.  *See*, *e.g.*, *Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 645 (N.D. Cal. 2007), *aff'd in relevant part*, 657 F.3d 970 (9th Cir. 2011) (stating "EEO-1 data are regularly applied in employment discrimination cases," and finding relevant in promotion discrimination case); *Bryant v. Southland Tube*, 294 F.R.D. 633, 644 (N.D. Ala. 2013) (finding EEO-1 data relevant to class certification of promotion and pay discrimination claims); *Avagliano v. Sumitomo Shoji America, Inc.*, 103 F.R.D. 562, 581-82 (S.D.N.Y. 1984)

---

[18] *Advancing Opportunity*, at 17.
[19] *Id.* at 23-24.

24

(finding EEO-1 data relevant to class certification of promotion discrimination claims).

### 3.    Agency Amici's Ability to Use Data to Address Hidden Disparities

Agency Amici can use their analogous investigatory authority and access to EEO-1 data in the same way.  Like the EEOC, many Agency Amici consult EEO-1 data in the course of investigations into hiring, pay, and similar claims that are difficult for private individuals to challenge.  Other Agency Amici intend to do the same, but have not yet had the opportunity to request the data from the EEOC.

EEO-1 data can also be particularly important during investigations of systemic claims and Agency initiated charges of discrimination.  For example, in California, the DFEH has approximately 15 open Director's Complaints (the analogous mechanism to the Commissioner's Charge) concerning employment discrimination.[20]  Direct access to EEO-1 data allows the DFEH and

---

[20] Cal. Gov't Code § 12960(b) (DFEH Director on his or her own motion, "make, sign, and file a complaint"); *see also, e.g.*, *Jackson v. Concord Co.*, 54 N.J. 113, 124 (1969) (New Jersey DCR "may . . . make complaints against violators . . . not only where a wronged individual declines to complain but also in situations where the alleged unlawful

many Agency Amici to quickly assess the merits of certain allegations

without delay or burden on the charged employers to produce the data

themselves.[21]  The data can be used to guide the investigation and may

alert Agency Amici to other potential violations that individual

complainants could not have known about.

EEO-1 data also has utility beyond the individual employer under

investigation.  As noted by the EEOC, enforcement efforts fuel

voluntary compliance: "[S]ystemic enforcement by government agencies

can have a strong deterrent effect on the practices and policies of

---

conduct is more general"); N.Y.C. Admin. Code § 8-109(c) ("The
[NYCCHR] may itself make, sign and file a verified complaint alleging
that a person has committed an unlawful discriminatory practice");
Minn. Stat. § 363A.28, subd.(2) ("[w]henever the commissioner has
reason to believe that a person is engaging in an unfair discriminatory
practice, the commissioner may issue a charge" of discrimination);
Wash. Rev. Code § 49.60.230(b) (WSHRC may issue complaint).
[21] Some Agency Amici currently request pay information while
investigating employment discrimination cases, however, obtaining pay
information directly from employers can require the use of subpoenas,
depositions, interrogatories, and requests for documents, and if the
party fails to cooperate, filing with the court to compel compliance.  *See*,
*e.g.*, 42 U.S.C. § 2000e-9; Cal. Gov't Code §§ 12963-12963.4, 12963.5(a).
Component 2 data will reduce the initial burden of an investigation on
Agency Amici, employers, and the courts because FEPAs will already
have access to a pay data report and will be capable of conducting a
more efficient initial assessment of the employer's practices.

employers beyond those subject to a specific enforcement action."[22]

Data collection over time also assists government agencies in

identifying systemic issues so that enforcement priorities and tactics

can evolve to address the most pressing and current workforce trends.

Again, the EEOC states, "[t]he demographic information that EEOC

has collected for over 50 years on its EEO-1 form provides valuable data

that can assist in identifying patterns of occupational segregations and

potential barriers to hire."[23]

### B. Component 2 Data Would Have Heightened Utility in Agency Amici Jurisdictions with Strong Local Protections

The utility of Component 2 data will be heightened in jurisdictions

with laws more protective than federal law for victims of pay

discrimination.  As contemplated by Title VII, some state and local

jurisdictions have chosen to provide employees with greater protections

than those available under federal law.[24]  For example, California's,

---

[22] *Advancing Opportunity*, at 1, 5 ("[S]ystemic enforcement is a greater driver of employer compliance than individual investigations or cases.").
[23] *Id.* at 38.
[24] *See, e.g.*, *Cal. Fed. Sav. and Loan Ass'n v. Guerra* 479 U.S. 272, 280 (1987) (Title VII does not preempt greater protections provided to pregnant workers under California law); 42 U.S.C. § 2000h-4.

