[ORAL ARGUMENT NOT SCHEDULED]
No. 19-5130

UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF
COLUMBIA CIRCUIT

NATIONAL WOMEN'S LAW CENTER, ET AL.,
Plaintiffs - Appellees,
v.
OFFICE OF MANAGEMENT AND BUDGET, ET AL,
Defendants-Appellants.

**BRIEF OF DEMOCRATIC WOMEN'S CAUCUS AND INDIVIDUAL
LEGISLATORS AS AMICI CURIAE IN SUPPORT OF APPELLEES TO
AFFIRM**

On appeal from the U.S. District Court for the District of Columbia
Case No. 17-2458 (Chutkan, J.)

KYMBERLY K. EVANSON
PAUL J. LAWRENCE
CLAIRE E. MCNAMARA
**PACIFICA LAW GROUP LLP**
1191 Second Avenue, Suite 2000
Seattle, WA 98101-3404
Telephone: 206-240-1700
Facsimile: 206-240-1750
Paul.lawrence@pacificalawgroup.com
Kymberly.Evanson@pacificalawgroup.com
Claire.McNamara@pacificalawgroup.com
Attorneys for Democratic Women's Caucus

## CERTIFICATE AS TO PARTIES, RULINGS, RELATED CASES AND AS TO PRACTICABILITY OF A SINGLE AMICUS BRIEF

### A.     Parties And *Amici*.

All parties, intervenors, and *amici* appearing before the District Court are listed in the Brief for Appellants. To date, in addition to the Democratic Women's Caucus and individual legislators signing on to this brief, the following entities are participating as *amici* in this Court:

> Eagle Forum Education & Legal Defense Fund
> Chamber of Commerce
> HR Policy Association
> National Association of Manufacturers
> American Bankers Association
> American Society of Employers
> Associated Builders and Contractors
> Associated General Contractors of America
> Center for Workplace Compliance
> Institute for Workplace Equality
> National Federation of Independent Business
> National Retail Federation
> Restaurant Law Center
> Retail Litigation Center, Inc.
> Society for Human Resource Management

The Democratic Women's Caucus understands that several individuals and entities may file additional amicus briefs.

### B.     Rulings Under Review.

The Brief for Appellants identifies and describes the rulings under review.

### C.     Related Cases.

This case has not previously been before this Court, and counsel is not aware of

any related case within the meaning of Circuit Rule 28(a)(1)(C).

### D.    Practicability of a Single Amicus Brief in Support of Appellees.

Amici the Democratic Women's Caucus and individual signing legislators submit this brief as current Congressional members focused on advancing the causes of economic opportunity and equality.  They also offer a unique historical overview of the efforts of their Congressional forbearers to address pay disparity, current Congressional efforts to address pay disparity, the current status of pay disparity in the United States, and the importance of data transparency to combat pay disparity. The amicus brief therefore offers a unique perspective on the need for the Equal Employment Opportunity Commission to resume collecting data through the Employer Information Report.  Accordingly, joining the briefs of the statisticians, economists, management researchers, employment analysts, non-profit organizations, or of the proposed former executive branch members is not practicable.

Dated: October 25, 2019

Respectfully submitted,

*/s/ Kymberly K. Evanson*
Kymberly K. Evanson

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1, the undersigned counsel certifies that the Democratic Women's Caucus and Individual Signing Legislators are not a nongovernmental entity with a parent corporation or a publicly held corporation that owns 10 percent or more of its stock.

Dated: October 25, 2019

Respectfully submitted,

*/s/ Kymberly K. Evanson*
Kymberly K. Evanson

## STATEMENT OF IDENTITY, INTEREST IN CASE, AND SOURCE OF AUTHORITY TO FILE

Amici the Democratic Women's Caucus is comprised of all ninety-one Democratic Women in the U.S. House of Representatives and are joined by the individual legislators whose signatures in support of this brief appear on the last pages of this brief.  The Democratic Women's Caucus exists to harness the collective power of the Democratic women in the House of Representatives in order to expand rights and opportunities for women and their families. Representatives Lois Frankel, Brenda L. Lawrence, and Jackie Speier serve as the Co-Chairs of the Caucus. Representatives Veronica Escobar and Representatives Deb Haaland serve as the Vice Chairs of the Caucus. Key pillars of the Democratic Women's Caucus' Policy Agenda are economic opportunity and equality.  The Caucus and individual signing legislators believe all people deserve economic opportunity, security, and policies that recognize the demands of work and family, as well as dignity and equal treatment under the law. Accordingly, they are concerned about efforts to restrict or limit access to information regarding pay equity which would stymie the Caucus' efforts to advance economic opportunity and equality.  The Caucus and the legislators have concurrently filed a motion for leave to submit this brief as amici to the Court.

