ORAL ARGUMENT HELD ON JANUARY 24, 2020


IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT


NATIONAL WOMEN'S LAW CENTER
  et al.,

      Plaintiffs-Appellees,

        v.                                                        No. 19-5130

OFFICE OF MANAGEMENT & BUDGET
  et al.,

      Defendants-Appellants.


**MOTION TO DISMISS THE APPEAL AS MOOT AND TO
VACATE THE DISTRICT COURT'S OPINION AND ORDERS**


DANIEL TENNY
LINDSEY POWELL
*Attorneys, Appellate Staff*
*Civil Division, Room 7246*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
*(202) 616-5372*

## INTRODUCTION AND SUMMARY

The government respectfully requests that the appeal be dismissed as moot and that the district court's judgment be vacated under *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950).

The district court directed the Equal Employment Opportunity Commission (EEOC) to require certain employers to submit pay information by September 30, 2019, and it mandated that EEOC continue collecting pay information until the Commission received at least the same response rate that it had in prior collections of different and much less extensive information—a response rate that plaintiffs have asserted was in excess of 98%. The government appealed on the ground that the district court's entry of these orders exceeded its authority, both because plaintiffs lacked standing to institute this suit in the first place and because, in any event, the district court's remedial authority would be limited to setting aside the allegedly unlawful action of the Office of Management and Budget (OMB) that plaintiffs challenged, and would not extend to micromanaging future action by EEOC.

During the pendency of the appeal, EEOC collected pay information as required by the court. Although EEOC received a strong response from employers, by the time this Court heard oral argument on appeal EEOC had not reached anywhere close to the 98.25% response rate that plaintiffs insisted the district court's order required. Plaintiffs then changed their position during oral argument, suggesting for the first time that an 85% response rate would satisfy the court's order.

Because employers had already exceeded that response rate, the parties thereafter

asked the district court to agree that the collection was complete.  On February 10,

2020, the district court ruled that the collection was complete and that the

government had fully discharged its obligations under the court's orders.

The parties agree that the case is now moot.  In general, when a civil case

becomes moot while an appeal is pending, the appropriate course is to vacate the

district court's judgment, *Munsingwear,* 340 U.S. at 39-40, unless mootness results from

the voluntary action of the party seeking appeal, as when the parties agree to settle the

case, *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24-25 (1994).  Here,

EEOC's conduct in collecting pay information was mandated by the district court's

order and not voluntary in any relevant sense, and the mootness ultimately arose from

the actions of third parties and the district court, not from EEOC's or OMB's

conduct.  Because the case is now moot, the government has been denied the

opportunity to obtain review of the district court's rulings.  Accordingly, the

government respectfully asks that the Court dismiss the appeal as moot and vacate the

district court's opinion and orders.

## STATEMENT

Plaintiffs challenged the lawfulness of a decision by OMB to reconsider and

stay its approval under the Paperwork Reduction Act of EEOC's proposal to start

collecting a new type of information from employers—pay information, referred to as

"Component 2" data.  On March 4, 2019, the district court granted summary

judgment for plaintiffs and vacated OMB's stay.  JA 134.  In a separate order entered

on April 25, 2019, the district court directed EEOC to collect pay information from

employers by September 30, 2019.  JA 3-4.[1]  The court stated that it would not view

the collection as complete until EEOC had received responses from employers at a

rate equivalent to the average response rate in the prior four years, when EEOC's

collection had not included pay information and had instead involved only certain

basic demographic information about employees, referred to as "Component 1" data.

JA 4.  The court did not identify the required percentage or provide a methodology

for ascertaining the past response rate, and it did not specify whether the relevant

benchmark was the average prior response rate as of the filing deadline or the rate

ultimately attained through all late filings that EEOC eventually received.  *Id.*  In

addition, the court determined that OMB's approval of the pay data collection was

tolled for the duration of OMB's stay and thus that, "barring further interruptions,"

OMB's approval would expire no later than April 5, 2021.  JA 3.

The government appealed.  The district court had properly held that plaintiffs

lacked informational standing, JA 145, and the government urged that plaintiffs

"cannot ground organizational injury on a non-existent interest" in accessing

---

[1] The court's order gave EEOC the option of collecting 2017 and 2018 pay
information in a single collection due September 30, 2019, or collecting 2018 and
2019 pay information on separate collection schedules, with the 2018 pay information
due September 30, 2019, and the 2019 information due later.  JA 3.  EEOC
conducted a single collection consistent with the first of these options.

information, *EPIC v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 379 (D.C. Cir. 2017).  The government further argued that, in any event, the court violated bedrock principles of administrative law when it went beyond setting aside OMB's allegedly unlawful action by directing EEOC to conduct the collection of information and superintending the details of the collection.