New Jersey's, and Washington's Equal Pay Acts have broader definitions of employees whose wages can be used as comparators in equal pay claims than federal law.  Cal. Lab. Code § 1197.5; N.J. Stat. Ann. § 10:5-12(t); Wash. Rev. Code § 49.58.020.[25]  Component 2 data could be of even greater use to Agency Amici and the courts in these jurisdictions because this data could bring to light a larger universe of remediable claims.

Moreover, consistent with their missions to educate the public, should the EEOC depart from its longstanding practice of publishing aggregate EEO-1 data,[26] some Agency Amici with similar reporting authority, such as the DFEH, intend to issue aggregate reports using their jurisdictions' Component 2 data.  *See*, *e.g.*, Cal. Gov't Code § 12930(i); N.J. Stat. Ann. § 10:5-8(j).[27]  Agency Amici would do so

---

[25] New Jersey law, for example, also covers a broader range of protected characteristics than federal law.  *Compare* N.J. Stat. Ann. § 10:5-12(t), *with* 29 U.S.C. § 206(d).

[26] The EEOC publishes statistical information on its website.  One such report on California's workforce can be found here: https://www1.eeoc.gov/eeoc/statistics/employment/jobpat-eeo1/2017/index.cfm#centercol.

[27] FEPAs such as the DFEH issue reports with aggregate employer data.  For example, the DFEH's Task Force on Sexual Harassment published a Workplace Harassment Guide for employers and plans to

consistent with the confidentiality protections under Title VII, their

Worksharing Agreements, and applicable federal, state, and local laws.

*See* Section VI, *infra.*

  Aggregate reports of EEO-1 data provide important information to

employers and the public about trends in various industries.  This

allows companies, potential complainants, and advocacy groups like

Plaintiffs-Appellees to identify potential civil rights violations, such as

pay disparities among a protected class, and remedy those claims with

Agency Amici.  These individual complaints support the work of Agency

Amici who generally rely on individually noticed complaints to enforce

civil rights laws, particularly where Agency Amici's laws have more

expansive protections than federal law.  More generally, some Agency

Amici would plan to publish such reports for the same reasons that the

EEOC has traditionally published aggregate data: because such

reporting would assist researchers, local jurisdictions, government

---

survey employers and release aggregate survey data.  DFEH, *DFEH Task Force on the Prevention of Sexual Harassment in the Workplace*, https://www.dfeh.ca.gov/sexual-harassment-prevention-task-force/ ("view Workplace Harassment Guide" hyperlink; "View press release" hyperlink).

29

agencies, and stakeholders, as well as employers who wish to see how they are doing compared with others in their industry.

## IV.   SIMILAR PAY TRANSPARENCY MEASURES HAVE PROVEN EFFECTIVE IN THE PUBLIC AND PRIVATE SECTOR

The efficacy of pay transparency measures like the Component 2 data in correcting pay disparities is well-established.  In the United States, the EEOC has collected salary range information from state and local governments in the EEO-4 form since 1974.  The EEO-4 form requires employers to report the representation of men and women of different race and ethnic groups in eight different occupational classifications along with their representation within a set range of salary scales.[28]  While the EEO-4 data reports salary information in a different format from Component 2, both require employers to report workers' salary information.

Courts have recognized the utility of the EEO-4 information. EEO-4 data "can provide an intelligent basis for determining whether the state may be guilty of an unlawful employment practice." *United States v. New Hampshire*, 539 F.2d 277, 279-80 (1st Cir. 1976) (citations

---

[28] EEOC, *State and Local Government Information (EEO-4)*, https://egov.eeoc.gov/eeo4/pdf/EEO4.pdf.

omitted). Indeed, the First Circuit rejected New Hampshire's challenge to the collection of EEO-4 data, stating, "[i]nformation like that which the EEO-4 form seeks to accumulate is often highly useful when an agency or court attempts to make the often difficult inference that illegal discrimination is or is not present in a particular factual context." *Id.*; *see also, e.g.*, *NAACP v. N. Hudson Reg'l Fire & Rescue*, 742 F. Supp. 2d 501, 511-512 (D.N.J. 2010) (relying on EEO-4 data in part to hold plaintiffs had proven hiring discrimination claim).