Dated: October 25, 2019

Respectfully submitted,

*/s/ Kymberly K. Evanson*
Kymberly K. Evanson

## STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS

The Democratic Women's Caucus' and Individual Legislators' attorneys drafted this brief pro bono. No party's counsel authored this brief in whole or in part, and no party, party's counsel, or other person contributed money that was intended to fund preparing or submitting this brief.

Dated: October 25, 2019

Respectfully submitted,

*/s/ Kymberly K. Evanson*
Kymberly K. Evanson

# TABLE OF CONTENTS

I.  SUMMARY OF ARGUMENT ........................................................ 1

II. ARGUMENT ................................................................................. 5

   A.  Congress' Efforts to End Workplace Wage Discrimination ............................... 5

   B.  The Gender Wage Gap Persists Despite Congressional Efforts ........................ 8

   C.  The Racial Wage Gap Persists Despite Congressional Efforts ......................... 11

   D.  Enhanced Data is Needed to Help Eliminate Wage Discrimination in the Workplace as Congress Intended. ................................................................ 13

III.       CONCLUSION .................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

*Nat'l Women's Law Ctr. v. Office of Mgmt. & Budget*,
  358 F. Supp. 3d 66 (D.D.C. 2019) ................................................................ 13

## Federal Statutes

29 U.S.C. § 206(d)(1) ................................................................................... 6, 8

42 U.S.C. § 2000e(k) (2012) ............................................................................. 8

42 U.S.C. 2000e-8(c) ........................................................................................ 8

Education Amendments (1972) ......................................................................... 8

Equal Pay Act (1963) ....................................................................................... 6

Fair Labor Standards Amendments (1961) ....................................................... 8

Lilly Ledbetter Fair Pay Act (2009). ................................................................. 8

## Bills, Resolutions and Federal Regulations

H.R. 7, Paycheck Fairness Act, 116th Cong. (2019) (proposed). .............. 4, 14

H.R. Con. Res. 30, (2019) (proposed) ............................................................. 1

EEOC, "Agency Information Collection Activities; Notice of Submission for OMB
  Review, Final Comment Request: Revision of the Employer Information Report
  (EEO-1)" July 14, 2016,
  https://www.federalregister.gov/documents/2016/07/14/2016-16692/agency-info
  ....................................................................... 1, 4, 7, 13,14, 15, 16

## Other Authorities

AAUW Reacts to Stagnant Gender Pay Gap Number, American Association for
  University Women, Sept. 10, 2019, https://www.aauw.org/article/stagnant-gender-
  pay-gap-numbers/ ............................................................................................. 9

Commerce, Justice, Science, and Related Agencies Appropriations Bill, 2020, Report
  116-101, June 3, 2019, 101,

https://appropriations.house.gov/sites/democrats.appropriations.house.gov/files/FY2020%20CJS%20CJS%20Filed%20Report%20-%20HR3055.pdf. ....................... 14

Eileen Patten, "Racial, gender wage gaps persist in U.S. despite some progress," Pew Research Center, July 1, 2016, https://www.pewresearch.org/fact-tank/2016/07/01/racial-gender-wage-gaps-persist-in-u-s-despite-some-progress/. ................................................................................................................................ 12

Francine D. Blau and Lawrence M. Kahn, *The Gender Wage Gap: Extent, Trends, and Explanations, National Bureau pf Economic Research* (2016), *available at* https://www.nber.org/papers/w21913.pdf. ................................................................... 4

Francine D. Blau and Lawrence M. Kahn, "The gender wage gap: Extent, trends, and explanations," Journal of Economic Literature 55 (3) (2017) ....................................... 9

Jessica Semega, Melissa Kollar, John Creamer, andAbinash Mohanty, "Income and Poverty in the United States: 2018," Sept.10, 2019, https://www.census.gov/library/publications/2019/demo/p60-266.html. .............. 9

Letter from Representative Rosa DeLauro, Senator Patty Murray, et. al., to the Honorable Neomi Rao and Victoria A. Lipnic, (September 19, 2017), https://edlabor.house.gov/imo/media/doc/eeoc%20final%20letter.pdf. ................ 2

Lilly Ledbetter and Lanier Scott Isom, *Grace and Grit: My Fight for Equal Pay and Fairness at Goodyear and Beyond*, 5 (Random House Press, 2012) .................................... 3

Julie Anderson, M.A., Jessica Milli, Ph.D., Melanie Kruvelis, "Projected Year the Wage Gap Will Close by State," Institute for Women's Policy Research, Mar. 22, 2017, https://iwpr.org/publications/projected-year-wage-gap-will-close-state/. ... 15

Morten Bennedsen, Elena Simintzi, Margarita Tsoutsoura, and Daniel Wolfenzon, "Research: Gender Pay Gaps Shrink When Companies Are Required to Disclose Them," Harvard Business Review, (Jan. 23, 2019), https://hbr.org/2019/01/research-gender-pay-gaps-sh ............................................. 17