During the pendency of the appeal, EEOC conducted the collection as mandated by the district court.  Although EEOC expended considerable effort and resources to comply with the district court's binding orders, its ability to complete the collection was ultimately out of its control, both because it depended on the actions of employers subject to the collection requirement and because it depended on the district court's assessment of what response rate would be deemed acceptable. Accordingly, EEOC believed that it would likely be required to continue its collection efforts well into the future unless the government succeeded on appeal.

After the September 30 deadline for the collection passed, EEOC filed a motion asking the district court to determine that the collection was complete based on the Commission's having received pay information from more than 75% of covered employers, and noting the considerable cost of collecting further information. Dkt. No. 88, at 3-5; *see* Dkt. No. 83-1, at 1.  Plaintiffs opposed the motion, urging the district court to require EEOC to continue collecting information from employers until the Commission attained a 98.25% response rate.  Dkt. No. 89, at 2-3.

On October 29, 2019, the district court denied the government's motion and directed EEOC to continue collecting pay information notwithstanding that the Commission had by that time received responses from over 81% of employers. Dkt. No. 91, at 2. Although the district court did not specify the required response rate, the court explained that "the proper measure of completeness is not based on the number of reports submitted at the filing deadline" in past years but rather is "based on the EEOC's practice of permitting reports to be filed late in previous collection[s]" of Component 1 information. *Id.* The court insisted on this measure notwithstanding the absence of any statute or regulation requiring EEOC to allow late responses, and despite EEOC's recent policy—established in connection with the collection of 2018 Component 1 information—of limiting late responses to a window ending six weeks after the deadline for submission. *See* Dkt. No. 90-1, at 2. The court noted that the average rate of response for prior collections of Component 1 information was 84.5% as of the end of the six-week period, but it did not hold that an 84.5% response rate would be sufficient to terminate the collection. *Id.* Instead, the court directed EEOC to continue "to take all steps necessary to complete the EEO-1 Component 2 data collection for calendar years 2017 and 2018" by January 31, 2020, without specifying whether the collection would be deemed complete on that date. Dkt. No. 90, at 3.

On December 19, 2019, having attained a response rate of 85.6%, the government again asked the district court to determine that the collection was complete. Dkt. No. 95, at 6. Plaintiffs again opposed, urging that the court's orders

"plainly require that the Component 2 pay data collection only be deemed complete

when the filing rate reaches 98.25%," and asking the court to deny the EEOC's

"attempt to close the Component 2 pay data collection prematurely." Dkt. No. 96,

at 1. Although the government requested that the district court issue a ruling in

advance of oral argument in this Court, which was held on January 24, 2020, the

district court did not do so.

At oral argument, plaintiffs' counsel suggested for the first time that it would

soon become "clear that there are diminishing returns to keeping the collection open,

[and] everyone will agree it's an appropriate time to close it, . . . so we will likely not

get to 98%; that's not a measure that we would ultimately insist upon." Oral Arg.

Rec. 41:03-14. On February 7, 2020, the parties filed a joint status report informing

the district court that EEOC had received responses from over 89% of covered

employers and asking the court to deem the collection complete. Dkt. No. 101, at 1.

On February 10, 2020, the district court entered an order stating that "the EEO-1

Component 2 data collection is complete" and that "Defendants have no remaining

obligations pursuant to the Court's April 25, 2019 Order or the Court's March 4, 2019

Order granting Plaintiffs' motion for summary judgment." Dkt. No. 102, at 2.

## DISCUSSION

The parties agree that the case is now moot and that the appeal should be

dismissed. Because the case became moot on appeal due to circumstances other than

the government's voluntary conduct, the district court's opinion and orders should be

vacated pursuant to *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950), which holds that vacatur is generally warranted when, as a result of mootness, a party is unable to obtain appellate review.

**A.** There is no dispute that the case became moot when the district court held that a sufficient number of employers had submitted pay information for the collection to be deemed complete. "As applied in the context of injunctive litigation, if there remains no conduct to be enjoined, then normally there is no relief that need be granted, the case or controversy has ceased, and the jurisdiction of the court has expired under Article III." *True the Vote, Inc. v. IRS*, 831 F.3d 551, 561 (D.C. Cir. 2016). Here, plaintiffs' suit sought to remove an impediment to EEOC's collection of pay information—OMB's stay of its prior approval of the collection of that information. The information has now been collected. Plaintiffs have thus irrevocably "obtained all the relief that they sought." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013). There is no further information to collect, and vacating the district court's orders will not alter the collection of information that has already occurred. The government has also examined whether the district court's orders can otherwise be expected to affect the parties' legal relationship in the future, and has concluded that they cannot; notably, plaintiffs agree. Thus, this Court cannot "grant any effectual relief whatever to a prevailing party" on appeal. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quotation marks omitted).