Similarly, the OFCCP collects pay information (including EEO-1 job categories) from federal contractors with 50 or more employees to conduct pay equity audits. These audits allow the OFCCP to evaluate and enforce compliance with Executive Order 11246, which prohibits discrimination, including pay discrimination, by federal contractors.[29]

Outside of the United States, recently adopted pay transparency laws have been credited with narrowing the pay gaps in those

---

[29] U.S. Department of Labor, Office of Federal Contract Compliance Programs, Directive 2018-05 (2018) ("OFCCP uses statistics to evaluate contractor pay practices under Executive Order 11246. . . . The U.S. Supreme Court has upheld the use of statistical analyses to constitute *prima facie* proof of a pattern or practice of discrimination.").

jurisdictions.  For example, Denmark introduced pay transparency

legislation in 2006 requiring large firms to report wage statistics broken

down by gender *to employees*.  Denmark has since closed the gender-pay

gap by as much as 7 percent in just 12 years.[30]  And certain firms in the

United Kingdom are required to report salaries and bonuses broken

down by gender *to the public* on their own websites.[31]  In Canada,

Ontario's recent Pay Transparency Act requires that employers prepare

transparency reports documenting gender-earning gaps to be submitted

to the government and publicly posted.[32]  U.S. workers in these

countries can use these foreign pay reporting requirements to assert

---

[30] Morten Bennedsen, Elena Simintzi, and Margarita Tsoutsoura, *Do firms respond to gender pay gap transparency?* (Nov.  5, 2018), at 3, https://wpcarey.asu.edu/sites/default/files/daniel_wolfenzon_seminar_november_9_2018.pdf.

[31] *The Equality Act 2010 (Gender Pay Gap Information) Regulations 2017*, http://www.legislation.gov.uk/uksi/2017/172/pdfs/uksi_20170172_en.pdf.  This was spurred in part by a study that assessed the result of voluntary wage transparency and determined that employees who work for firms that share organizational financial information out-earn their counterparts at firms that do not by 8-12 percent.  *See* Jake Rosenfeld and Patrick Denice, *The Power of Transparency: Evidence from a British Workplace Survey* (Sept. 1, 2015) vol. 80, 5 Am. Sociological Review, 1045-1068.

[32] Legislative Assembly of Ontario, *Bill 203, Pay Transparency Act, 2018*, https://www.ola.org/en/legislative-business/bills/parliament-41/session-2/bill-203.

their rights under Title VII, which applies extraterritorially to U.S. companies and citizens alike.[33]  Their domestic counterparts, without comparable Component 2 data, cannot.

## V.  COLLECTION OF WAGE DATA IMPOSES MINIMAL BURDENS ON EMPLOYERS

Several Agency Amici have conducted investigations involving employers' computerized Human Resource Information Systems (HRIS), including the systems commonly used by larger employers, to gather pertinent employment data.  To comply with the Component 2 pay data reporting, employers may have to link annual earnings data (W-2 data) to the job categories already required in an EEO-1 report. While the database for payroll may be separate from the HRIS database that tracks demographic data for EEO-1 reports, the potential burden on employers of this size to link that information to comply with Component 2 reporting is minimal.  Most employers of this size are already using computerized payroll systems.[34]  W-2 information is familiar to employers and already contains all the elements of employee

---

[33] *See* 42 U.S.C. §§ 2000e(f), 2000e-1(c).
[34] National Research Council of the National Academies, *Collecting Compensation Data Form Employers*, at 4 (2012), https://www.nap.edu/read/13496/chapter/2.

earnings and hours worked required under the EEOC's rule and the district court's order.