Nikki Graf, Anna Brown, and Eileen Patten, "The narrowing, but persistent, gender gap in pay," Pew Research Center, Mar. 22, 2019, https://www.pewresearch.org/fact-tank/2019/03/22/gender-pay-gap-facts/ ......... 9

Sarah Jane Glynn, Gender Wage Inequality: What we know and how we can fix it, Washington Center for Equitable Growth, April 2018, https://equitablegrowth.org/research-paper/gender-wage-inequality/ .................... 11

St. George, Oral History Interview, USAFMOC: 32................................................... 6

The Simple Truth about the Gender Pay Gap, American Association for University Women, https://www.aauw.org/research/the-simple-truth-about-the-gender-pay-gap/................................................................................................................9, 10, 15

## GLOSSARY OF TERMS

| | |
|---|---|
| EEO-1 | EEO-1 Report |
| EEOC | Equal Employment Opportunity Commission |
| EPA | Equal Pay Act of 1963 |
| PRA | The Paperwork Reduction Act, 44 U.S.C. § 3501 |
| Title VII | Title VII of the Civil Rights Act of 1964 |

# I.    SUMMARY OF ARGUMENT

The Equal Employment Opportunity Commission's (EEOC) decision to halt collection of significant data through the Employer Information Report (EEO-1) threatens to disrupt progress in closing the gender and racial wage gaps. The EEO-1 data is vital to helping the EEOC detect patterns of pay discrimination and enforce equal pay laws.

Equal pay is an issue of economic fairness and is essential for women, people of color, and their families across the country. In 2018, women in the U.S. who work full time year-round were paid only 80 cents, on average, for every dollar paid to men, and for women of color the wage gap is even larger.[1] For every dollar paid to white men, on average, black women make only 61 cents and Latina women make 53 cents.[2] This disparity in income for the median annual earnings for women and men working full time year round is $10,169, which can add up to more than $400,000 over a career, and an estimated more than $1,000,000 in lost income for millennial women.[3] Similarly, the EEOC has found that African American men and Hispanic men who worked full time

---

[1] Representative Lois Frankel, Sponsor, House Committee on Education and Labor, H. Con. Res. 30, Recognizing the significance of equal pay and the disparity between wages paid to men and women, (Apr. 02, 2019), https://www.congress.gov/bill/116th-congress/house-concurrent-resolution/30/text (citing Census Bureau data).

[2] *Id.*

[3] *Id.*

in wage and salary earn approximately 76 percent and 69 percent, respectively, of white men's median weekly earnings.[4]

These wage disparities have existed for decades and have been detrimental to the well-being of women and families across the country. Women are the primary earners in half of families with children under 18, yet mothers working full time are paid 71 percent as much as fathers.[5] The gender wage gap collectively costs women employed full time in the United States more than $900 billion in annual lost wages; hurting our economy.[6]

The gender and racial wage gaps result in families having less money to spend on goods and services that help drive economic growth. Research shows that if the wage gaps were eliminated, on average, a working woman in the United States would have enough money for approximately thirteen more months of child care, ten additional months of rent, seven additional months of mortgage and utility payments, the full cost of tuition and fees for a two-year college, seven additional months of premiums for employer-based health insurance, over eight additional years of birth control, more than

---

[4] Letter from Representative Rosa DeLauro, Senator Patty Murray, et. al., to the Honorable Neomi Rao and Victoria A. Lipnic, (September 19, 2017), https://edlabor.house.gov/imo/media/doc/eeoc%20final%20letter.pdf.

[5] Recognizing the significance of equal pay and the disparity between wages paid to men and women, *supra* note 1.

[6] *Id.*

seventy weeks of food, or enough money to pay off student loan debt in just under three years.[7] Additionally, one 2017 analysis indicated that if women in the United States received equal pay comparable with men, poverty for working women would be reduced by half and the economy would add $512,000,000,000 annually.[8] Although Congress has recognized the importance of closing the wage gap, progress toward achieving equal pay has been slow.

In addition, pay decisions are often cloaked in secrecy. Over 60 percent of private- sector workers report that discussing pay is discouraged or prohibited in their office. Workers should not be forced to depend on anonymous notes to discover pay inequities,[9] which is why data from large companies on pay practices by sex, race and ethnicity allows the EEOC to better detect and put an end to patterns of discrimination.

The gender and racial pay gaps have persisted despite enactment and implementation of multiple acts of Congress dating back to 1963 that attempt to address unequal treatment of employees based on gender and race. These pay disparities

---

[7] *Id.*

[8] *Id.*

[9] Before the passage of the Lilly Ledbetter Act, Ms. Ledbetter has stated she discovered an anonymous note in her work mailbox at a Goodyear Tire and Rubber Co. plant, which accurately listed her salary along with salaries for three male counterparts, revealing to her that she was making less money for the same work. Lilly Ledbetter and Lanier Scott Isom, Grace and Grit: My Fight for Equal Pay and Fairness at Goodyear and Beyond, 5 (Random House Press, 2012).