**B.**  "When a civil case becomes moot pending appellate adjudication, the established practice . . . is to reverse or vacate the judgment below and remand with a direction to dismiss." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997) (quotation marks and brackets omitted).  Vacatur is an equitable remedy that "'clears the path for future relitigation' by eliminating a judgment the loser was stopped from opposing on direct review." *Id.* (quoting *Munsingwear*, 340 U.S. at 40).

Courts have made an exception to the general rule supporting vacatur when "the party seeking relief from the judgment below caused the mootness by voluntary action." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24-25 (1994).  Thus, when appellate review is prevented "by the deliberate action of the losing party before the District Court, . . . the prevailing party, . . . ought to be left in the same position as if no appeal had been taken." *United States v. Garde*, 848 F.2d 1307, 1310 (D.C. Cir. 1988) (per curiam) (quotation marks omitted).  The exception is meant to prevent a litigant from "attempting to manipulate the courts to obtain the relief it was not able to win in the judicial system." *Humane Soc'y of U.S. v. Kempthorne*, 527 F.3d 181, 188 (D.C. Cir. 2008).  Settlement is the classic example of voluntary action that triggers this exception to the vacatur rule.  "Where mootness results from settlement . . . the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur." *Bancorp*, 513 U.S. at 25.  By contrast, "[a] party who seeks review of the

8

merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought

not in fairness be forced to acquiesce in the judgment." *Id.*

Here, the government has not voluntarily forfeited its right to obtain appellate

review of the district court's erroneous opinion and orders. The district court

wrongly held that plaintiffs have standing to challenge OMB's stay based on an

asserted interest in accessing information to which plaintiffs admittedly have no legal

right. JA 145; *see EPIC v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371,

379 (D.C. Cir. 2017). And the district court substantially exceeded its authority by

requiring EEOC to collect pay information on a specified schedule and

superintending the details of the collection, rather than simply vacating OMB's stay.

JA 3-4; *see Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005). The

government is now denied the opportunity to obtain review of those rulings because

the case has become moot through no fault of the government's own.

The government did not take any voluntary steps to prevent this Court from

reviewing the district court's errors. Although EEOC complied with the district

court's order at a cost of over $7 million, Dkt. No. 54-1, at 10-11; Dkt. No. 88-1, at 2,

such compliance was required, not voluntary in any relevant sense, and it was certainly

not designed to avoid appellate review. The EEOC's actions were in any event not

what rendered the case moot—and, indeed, could not have been expected to do so.

Rather, the case became moot based on the eventual response rate of third-party

employers, which plaintiffs and the district court ultimately deemed acceptable. And

the government's (unsuccessful, until plaintiffs' change of position) efforts to persuade the district court that EEOC had fully complied with the injunction were designed not to evade this Court's review but rather, like the appeal in this Court, to relieve EEOC of the burden of complying with an unlawful and costly injunction.

Not only was EEOC's compliance with the district court's order not intended to moot the appeal, EEOC could not have known that employers would respond at a rate sufficient to satisfy the district court during the pendency of the appeal, and thus could not have known that the appeal would become moot. Notably, the size and novelty of the pay-information collection made the rate of response difficult to predict. Prior to the district court's orders, EEOC had never before collected Component 2 information, and that new information was far more extensive than the Component 1 information that employers were historically required to submit. In particular, whereas EEOC's Component 1 collection requires employers to submit demographic data in 140 data fields, its Component 2 collection required the submission of pay data in 3,360 data fields. *See* JA 126. EEOC thus reasonably anticipated that, even with appropriate outreach to the regulated community, the response rate for this new collection might be substantially lower than for past collections. Yet the district court directed that the collection remain open until the same response rate was achieved—a time that was both unknowable ex ante and dependent upon the actions of third parties.

The lack of clarity throughout the appeal as to how many employers would need to submit information for the district court to deem the collection complete further shows that the steps that EEOC took to collect the information were neither designed nor expected to moot this case. *Cf. Clarke v. Office of Fed. Hous. Enter. Oversight*, 171 F. App'x 864, 865 (D.C. Cir. 2005) (per curiam) (unpublished order declining to vacate a preliminary injunction when actions taken pending appeal had been assured to moot appeal).  Until oral argument before this Court, plaintiffs maintained that the district court's orders "plainly require[d] that the Component 2 pay data collection only be deemed complete when the filing rate reache[d] 98.25%," Dkt. No. 96, at 1; *see* Dkt. No. 89, at 2-3, and the district court held open the possibility that it might require the collection to continue until that time, *see* Dkt. No. 90-1, at 2.  The government anticipated that it would be able to attain such a high rate of response only after an extended period of time, if ever.  Although more than 70% of employers had responded by the September 30 deadline, the response rate slowed meaningfully after that point, corroborating the government's assumptions about the timing and feasibility of attaining a near-perfect rate of response.