Indeed, in its 2016 60-day notice of rulemaking, the EEOC noted that the top three HRIS tools that the EEOC sees in its systemic investigations—ADP Enterprise, PeopleSoft, and UltiPro—all already include the capacity to record year-to-date gross and paid earnings. 81 Fed. Reg. 45479-01, at 45487. In fact, several major HRIS systems have already provided modifications to facilitate clients' reporting of Component 2 data.[35]

Moreover, federal contractors already submit pay information (including EEO-1 job categories) to the OFCCP for purposes of pay equity audits.[36] Indeed, OFCCP's employee-level pay data collection

---

[35] *See*, *e.g.*, Oracle, *E1:08: 2019 EEO-1 Component 2 - New Reporting Functionality is Available (Doc ID 2576794.1)* (Oct. 3, 2019), https://support.oracle.com/knowledge/JD%20Edwards%20EnterpriseOne/2576794_1.html (modifications to permit Component 2 reporting); Sage City, *Update: New pay data requirements for EEO-1 reporting due Sept. 30,* 2019 (Sept. 6, 2019), https://www.sagecity.com/support_communities/sage_hrms/f/announcements-news-updates/130183/updates-new-pay-data-requirements-for-eeo-1-reporting-due-sept-30-2019 (template and import instructions for HRIS-only system clients to file Component 2 data).
[36] OFCCP collects even more detailed compensation data than the Component 2 from federal contractors. *See Scheduling Letter and*

goes much further than Component 2 data, and has been approved

every three years by OMB.  Private companies themselves also collect

and share more detailed pay information for industry-wide salary

surveys, and then routinely rely on those private surveys to set salaries

and compare the equities and competitiveness of their jobs and

compensation packages.[37]  Defendants-Appellants' and their amici's

burden argument therefore is at odds with some Agency Amici's own

experiences working with these data systems and knowledge of current

practices.

---

*Itemized Listing* ¶ 19, https://www.reginfo.gov/public/do/PRAViewIC?
ref_nbr=201602-1250-001&icID=13735 ("Scheduling Letter and
Itemized Listing.docx" hyperlink) (collecting "(e)mployee level
compensation data for all employees . . . gender and race/ethnicity
information and hire date for each employee as well as job title, *EEO-1
Category* and job group . . . ." (emphasis added)).

[37] Amici Chamber of Commerce of the U.S.A. et al.'s arguments
challenging the utility and burden of Component 2 are disingenuous, at
best.  Most large private companies have shared salary information
through salary surveys for years and use them to benchmark or
compare their own compensation decisions.  However, they share the
information only with other companies, not their own employees.  *See,
e.g.*, Society for Human Resource Management, *Directory of Salary
Surveys*, https://www.shrm.org/ResourcesAndTools/tools-and-
samples/exreq/Pages/Salary-Survey-Directory.aspx; Radford Surveys,
https://radford.aon.com/surveys.

## VI. EXISTING LAW AND FEDERAL-STATE AGENCY WORKSHARING AGREEMENTS PROTECT CONFIDENTIAL INFORMATION

Existing law provides stringent and proven protections for the confidentiality of pay data. It is unlawful for the EEOC to make EEO-1 data public and the EEOC furnishes the information to FEPAs on the condition of confidentiality. 42 U.S.C. § 2000e-8(d) (Information furnished by the EEOC "shall be furnished on the condition that it will not be made public by the recipient agency prior to the institution of a proceeding under State or local law involving such information."). Many local statutes and regulations similarly provide protection against public disclosure of EEO-1 data.[38] Moreover, the Worksharing Agreements between FEPAs and the EEOC specify that FEPAs agree "to observe the confidentiality provisions of Title VII." *E.g.*, 2019 EEOC-DFEH Worksharing Agreement, § IV.A. Agency Amici are not aware of allegations that such confidentiality protections are regularly, or ever, breached. There is no reason to believe these protections, which

---

[38] *See, e.g.*, Cal. Gov't Code § 6254(k) ("Records, the disclosure of which is exempted or prohibited pursuant to federal or state law" are exempt from disclosure under the California Public Records Act).

36

have been sufficient for the last 50 years of EEO-1 data collection, are no longer sufficient.

***

Collection of pay data increases the ability of government agencies to enforce fundamental state and local laws prohibiting discrimination and to prevent, remedy, and deter compensation discrimination across their jurisdictions. Component 2 data provides an effective investigatory tool to identify wage patterns within different sectors, provides a strategic enforcement tool to identify likely violators of anti-discrimination laws, allows Agency Amici to focus scarce government resources, and promotes self-assessment and correction. Collection of wage data would also enable many Agency Amici to issue reports on wage discrimination in their jurisdictions, which serve to educate the public and encourage voluntary compliance with the law. Any potential burden on employers is minimal while the benefits of pay transparency to the public at large are immense. For the agencies entitled to the Component 2 data, its collection is an important step towards meeting the promise of federal, state, and local civil rights laws.