3

are due to a complex combination of factors, including intentional discrimination, implicit bias, institutional barriers to equal wages, and other lingering effects of past discrimination. After controlling for educational attainment, occupation, industry, union status, race, ethnicity, and labor force experience, roughly 40 percent of the gender pay gap remains unexplained.[10]

Reversing the District Court's decision or staying its implementation for remand will only further delay fulfillment of Congress' efforts to end the long-standing gender, race, and ethnic wage gaps. Other amici, including various businesses, argue that the data obtained in the enhanced EEO-1 will be of no public benefit or utility and that the burden of compliance will be too high. But as the EEOC has itself acknowledged, additional data is of utility to understand the role of discrimination in existing wage gaps, and understanding the problem is necessary to render the clear public benefit of eliminating discriminatory wage practices. Whatever the level of burden in keeping and reporting wage data, it cannot overcome the EEOC's obligation to identify potential discriminatory practices. The important information that will be gained with the enhanced EEO-1 is necessary for the EEOC to do its job as Congress intended –

---

[10] Representative Rosa L. DeLauro, Sponsor, House Committee on Education and Labor, H.R. 7, Paycheck Fairness Act, (Apr. 3, 2019); *see also* Francine D. Blau and Lawrence M. Kahn, The Gender Wage Gap: Extent, Trends, and Explanations, National Bureau pf Economic Research (2016), *available at* https://www.nber.org/papers/w21913.pdf.

preventing discrimination in the workplace.

## II.    ARGUMENT

### A.    Congress' Efforts to End Workplace Wage Discrimination

Although women have been part of the workforce throughout the nation's history, World War II brought a significant need and inflow of women into the workplace. During the War, the federal government for the first time recognized the issue of gender wage discrimination, and the need to correct discriminatory wage gaps. The National War Labor Board in General Order No. 16, adopted 24 November 1942, stated industry leaders must "make adjustments which [would] equalize wage or salary rates paid to females with the rates paid to males for comparable quality and quantity of work on the same or similar operation."

Despite these efforts, the wage gap persisted and adjustments were not forthcoming. As of 1962, women who worked full time, year-round made 59 cents on average for every dollar earned by men.[11] This began a concerted effort by Congress to pass on a bipartisan basis the Equal Pay Act of 1963 (EPA), demonstrating a clear congressional intent to end wage discrimination.

---

[11] "The Wage Gap Over Time: In Real Dollars, Women See a Continuing Gap, National Committee on Pay Equity," (last visited Oct. 24, 2019), https://www.pay-equity.org/info-time.html (citing data gathered from Census Bureau, Current Population Reports, Median Earning of Workers 15 Years Old and Over by Work Experience and Sex).

Representative Katharine St. George (R- NY), who proposed the legislation in 1959 which would ultimately become the Equal Pay Act of 1963, noted her motivation: "I always felt … women were discriminated against in employment … I think women are quite capable of holding their own if they're given the opportunity. What I wanted them to have was the opportunity."[12]

The EPA made it illegal for employers subject to the Fair Labor Standards Act to "discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility . . . ."[13]  The Act, further and relevant to the actions of the EEOC at issue here, empowered the now-EEOC to "investigate and gather data regarding the wages, hours, and other conditions and practices of employment in any industry subject to this chapter . . . ."[14]

Title VII of the Civil Rights Act of 1964 further demonstrates Congress' intent to end wage discrimination in the workplace. Section 709(c) of Title VII requires employers to make and keep records that are relevant regardless of whether an unlawful employment practice has been committed. Title VII goes on to require

---

[12] St. George, Oral History Interview, USAFMOC: 32.
[13] Equal Pay Act of 1963, 77 Stat. 56, § 3, 29 U.S.C. § 206(d)(1).
[14] *Id.* § 211.

that employers preserve these records and produce reports to the EEOC as "reasonable, necessary, or appropriate for the enforcement" of these critical civil rights protections. As the EEOC has previously noted, the agency "has the legal authority to collect pay data under Title VII of the Civil Rights Act … without conducting a formal rulemaking because the EEOC is responsible for enforcing federal laws that prohibit wage discrimination on the basis of sex, race and national origin, and Title VII grants the EEOC broad authority to collect data from employers regarding anti-discrimination laws."[15] Congress' passage of Title VII of the Civil Rights Act and its subsequent amendments expressed a clear intention to end wage discrimination and for the EEOC to collect data in order to enforce its civil rights scheme.  As the EEOC itself has observed, its authority to "promulgate the EEO–1 report is found in section 709(c) of Title VII, which requires employers covered by Title VII to make and keep records relevant to whether unlawful employment practices have been or are being committed, to preserve such records, and to produce reports as the Commission prescribes by regulation or order, after public hearing, 'as reasonable, necessary, or appropriate for the enforcement of this

---

[15] EEOC, "Agency Information Collection Activities; Notice of Submission for OMB Review, Final Comment Request: Revision of the Employer Information Report (EEO-1)" July 14, 2016, https://www.federalregister.gov/documents/2016/07/14/2016-16692/agency-information-collection-activities-notice-of-submission-for-omb-review-final-comment-request.