EEOC's conduct in complying with the district court's order is not the type of voluntary or deliberate action that implicates the exception to the vacatur rule, and OMB did not do anything that affected this court's ability to resolve the appeal.  As noted, the exception is intended to prevent manipulation of the judicial process.  Plainly, this is "not a case in which a litigant is attempting to manipulate the courts to

11

obtain the relief it was not able to win in the judicial system." *Humane Soc'y*, 527 F.3d

at 188; *American Library Ass'n v. Barr*, 956 F.2d 1178, 1187 (D.C. Cir. 1992). The

district court's April 25 order compelled EEOC to take specific actions to collect pay

information on a particular timeline, and the Commission did what was mandated by

the court. At the time EEOC undertook that conduct, moreover, it was far from

clear that doing so would moot the appeal; the district court's order appeared to

require the Commission to make collection efforts far into the future—potentially

until April 2021, when the court held OMB's approval for the Component 2

information collection would expire, *see* JA 3. Until plaintiffs' change in position on

the response rate, the government thus reasonably believed that this Court would

adjudicate its appeal before the district court deemed the collection complete.

Accordingly, "there is not present here the kind of 'voluntary forfeiture' of a legal

remedy that led the Court in *Bancorp* to find that considerations of 'fairness' and

'equity' tilted against vacatur." *Alvarez v. Smith*, 558 U.S. 87, 97 (2009) (alteration

omitted).

This Court has generally "interpreted *Bancorp* narrowly" and applied the

exception only to prevent manipulation of the judicial process. *Humane Soc'y*, 527

F.3d at 185. Consistent with that approach, the Court has at least once vacated a

district court opinion after the issues on appeal became moot as a result of a federal

agency's compliance with the district court's order. *See Spirit of the Sage Council v.*

*Norton*, 411 F.3d 225, 230 (D.C. Cir. 2005). The same approach is appropriate here.

This case does not implicate this Court's admonishment that it does "not wish to encourage litigants who are dissatisfied with the decision of the trial court to have them wiped from the books by merely filing an appeal, then complying with the order or judgment below and petitioning for a vacatur of the adverse trial court decision." *United States v. Garde,* 848 F.2d 1307, 1311 (D.C. Cir. 1988) (per curiam) (quotation marks omitted); *see Clarke v. United States*, 915 F.2d 699, 707 (D.C. Cir. 1990) (en banc) (discussing *Garde*). That is not what transpired here, and *Garde* involved very different factual circumstances.

In *Garde*, the Nuclear Regulatory Commission (NRC) sought to enforce a subpoena against an individual in order to obtain information regarding safety problems at a nuclear facility, including the identities of the whistleblowers who provided the information. 848 F.2d at 1308. The district court denied the government's petition to enforce the subpoena and advised NRC to pursue alternative means of obtaining the information. While its appeal was pending, NRC could have chosen to take no further action to obtain the information it sought, given that the district court had not compelled it to do anything. Instead, NRC adopted safeguards that persuaded the defendant to disclose the information at issue, except for the whistleblowers' identities. *Id.* at 1309. The government then determined that the information it obtained had satisfied its request. The case thus became moot because of measures the government voluntarily took in order to reach a satisfactory arrangement with the defendant, not measures required by the district court. By

13

contrast, EEOC's collection of the information was mandated by the court's orders, and it was far from clear that conducting the collection would cause the case to become moot on appeal.  In these circumstances, it would be contrary to "equitable tradition," *Bancorp*, 513 U.S. at 25, to leave the district court's opinion and orders on the books without giving the government a full opportunity for review.

## CONCLUSION

For the foregoing reasons, the appeal should be dismissed and the district court's opinion and orders should be vacated.

Respectfully submitted,

DANIEL TENNY
 s/ Lindsey Powell
LINDSEY POWELL
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7246*
   *U.S. Department of Justice*
   *950 Pennsylvania Ave., NW*
   *Washington, DC  20530*
   *(202) 616-5372*

MAY 2020

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 27(d)(2)(A) because it uses a proportionately spaced, 14-point font and contains 3,559 words according to the count of this office's word-processing program.

s/ Lindsey Powell
LINDSEY POWELL

# CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2020, I electronically filed the foregoing motion with the Clerk of the Court by using the appellate CM/ECF system.  I further certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Lindsey Powell
LINDSEY POWELL