37

## CONCLUSION

For the foregoing reasons, Agency Amici respectfully urge the

Court to affirm the district court's ruling below.


Dated:  October 25, 2019         Respectfully submitted,

                                 XAVIER BECERRA
                                 Attorney General of California
                                 MICHAEL L. NEWMAN
                                 Senior Assistant Attorney General
                                 CHEROKEE DM MELTON
                                 Supervising Deputy Attorney General


                                 _____/s/*Lisa C. Erlich*_____
                                 LISA C. EHRLICH
                                 Deputy Attorney General
                                 *Attorneys for Amici Curiae*
                                 *California Department of Fair*
                                 *Employment and Housing*

                                 (Counsel listing continues on next page)

38

TANYA A. HUGHES
Executive Director
Connecticut Comm. on Human
  Rights and Opportunities
450 Columbus Blvd., Suite 2
Hartford, CT 06103

KARL A. RACINE
Attorney General for the District
  of Columbia
One Judiciary Square
441 4th Street, NW, Suite 630
South
Washington, D.C. 20001

BARBARA ARCHER HIRSCH
Counsel
Maine Human Rights
  Commission
51 State House Station
Augusta, ME 04333

ALVIN O. GILLARD
Executive Director
Maryland Commission on
  Civil Rights
6 Saint Paul Street
Baltimore, MD 21202

AARON FORD
Attorney General of Nevada
100 N. Carson Street
Carson City, NV 89701-4717

KATHLEEN JENNINGS
Attorney General of Delaware
Department of Justice
Carvel State Building, 6th Floor
820 North French Street
Wilmington, DE 19801

KWAME RAOUL
Attorney General of Illinois
James L. Bennet
Director, Illinois Department of
  Human Rights
100 W. Randolph Street
Chicago, IL 60601

ANDRE M. DAVIS
City Solicitor, Baltimore City
  Law Department
100 N. Holliday St., Suite 101
Baltimore, MD 21146

REBECCA LUCERO
Commissioner
IRINA VAYNERMAN
Deputy Commissioner
Minnesota Department of
  Human Rights
540 Fairview Ave N, Suite 201
St. Paul, MN 55104

GURBIR S. GREWAL
Attorney General of New Jersey
25 Market Street
Trenton, NJ 08625

GEORGIA M. PESTANA
Acting Corporation Counsel
  for the City of New York
100 Church Street
New York, NY 10007

ELLEN F. ROSENBLUM
Attorney General of Oregon
1162 Court St. NE
Salem, OR 97301

RUE LANDAU
Executive Director
Philadelphia Commission on
  Human Relations
601 Walnut Street, Suite 300
South
Philadelphia, PA 19106

MARK R. HERRING
Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219

LETITIA JAMES
Attorney General for the
  State of New York
The Capitol
Albany, NY 12224

MARTIN CUNNINGHAM
Interim Chief Counsel
Pennsylvania Human Relations
  Commission
Legal Division
333 Market St., 8th floor
Harrisburg, PA 17126-0333

MICHAEL D. EVORA
Executive Director
RI Commission for Human Rights
180 Westminster Street
Providence, RI 02903

ROBERT W. FERGUSON
Attorney General of Washington
SHARON M. JAMES
Assistant Attorney General
PO Box 40100
1125 Washington Street SE
Olympia, Washington 98504-0100

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure ("FRAP") 32(g), the undersigned counsel for Amici Curiae certifies that this brief:

(i)    complies with the type-volume limitation of FRAP 32(a)(7)(B) because it contains 6,497 words, including footnotes and excluding the parts of the brief exempted by FRAP 32(f) and Circuit Rule 32(e) (1); and

(ii)    complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because it has been prepared using Microsoft Office Word 2016 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated:  October 25, 2019

/s/*Lisa C. Ehrlich*
Lisa C. Ehrlich

41

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2019, I electronically filed a copy of the foregoing. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

Dated: October 25, 2019

/s/*Lisa C. Ehrlich*
Lisa C. Ehrlich

**ADDENDUM**

# TABLE OF CONTENTS

**Page**

42 U.S.C. § 2000e-5 ................................................................. 1

42 U.S.C. § 2000e-8 ................................................................. 9

29 C.F.R. § 1601.70 ............................................................... 12

29 C.F.R. § 1601.75 ............................................................... 14

29 C.F.R. § 1602.7 ................................................................ 15

i

**42 U.S.C. § 2000e-5**

**Enforcement Provisions**

**(a) Power of Commission to prevent unlawful employment practices**

The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e-2 or 2000e-3 of this title.