7

subchapter or the regulations . . . thereunder.'"[16]

Since enacting the EPA and Title VII of the Civil Rights Act, Congress has further clarified its intent to end wage discrimination by expanding the scope of laws intended to address the gender wage gap. The Educational Amendment of 1972 expanded the reach of the EPA to include white-collar executive, professional and administrative jobs—categories that had been exempted under the original law.[17] The Pregnancy Discrimination Act of 1978 strengthened protections for pregnant workers.[18] And the Lilly Ledbetter Fair Pay Act of 2009 expanded the statutory limitation period for bringing wage discrimination complaints.[19]

## B.      The Gender Wage Gap Persists Despite Congressional Efforts

Despite these enactments and Congress' intent, the gender wage gap has persisted. Although progress has been made, it has been slow. The gender wage gap has inched down only 22.7 percentage points over the fifty-five years since Congress passed the EPA.[20] And progress has slowed over the past three years with the wage

---

[16] *Id.* at 45481 citing 42 U.S.C. 2000e-8(c).

[17] Fair Labor Standards Amendments of 1961, Pub. L. No. 87-30, § 9(a)(1),75 Stat. 65, 71; Education Amendments of 1972, Pub. L. No. 92-318, § 906(b)(1), 86 Stat. 235, 375 (codified as amended at 29 U.S.C. § 213(a)(1) (2000)) (removing § 206(d)(1) from exemption).

[18] 42 U.S.C. § 2000e(k) (2012).

[19] Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 3 (A), 123 Stat. 5.

[20] "The Wage Gap Over Time," *supra* note 11. The gap was 58.9% in 1963 compared to 81.6% in 2018.

gap decreasing only 1.1 percentage points over that period.[21] The Census Bureau reported that the median income for men in 2018 grew slightly more than the median income for women and that the ratio between the two sets of income remained the same.[22] The American Association for University Women has estimated that if the pace of change in the annual earnings ratio continues at the same rate as it has since 2001, women will not achieve pay equity with men until 2093.[23]

Research shows the wage gap continues to exist partially due to factors that are difficult to quantify, such as discrimination. The Pew Research Center recently explained that the narrowing of the wage gap can be explained in part by women's gains in measurable areas, including in educational attainment, disrupting occupational segregation, and accumulation of work experience.[24] However, even

---

[21] *Id.* The gap was 80.5% in 2016 and 81.6% in 2018.

[22] Jessica Semega, Melissa Kollar, John Creamer, and Abinash Mohanty, "Income and Poverty in the United States: 2018," Sept. 10, 2019, https://www.census.gov/library/publications/2019/demo/p60-266.html.

[23] AAUW Reacts to Stagnant Gender Pay Gap Number, American Association for University Women, Sept. 10, 2019, https://www.aauw.org/article/stagnant-gender-pay-gap-numbers/; *see also* The Simple Truth about the Gender Pay Gap, American Association for University Women, https://www.aauw.org/research/the-simple-truth-about-the-gender-pay-gap/ (documenting current statistics related to the gender pay gap).

[24] Nikki Graf, Anna Brown, and Eileen Patten, "The narrowing, but persistent, gender gap in pay," Pew Research Center, Mar. 22, 2019, https://www.pewresearch.org/fact-tank/2019/03/22/gender-pay-gap-facts/; *see also* Francine D. Blau and Lawrence M. Kahn, "The gender wage gap: Extent, trends, and explanations," Journal of Economic

factors like increased education which correlates with increased earnings are still effected by gender: women's median earnings are less than men's median earnings at every level of academic achievement.[25]

Thus, despite whatever gains women might make, the wage gap persists, in part due to "other factors that are difficult to measure, including gender discrimination."[26] The Pew Research Center has noted that up to 40% of the gap remains unexplained.[27] While the impact of gender discrimination has not been quantified, one 2017 Pew Research Center survey found that employees significantly felt the impact of gender discrimination. Specifically, the survey found that "about four-in-ten working women (42%) said they have experienced gender discrimination at work, compared with about two-in-ten men (22%) who said the same."[28]  The survey further found: "One of the most commonly reported forms of discrimination focused on earnings inequality. One-in-four employed women said they have earned less than a man who was doing the same job; just 5% of men said they have earned

---

Literature 55 (3) (2017), 789-865, (examining how various factors contribute to gender wage differences between 1980 and 2010).