**(b) Charges by persons aggrieved or member of Commission of unlawful employment practices by employers, etc.; filing; allegations; notice to respondent; contents of notice; investigation by Commission; contents of charges; prohibition on disclosure of charges; determination of reasonable cause; conference, conciliation, and persuasion for elimination of unlawful practices; prohibition on disclosure of informal endeavors to end unlawful practices; use of evidence in subsequent proceedings; penalties for disclosure of information; time for determination of reasonable cause**

Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. Charges shall not be made public by the Commission. If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be

1

aggrieved and the respondent of its action. In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the requirements of subsections (c) and (d). If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both. The Commission shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge or, where applicable under subsection (c) or (d), from the date upon which the Commission is authorized to take action with respect to the charge.

**(c) State or local enforcement proceedings; notification of State or local authority; time for filing charges with Commission; commencement of proceedings**

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (a) by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a

2

written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority.

## (d) State or local enforcement proceedings; notification of State or local authority; time for action on charges by Commission

In the case of any charge filed by a member of the Commission alleging an unlawful employment practice occurring in a State or political subdivision of a State which has a State or local law prohibiting the practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, the Commission shall, before taking any action with respect to such charge, notify the appropriate State or local officials and, upon request, afford them a reasonable time, but not less than sixty days (provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective day of such State or local law), unless a shorter period is requested, to act under such State or local law to remedy the practice alleged.

## (e) Time for filing charges; time for service of notice of charge on respondent; filing of charge by Commission with State or local agency; seniority system

(1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving

3

notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

(2) For purposes of this section, an unlawful employment practice occurs, with respect to a seniority system that has been adopted for an intentionally discriminatory purpose in violation of this subchapter (whether or not that discriminatory purpose is apparent on the face of the seniority provision), when the seniority system is adopted, when an individual becomes subject to the seniority system, or when a person aggrieved is injured by the application of the seniority system or provision of the system.

(3)(A) For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

(B) In addition to any relief authorized by section 1981a of this title, liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

**(f) Civil action by Commission, Attorney General, or person aggrieved; preconditions; procedure; appointment of attorney; payment of fees, costs, or security; intervention; stay of Federal proceedings; action for appropriate temporary or preliminary relief pending final disposition of charge; jurisdiction and venue of United States courts; designation of judge to hear and determine case; assignment of case for hearing; expedition of case; appointment of master**

4

(1) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d), the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the Attorney General in a case involving a government, governmental agency, or political subdivision. If a charge filed with the Commission pursuant to subsection (b) is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d), whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, the court may, in its discretion, permit the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, to intervene in such civil action upon certification that the case is of general public

5

importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsection (c) or (d) of this section or further efforts of the Commission to obtain voluntary compliance.

(2) Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. Any temporary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with rule 65 of the Federal Rules of Civil Procedure. It shall be the duty of a court having jurisdiction over proceedings under this section to assign cases for hearing at the earliest practicable date and to cause such cases to be in every way expedited.

(3) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

(4) It shall be the duty of the chief judge of the district (or in his absence, the acting chief judge) in which the case is pending immediately to designate a judge in such district to hear and determine the case. In the event that no judge in the district is available to hear and determine the case, the chief judge of the district, or the acting chief judge, as the case may be, shall certify this fact to the chief judge of the circuit (or in his absence, the acting chief judge) who shall then

designate a district or circuit judge of the circuit to hear and determine the case.

(5) It shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within one hundred and twenty days after issue has been joined, that judge may appoint a master pursuant to rule 53 of the Federal Rules of Civil Procedure.

**(g) Injunctions; appropriate affirmative action; equitable relief; accrual of back pay; reduction of back pay; limitations on judicial orders**

(1) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

(2)(A) No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e-3(a) of this title.

(B) On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates

7

that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court--

      (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and

      (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

## (h) Provisions of chapter 6 of Title 29 not applicable to civil actions for prevention of unlawful practices

The provisions of chapter 6 of Title 29 shall not apply with respect to civil actions brought under this section.