[25] The Simple Truth about the Gender Pay Gap, *supra* note 23 at 12.

[26] "The narrowing, but persistent, gender gap in pay," *supra* note 24.

[27] "On Pay Gap, Millennial Women Near Parity—For Now," Pew Research Center, Dec. 11, 2013, https://www.pewsocialtrends.org/2013/12/11/on-pay-gap-millennial-women-near-parity-for-now/.

[28] "The narrowing, but persistent, gender gap in pay" *supra* note 24.

less than a woman doing the same job."[29]

Other efforts to understand the causes of the gender wage gap also suggest that discrimination and race play significant parts. One researcher found that of the 19¢ gap for every dollar earned experienced by woman, 8.04¢ are likely attributable to gender discrimination, stereotypes, and race.[30]

The economic consequences are staggering. As one author noted: "The average woman, over the course of a 40-year career, loses an estimated $418,800 relative to the average man due to gender wage inequality." She continued: "The results are even starker for many women of color. Black women are estimated to lose $840,040, Native American women $934,240, and Latinas $1,043,800 relative to white, non-Hispanic men."[31]

## C.      The Racial Wage Gap Persists Despite Congressional Efforts

Congress has made similar efforts to end wage discrimination based on race. Part of the Federal Civil Rights Act of 1964 addressed racial discrimination in employment including the payment of wages: "It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to

---

[29] *Id.*

[30] Sarah Jane Glynn, Gender Wage Inequality: What we know and how we can fix it, Washington Center for Equitable Growth, April 2018, https://equitablegrowth.org/research-paper/gender-wage-inequality/ at sec 2.

[31] *Id.*

11

his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ."[32]

Similar to the gender wage gap, the racial wage gap persists. Indeed, there has been less progress in closing racial wage gaps than the gender wage gaps. A Pew Research Center study noted: "Black and Hispanic men, for their part, have made no progress in narrowing the wage gap with white men since 1980, in part because there have been no improvements in the hourly earnings of white, black or Hispanic men over this 35-year period. As a result, black men earned the same 73% share of white men's hourly earnings in 1980 as they did in 2015, and Hispanic men earned 69% of white men's earnings in 2015 compared with 71% in 1980."[33] Even accounting for education, the wage gap persists. "College-educated black and Hispanic men earn roughly 80% the hourly wages of white college educated men ($25 and $26 vs. $32, respectively)."[34] These gaps increase when gender and race are considered together. The study indicates that "black and Hispanic women with a college degree earn only about 70% the hourly wages of similarly educated white men ($23 and $22, respectively)."[35]

---

[32] 42 U.S.C. § 2000e-2(a)(1).
[33] Eileen Patten, "Racial, gender wage gaps persist in U.S. despite some progress," Pew Research Center, July 1, 2016, https://www.pewresearch.org/fact-tank/2016/07/01/racial-gender-wage-gaps-persist-in-u-s-despite-some-progress/.
[34] *Id.*
[35] *Id.*

### D.    Enhanced Data is Needed to Help Eliminate Wage Discrimination in the Workplace as Congress Intended

As the District Court below recognized, the enhanced EEO-1 was developed as part of an effort "to identify ways to improve enforcement of federal laws prohibiting pay discrimination." *Nat'l Women's Law Ctr. v. Office of Mgmt. & Budget*, 358 F. Supp. 3d 66, 73 (D.D.C. 2019). Congress also granted the EEOC broad authority through Title VII to collect data from employers in order to ensure compliance with federal anti-discrimination law.[36] After commissioning studies and receiving public comment, in 2016 the EEOC proposed to enhance the information collected by the EEO-1: "Component 1 collects the same data that is gathered by the currently approved EEO-1: Specifically, data about employees' ethnicity, race, and sex, by job category. Component 2 collects data on employees' W-2 earnings and hours worked, which EEO-1 filers already maintain in the ordinary course of business." *Id.* This is exactly the type of data that can be used to evaluate and identify gender and race-based pay discrimination in the nation's largest businesses.

The EEOC's decision to halt significant pay data collection is inconsistent with steps Congress has taken to enhance efforts to eliminate wage discrimination, including requiring the collection of data like that proposed for the enhanced EEO-

---

[36] EEOC, "Agency Information Collection Activities," *supra* note 15. The EEOC has exercised this statutory authority by implementing a regulation to establish the EEO-1 reporting requirement, and now administers the EEO-1 report pursuant to the PRA.