## (i) Proceedings by Commission to compel compliance with judicial orders

In any case in which an employer, employment agency, or labor organization fails to comply with an order of a court issued in a civil action brought under this section, the Commission may commence proceedings to compel compliance with such order.

## (j) Appeals

Any civil action brought under this section and any proceedings brought under subsection (i) shall be subject to appeal as provided in sections 1291 and 1292, Title 28.

## (k) Attorney's fee; liability of Commission and United States for costs

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

8

## 42 U.S.C. § 2000e-8

## Investigations

## (a) Examination and copying of evidence related to unlawful employment practices

In connection with any investigation of a charge filed under section 2000e-5 of this title, the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation.

## (b) Cooperation with State and local agencies administering State fair employment practices laws; participation in and contribution to research and other projects; utilization of services; payment in advance or reimbursement; agreements and rescission of agreements

The Commission may cooperate with State and local agencies charged with the administration of State fair employment practices laws and, with the consent of such agencies, may, for the purpose of carrying out its functions and duties under this subchapter and within the limitation of funds appropriated specifically for such purpose, engage in and contribute to the cost of research and other projects of mutual interest undertaken by such agencies, and utilize the services of such agencies and their employees, and, notwithstanding any other provision of law, pay by advance or reimbursement such agencies and their employees for services rendered to assist the Commission in carrying out this subchapter. In furtherance of such cooperative efforts, the Commission may enter into written agreements with such State or local agencies and such agreements may include provisions under which the Commission shall refrain from processing a charge in any cases or class of cases specified in such agreements or under which the Commission shall relieve any person or class of persons in such State or locality from requirements imposed under this section. The Commission shall rescind

any such agreement whenever it determines that the agreement no longer serves the interest of effective enforcement of this subchapter.

**(c) Execution, retention, and preservation of records; reports to Commission; training program records; appropriate relief from regulation or order for undue hardship; procedure for exemption; judicial action to compel compliance**

Every employer, employment agency, and labor organization subject to this subchapter shall (1) make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, (2) preserve such records for such periods, and (3) make such reports therefrom as the Commission shall prescribe by regulation or order, after public hearing, as reasonable, necessary, or appropriate for the enforcement of this subchapter or the regulations or orders thereunder. The Commission shall, by regulation, require each employer, labor organization, and joint labor-management committee subject to this subchapter which controls an apprenticeship or other training program to maintain such records as are reasonably necessary to carry out the purposes of this subchapter, including, but not limited to, a list of applicants who wish to participate in such program, including the chronological order in which applications were received, and to furnish to the Commission upon request, a detailed description of the manner in which persons are selected to participate in the apprenticeship or other training program. Any employer, employment agency, labor organization, or joint labor-management committee which believes that the application to it of any regulation or order issued under this section would result in undue hardship may apply to the Commission for an exemption from the application of such regulation or order, and, if such application for an exemption is denied, bring a civil action in the United States district court for the district where such records are kept. If the Commission or the court, as the case may be, finds that the application of the regulation or order to the employer, employment agency, or labor organization in question would impose an undue hardship, the Commission or the court, as the case may be, may grant appropriate relief. If any person required to comply with the provisions of this subsection fails or refuses to do so, the United States district court for the district in which such person is found, resides, or

10

transacts business, shall, upon application of the Commission, or the Attorney General in a case involving a government, governmental agency or political subdivision, have jurisdiction to issue to such person an order requiring him to comply.

**(d) Consultation and coordination between Commission and interested State and Federal agencies in prescribing recordkeeping and reporting requirements; availability of information furnished pursuant to recordkeeping and reporting requirements; conditions on availability**

In prescribing requirements pursuant to subsection (c) of this section, the Commission shall consult with other interested State and Federal agencies and shall endeavor to coordinate its requirements with those adopted by such agencies. The Commission shall furnish upon request and without cost to any State or local agency charged with the administration of a fair employment practice law information obtained pursuant to subsection (c) of this section from any employer, employment agency, labor organization, or joint labor-management committee subject to the jurisdiction of such agency. Such information shall be furnished on condition that it not be made public by the recipient agency prior to the institution of a proceeding under State or local law involving such information. If this condition is violated by a recipient agency, the Commission may decline to honor subsequent requests pursuant to this subsection.

**(e) Prohibited disclosures; penalties**

It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information. Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than one year.