1.  The House of Representatives passed the Paycheck Fairness Act in March 2019 on a bipartisan 247 – 187 vote.[37] Among other provisions addressing wage discrimination, the bill requires the EEOC "to use compensation data collected under paragraph (1) to enhance the investigation of charges filed under Section 706 or section 6(d) of the Fair Labor Standards Act of 1938; and the allocation of resources to investigate such charges; and for any other purpose that the Commission determines appropriate."[38] The Act is now before the Senate, where it has received a second reading and has been placed on Senate Legislative Calendar under General Orders. Calendar No. 53.[39]

In addition, the Commerce, Justice, Science, and Related Agencies House Appropriations Bill Committee Report states that "The Committee supports EEOCs's [sic] September 2016 revisions to the EEO-1 form."[40]  The report notes that this "strengthened pay data will shine a light on pay practices, reveal trends, and support employers in proactively evaluating their systems and closing pay gaps."[41]

---

[37] H.R. 7, Paycheck Fairness Act, Actions Overview, https://www.congress.gov/bill/116th-congress/house-bill/7/actions.
[38] H.R. 7 §8(f)(1), *supra* note 10.
[39] H.R. 7, Paycheck Fairness Act, All Actions, https://www.congress.gov/bill/116th-congress/house-bill/7/all-actions?overview=closed#tabs.
[40] Commerce, Justice, Science, and Related Agencies Appropriations Bill, 2020, Report 116-101, June 3, 2019, 101, https://appropriations.house.gov/sites/democrats.appropriations.house.gov/files/FY2020%20CJS%20CJS%20Filed%20Report%20-%20HR3055.pdf.
[41] *Id.*

Additionally, to justify increasing funding for the EEOC, the committee explains that funding is needed "to collect information required by the revised EEO–1 form."

Amici Chamber of Commerce et. al. assert that the information to be obtained by the enhanced EEO-1 will be of no utility and provide no public benefit. But these assertions do not withstand scrutiny. First, Congress has made clear that discriminatory wage practices are illegal, and that closing the wage gap and ending pay discrimination is a high priority given the impact on women, families, and the economy as noted above. As demonstrated above, Congress has acted based on undisputed evidence that substantial wage gaps exist based on both gender, race and ethnicity.

Second, these wage gaps have continued to exist for the decades since the enactments of the EPA in 1963 and the Civil Right Act of 1964, and absent change, will persist. For example, based on the trends in the gender gap from 2001 and 2018, the national gap will not be closed until 2093.[42] Even using the more optimistic trend from 1959 to 2015, four states will not see gender equity reached until the 22nd century.[43] Prospects for closing the wage gap are even bleaker for women of color.

---

[42] The Simple Truth about the Gender Pay Gap, *supra* note 23.
[43] Julie Anderson, M.A., Jessica Milli, Ph.D., Melanie Kruvelis, "Projected Year the Wage Gap Will Close by State," Institute for Women's Policy Research, Mar. 22, 2017, https://iwpr.org/publications/projected-year-wage-gap-will-close-state/.

15

Following trends from 1984 to 2017, Hispanic women will have to wait until 2224 and Black women will wait until 2119 to receive pay equal to that of their white male counterparts.[44] In addition, as noted above, there has been no progress on reducing the wage gap for African-American men, and there is no estimate of when that wage gap will close.[45]

Third, the EEO-1 data is crucial to facilitate continued research into the causes of these wage gaps, and the best interventions to reduce and end these harmful and persistent conditions. Up to 40% of the gender gap cannot be accounted for using factors such as educational attainment, occupational segregation, and work experience.[46] Rather than ignoring these factors, the EEO-1 seeks better to identify what parts of these gaps are attributable to unlawful discrimination and to take appropriate action as Congress intended.

Fourth and finally, new empirical research shows transparency regarding pay disparity can narrow the gap. One study tracked wage statistics at Danish companies following the introduction of the 2006 Act on Gender Specific Pay Statistics, which mandates that companies with over 35 employees report on gender

---

[44] "Women's Median Earnings as a Percent of Men's, 1984-2017, (Full time, Year-Round Workers) with Projections for Pay Equity, by Race/Ethnicity," Oct. 31, 2018, https://iwpr.org/publications/womens-median-earnings-1984-2017/.

[45] *See supra* pp. 14-15.

[46] *See supra* note 10.

16

pay gaps.[47] The study compared such companies with the reporting requirements with "control companies"—slightly smaller companies (24-34 employees) without the reporting requirement.[48] The study showed from 2003 to 2008, the gender pay gap at mandatory reporting firms shrank 1.4 percentage points compared to the control companies, or 7% total relative to the pre-regulation wage gap.[49] These findings suggest access to data regarding wage disparities can positively impact the problem. The EEOC has correctly determined that obtaining additional data on compensation is an "effective and appropriate tool" necessary to fulfill their statutory obligation to investigate and address pay discrimination.[50]

## III.   CONCLUSION

Congress has a longstanding commitment to close the gender and racial wage gaps and eliminate the discrimination which has persisted in the workplace for over fifty years despite congressional efforts. This wage gap cannot be explained without considering gender and race discrimination. The EEOC took

---

[47] Morten Bennedsen, Elena Simintzi, Margarita Tsoutsoura, and Daniel Wolfenzon, "Research: Gender Pay Gaps Shrink When Companies Are Required to Disclose Them," Harvard Business Review, (Jan. 23, 2019), https://hbr.org/2019/01/research-gender-pay-gaps-shrink-when-companies-are-required-to-disclose-them, full study available here: https://wpcarey.asu.edu/sites/default/files/daniel_wolfenzon_seminar_november_9_2018.pdf

[48] *Id.*

[49] *Id.*

[50] EEOC, "Agency Information Collection Activities," *supra* note 15.