11

**29 C.F.R. § 1601.70**

**FEP agency qualifications.**

(a) State and local fair employment practice agencies or authorities which qualify under section 706(c) of title VII and this section shall be designated as "FEP agencies." The qualifications for designation under section 706(c) are as follows:

    (1) That the State or political subdivision has a fair employment practice law which makes unlawful employment practices based upon race, color, religion, sex, national origin or disability; and

    (2) That the State or political subdivision has either established a State or local authority or authorized an existing State or local authority that is empowered with respect to employment practices found to be unlawful, to do one of three things: To grant relief from the practice; to seek relief from the practice; or to institute criminal proceedings with respect to the practice.

(b) Any State or local agency or authority seeking FEP agency designation should submit a written request to the Chairman of the Commission. However, if the Commission is aware that an agency or authority meets the above criteria for FEP agency designation, the Commission shall defer charges to such agency or authority even though no request for FEP agency designation has been made.

(c) A request for FEP agency designation should include a copy of the agency's fair employment practices law and any rules, regulations and guidelines of general interpretation issued pursuant thereto. Submission of such data will allow the Commission to ascertain which employment practices are made unlawful and which bases are covered by the State or local entity. Agencies or authorities are requested, but not required, to provide the following helpful information:

    (1) A chart of the organization of the agency or authority responsible for administering and enforcing said law;

    (2) The amount of funds made available to or allocated by the agency or authority for fair employment purposes;

    (3) The identity and telephone number of the agency (authority) representative whom the Commission may contact with reference to any legal or other questions that may arise regarding designation;

(4) A detailed statement as to how the agency or authority meets the qualifications of paragraph (a)(1) and (2) of § 1601.70.

(d) Where both State and local FEP agencies exist, the Commission reserves the right to defer to the State FEP agency only. However, where there exist agencies of concurrent jurisdiction, the Commission may defer to the FEP agency which would best serve the purposes of title VII, the ADA, or GINA, or to both.

(e) The Chairman or his or her designee, will provide to the Attorney General of the concerned State (and corporation counsel of a concerned local government, if appropriate) an opportunity to comment upon aspects of State or local law which might affect the qualifications of any new agency in that State otherwise cognizable under this section.

**29 C.F.R. § 1601.75**

**Certification of designated FEP agencies.**

(a) The Commission may certify designated FEP agencies based upon the past, satisfactory performance of those agencies. The effect of such certification is that the Commission shall accept the findings and resolutions of designated FEP agencies in regard to cases processed under contracts with those agencies without individual, case-by-case substantial weight review by the Commission except as provided in §§ 1601.76 and 1601.77 of this part.

(b) Eligibility criteria for certification of a designated FEP agency are as follows:

(1) That the State or local agency has been a designated FEP agency for 4 years;

(2) That the State or local designated FEP agency's work product has been evaluated within the past 12 months by the Systemic Investigations and Individual Compliance Programs, Office of Program Operations, and found to be in conformance with the Commission's Substantial Weight Review Procedures (EEOC Order 916); and

(3) That the State or local designated FEP agency's findings and resolutions pursuant to its contract with the Commission, as provided in section 709(b) of title VII, have been accepted by the Commission in at least 95% of the cases processed by the FEP agency in the past 12 months.

(c) Upon Commission approval of a designated FEP agency for certification, it shall notify the agency of its certification and shall effect such certification by issuance and publication of an amendment to § 1601.80 of this part.

14

**29 C.F.R. § 1602.7**

**Requirement for filing of report.**

On or before September 30 of each year, every employer that is subject to title VII of the Civil Rights Act of 1964, as amended, and that has 100 or more employees shall file with the Commission or its delegate executed copies of Standard Form 100, as revised (otherwise known as "Employer Information Report EEO–1") in conformity with the directions set forth in the form and accompanying instructions. Notwithstanding the provisions of § 1602.14, every such employer shall retain at all times at each reporting unit, or at company or divisional headquarters, a copy of the most recent report filed for each such unit and shall make the same available if requested by an officer, agent, or employee of the Commission under the authority of section 710 of title VII. Appropriate copies of Standard Form 100 in blank will be supplied to every employer known to the Commission to be subject to the reporting requirements, but it is the responsibility of all such employers to obtain necessary supplies of the form from the Commission or its delegate prior to the filing date.