17

a major step toward addressing the wage gaps and aligned itself with Congress'

intent by requiring wage data collection. This data is crucial to better understand

the extent and impact of gender and racial discrimination and therefore is itself a

tool to eliminate disparity. Accordingly, Amici urge that this Court affirm the

District Court's decision.

Dated October 25, 2019

Respectfully Submitted,

/s/  Kymberly K. Evanson
KYMBERLY K. EVANSON
PAUL J. LAWRENCE
CLAIRE E. MCNAMARA
**PACIFICA LAW GROUP LLP**
1191 Second Avenue, Suite 2000
Seattle, WA  98101-3404
Telephone:  206-240-1700
Facsimile:  206-240-1750
Kymberly.Evanson@pacificalawgroup.com
Paul.Lawrence@pacificalawgroup.com
Claire.McNamara@pacificalawgroup.com
Attorneys for Democratic Women's Caucus

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure ("FRAP") 32(g), I certify that this brief: (i) complies with the type-volume limitation of FRAP 32(a)(7)(B) because it contains 3,999 words, including footnotes, and (ii) complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because it has been prepared using Microsoft Office Word 2016 and is set in Garamond font in a size equivalent to 14 points or larger.

Dated: October 25, 2019

Respectfully submitted,

*/s/ Kymberly K. Evanson*
Kymberly K. Evanson

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2019, I electronically filed a copy of the foregoing. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM-ECF system.

 Dated: October 25, 2019

Respectfully submitted,

*/s/ Kymberly K. Evanson*
Kymberly K. Evanson

Lois Frankel
Member of Congress

Brenda L. Lawrence
Member of Congress

Jackie Speier
Member of Congress

Veronica Escobar
Member of Congress

Deb Haaland
Member of Congress

Gwen Moore
Member of Congress

Grace F. Napolitano
Member of Congress

Cheri Bustos
Member of Congress

José E. Serrano
Member of Congress

Eleanor Holmes Norton
Member of Congress

Donald S. Beyer, Jr.
Member of Congress

Alcee L. Hastings
Member of Congress

Nydia Velázquez
Member of Congress

Gilbert R. Cisneros, Jr.
Member of Congress

Barbara Lee
Member of Congress

Raúl M. Grijalva
Member of Congress

Danny K. Davis
Member of Congress

Debbie Wasserman Schultz
Member of Congress

Grace Meng
Member of Congress

Illhan Omar
Member of Congress

Donna Shalala
Member of Congress

Anna G. Eshoo
Member of Congress

Darren Soto
Member of Congress

Ann Kirkpatrick
Member of Congress

Ruben Gallego
Member of Congress

Emanuel Cleaver, II
Member of Congress

Debbie Dingell
Member of Congress

Frank Pallone, Jr.
Member of Congress

Lisa Blunt Rochester
Member of Congress

Jan Schakowsky
Member of Congress

Bill Foster
Member of Congress

Kathy Castor
Member of Congress

Susan A. Davis
Member of Congress

Ann M. Kuster
Member of Congress

Andy Levin
Member of Congress

Norma J. Torres
Member of Congress

Nita M. Lowey
Member of Congress

Chellie Pingree
Member of Congress

Ayanna Pressley
Member of Congress

Alma S. Adams
Member of Congress

Bonnie Watson Coleman
Member of Congress

Adriano Espaillat
Member of Congress

Mark DeSaulnier
Member of Congress

Rashida Tlaib
Member of Congress

André Carson
Member of Congress

Adam Smith
Member of Congress

Judy Chu
Member of Congress

Rosa L. DeLauro
Member of Congress

Julia Brownley
Member of Congress

Joseph P. Kennedy
Member of Congress

James P. McGovern
Member of Congress

Jerrold Nadler
Member of Congress

Frederica S. Wilson
Member of Congress

Pramila Jayapal
Member of Congress

Linda T. Sánchez
Member of Congress

Abigail Spanberger
Member of Congress

Yvette Clarke
Member of Congress

Earl Blumenauer
Member of Congress

Carolyn B. Maloney
Member of Congress

Joyce Beatty
Member of Congress