ORAL ARGUMENT HELD ON JANUARY 24, 2020

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| National Women's Law Center, *et al.*, | |
| *Plaintiffs-Appellees*, | No. 19-5130 |
| vs. | |
| Office of Management and Budget, *et al.*, | |
| *Defendants-Appellants*. | |

PARTIAL OPPOSITION TO DEFENDANTS-APPELLANTS' MOTION
TO DISMISS THE APPEAL AS MOOT AND TO VACATE THE
DISTRICT COURT'S OPINION AND ORDERS

EMILY MARTIN
SUNU P. CHANDY
MAYA RAGHU
*National Women's Law Center*
*11 Dupont Center, Suite 800*
*Washington, D.C. 20036*
*(202) 588-5180*

ROBIN F. THURSTON
JEFFREY B. DUBNER
*Democracy Forward Foundation*
*P.O. Box 34553*
*Washington, D.C. 20043*
*(202) 448-9090*

i

**INTRODUCTION**

Plaintiffs-Appellees, National Women's Law Center and the Labor Council for Latin American Advancement, agree that the government's appeal may be dismissed as moot following the completion of the collection of the two years of employer pay data ("Component 2" data) at issue in this case, but oppose the government's request to vacate the district court's orders.

Vacatur of an underlying decision when the appeal becomes moot before resolution is an equitable remedy, not an automatic right. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994). As the party seeking relief from the status quo of the district court judgment, it is the government's burden to demonstrate "equitable entitlement to the extraordinary remedy of vacatur." *Id*. The government has not done so, and equity requires that the district court orders remain in place.

First, the government's appeal became moot as a foreseeable result of its own actions—namely by choosing to collect two years of Component 2 data in one collection year rather than the two allowed by the district court and by declining to seek a stay or to request expedited

1

consideration of its appeal, despite planning to complete the collection before oral argument was even scheduled. Because the government has not been "frustrated by the vagaries of circumstance," but rather failed to act to exercise control over the timing of its appeal relative to the information collection, it is not entitled to vacatur. *Bancorp*, 513 U.S. at 25. Further, leaving the orders in place has no preclusive or other prejudicial effect on the government, nor does it establish binding precedent, but it does retain potentially useful persuasive precedent on complex and novel questions of law.

Alternatively, the Court may wish to remand the matter to allow the district court to consider vacatur. That course of action may be appropriate given that court's greater familiarity with the facts of the case and the government's responsibility for the timing of its compliance with that court's orders.

## BACKGROUND

In 2016, the Office of Management and Budget ("OMB") unlawfully stayed an information collection that the Equal Employment Opportunity Commission ("EEOC") planned to conduct to obtain employee pay data aggregated by race, gender, ethnicity, and job

category (the Component 2 data). JA 165-72. Plaintiffs successfully

challenged that stay. The district court granted summary judgment in

their favor on March 4, 2019, ordering that OMB's prior approval be in

effect. JA 173-74. The government has never disputed in this Court that

the challenged stay was unlawful.

When the EEOC did not open the data collection as expected in

March 2019, the district court conducted a series of hearings and

received briefing from the parties on the scope of the EEOC's

obligations following the summary judgment decision. The district court

entered an order on April 25, 2019, setting forth in detail EEOC's

obligations pursuant to the summary judgment order. JA 3-4. It

explained the reasoning for the order in an oral ruling on the same day.

JA 5-28. The district court explained that the remedial order was

necessary because "the Government has not demonstrated a

commitment to efficiently collect the Component 2 pay data, and over

the course of several months has affirmatively left both the Court and

Plaintiffs to labor under the misimpression about when and how the

Government could collect this information." JA 14-15.

Among other requirements, the district court ordered the EEOC to "take all steps necessary" to complete the Component 2 collection for the 2019 collection cycle by September 30, 2019. JA 3. It also confirmed that its summary judgment order required collection of the two years of Component 2 data not collected because of the unlawful stay. JA 12. The court gave the EEOC the option to collect those missing years simultaneously, during the 2019 collection cycle, which the EEOC had argued would be more difficult and less likely to produce high quality data, or sequentially, during the 2019 and 2020 collection cycles, which the EEOC had agreed would eliminate its alleged data reliability concerns. JA 17-18, 82-83.

Given the EEOC's recalcitrance, and in light of the EEOC's assertion that it believed itself powerless to seek data from employers that did not comply by the scheduled end of the collection, JA 99, 116, the district court also determined that a measure of completeness was required, JA 21. Based on Plaintiffs' suggestion, and without a contrary proposal from the government, the Court ordered that the data collection would be deemed complete when "the percentage of EEO-1 reporters that have submitted their required EEO-1 Component 2

reports equals or exceeds the mean percentage of EEO-1 reporters that actually submitted EEO-1 reports [for the longstanding Component 1 of the EEO-1 collection] in each of the past four reporting years." JA 4.

The district court also determined that the expiration of the original Paperwork Reduction Act ("PRA") approval of the information collection (September 30, 2019) was equitably tolled for the period of the unlawful stay. JA 18-20. The court explained that tolling the PRA approval for the period of the stay was consistent with the language and purpose of the PRA, was appropriate as a matter of equity, and was required to avoid incentivizing the government and employers to "further slow-roll" the Component 2 data collection. JA 20.

The government filed its notice of appeal of the summary judgment order and the subsequent remedial order on May 3, 2019, the last possible date under Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure to do so as to the summary judgment order. JA 1. It did not move for a stay of the district court orders pending appeal or seek expedition of the appeal.

The EEOC began to implement the Component 2 data collection in the summer of 2019. Although the district court allowed the EEOC to

conduct the collection across a multi-year period ending in September 2020, the agency instead chose to collect all of the missing data in the 2019 collection period. D. Ct. Dkt. No. 73-1 at 2.

On August 30, 2019, the EEOC provided a report setting forth its response rates for Component 1 of the information collection over the prior four years, as was necessary to determine "the mean percentage of EEO-1 reporters that actually submitted EEO-1 reports in each of the past four reporting years," JA 4, pursuant to the district court's order. D. Ct. Dkt. No. 83-1. Omitting one year that had an "artificially low" response rate, the EEOC determined that the mean percentage of EEO-1 reporters that submitted EEO-1 reports by the filing deadline each year was 72.7%. *Id*. at 2. In a footnote, the EEOC acknowledged that the mean response rate for *total* submissions, including submissions received after the filing deadline, was 98.3%. *See id*. at 2 n.5.

On October 8, 2019, the EEOC first sought leave to close the Component 2 collection. D. Ct. Dkt. No. 88. By that point, approximately 76% of filers had submitted Component 2 reports. *Id*. at 3. Plaintiffs opposed the request for closure, on the ground that the measure of completeness—"the mean percentage of EEO-1 reporters

that *actually submitted* EEO-1 reports in each of the past four reporting years"—had not been met. JA 4 (emphasis added). Plaintiffs argued that the district court order called for calculating the measure of completeness based on the number of reports actually submitted in the comparator years, including those received after the filing deadline. D. Ct. Dkt. No. 89 at 2. Plaintiffs also pointed out that the proportion of on-time filers was not a valid measure of completeness, because the EEOC had always previously permitted an automatic 30-day extension to the deadline. They argued that, "if the Court were inclined to adjust the terms of its remedial order, the appropriate comparators would be, at a minimum, the percentages of reporters who had filed their EEO-1 reports within the prior automatic extension window, *e.g.*, within 30 days after the prior filing deadlines." *Id*. at 3.

In late October, the district court required the government to keep the collection open, declining to amend its prior order, but it did not adopt the 98.3% completion measure proposed by Plaintiffs. The court explained:

> The court recognizes the burden the possibility of collecting data from every reporter imposes on the EEOC. But at this stage, the EEOC has not even collected the average response rate it calculates for reporters who submitted data within the grace period (rather than at the deadline) in previous years. … [T]he EEOC must continue to take all steps necessary to complete the EEO-1 Component 2 data collection for calendar years 2017 and 2018 by January 31, 2020.

D. Ct. Dkt. No. 91 at 2-3.

In mid-December 2019, the EEOC again sought to close the collection, because by that point it had received Component 2 reports from approximately 85% of filers, the mean of prior filers submitting reports during the automatic extension period. D. Ct. Dkt. No. 95 at 5. Plaintiffs responded that the district court's prior schedule (extending the collection through January 31, 2020) should remain in place and suggested that, even if the district court were inclined to accept a benchmark of less than Plaintiffs' preferred 98.3%, there was good reason to keep the collection open at least through the month of January. *See* D. Ct. Dkt. No. 96 at 2-3 (explaining that continuing the collection through January would give the contractor time to contact certain remaining filers as it had planned and provide filers who intended to file in January based on the district court's earlier order

time to do so). Plaintiffs proposed continuing the conclusion through the month of January, and then providing a status report as previously ordered by the district court. *Id.*

This Court heard oral argument on January 24, 2020. On February 7, in their joint status report to the district court, the parties agreed that the Component 2 collection could be deemed complete, as signaled by Plaintiffs in their prior filing and at oral argument. D. Ct. Dkt. No. 101. On February 10, 2020, the district court ordered that the Component 2 data collection was complete and that with the exception of one final status report (which the government has since filed), Defendants had no remaining obligations under the court's prior orders. D. Ct. Dkt. No. 102.

## ARGUMENT

Plaintiffs agree with the government that the appeal is moot. They oppose, however, the government's request to vacate the district court's orders.

The government has not met its burden to obtain the equitable remedy of vacatur. It was not "prevented through happenstance" or through "circumstances unattributable to any of the parties" from

obtaining a decision on the merits of its appeal prior to the completion of the Component 2 data collection. *Bancorp*, 513 U.S. at 23 (quoting *United States v. Munsingwear, Inc.,* 340 U.S. 36 (1950), and *Karcher v. May,* 484 U.S. 72, 82 (1987)). Instead, the government's voluntary actions rendered the appeal moot. When "the appellant complie[s] with the judgment, [and thereby moots the appeal] ... the trial court's determinations ought to have the same conclusive effects that they would have if the appellant had not appealed at all." *United States v. Garde*, 848 F.2d 1307, 1310 n.7 (D.C. Cir. 1988) (quoting 1B Moore's Federal Practice ¶ 0.416[6], at 543–44 (2d ed. 1984)). Further, the government exercised control over the timing of the Component 2 collection relative to the timing of the appeal—choosing the briefest possible period of time in which to complete the collection, while declining to seek a stay pending appeal or to request expedition of the appeal.

Denying the vacatur request is also consistent with the public interest. As the Supreme Court recognized, leaving the underlying decision in place makes valuable legal analysis available to the legal

10

community, *Bancorp*, 513 U.S. at 26, and here, would have no prejudicial or collateral effects.

Accordingly, Plaintiffs respectfully request that the Court deny the government's motion, or, in the alternative, remand the question of vacatur to the district court.

### A.     The government mooted the appeal through its voluntary actions.

"The decision to vacate reflects equity practice, so vacating is inappropriate when the appellant 'caused the mootness by voluntary action.'" *Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d 512, 519 (D.C. Cir. 2019) (citing *Bancorp*, 513 U.S. at 24-25.). The government has taken several voluntary actions since the district court's summary judgment decision and subsequent remedial order that make vacatur inequitable.

Just as in *United States v. Garde*, the government complied with the district court's orders, mooting the case by its own action.[1] In *Garde*,

_____

[1] *Spirit of the Sage Council v. Norton*, 411 F.3d 225, 230 (D.C. Cir. 2005), cited by the government, does not change this conclusion because that opinion does not explain why the Court decided to vacate the underlying decision, much less how it viewed the facts of that case in the light of precedent set forth by *Bancorp* and *Garde*.

the government sought to enforce a subpoena, but was rejected by the

district court, which "advised the [government] that it must pursue less

intrusive alternatives to obtain the information sought." 848 F.2d at

1308. Thereafter the government modified its records request and was

able to obtain the records voluntarily. *Id*. After determining that the

appeal was moot, this Court rejected the government's request for

vacatur of the district court opinion, explaining:

> We do not wish to encourage litigants who are dissatisfied
> with the decision of the trial court "to have them wiped from
> the books" by merely filing an appeal, then complying with
> the order or judgment below and petitioning for a vacatur of
> the adverse trial court decision.

*Id.* at 1311 (quoting *Ringsby Truck Lines, Inc. v. W. Conf. of Teamsters*,

686 F.2d 720, 721 (9th Cir. 1982)).

While in *Garde* the government was not subject to an injunction

(in contrast to the instant case), its modification of its subpoena was the

direct result of court order. *Cf. Clarke v. United States*, 915 F.2d 699,

707 (D.C. Cir. 1990) (describing *Garde* as a case "where a government

agency appealed a district court decision, and then complied with its

requirements and applied for its vacatur"). Furthermore, the fact that

the appellant took the action to moot the appeal (just as here) was of

prime importance—"[t]he distinction between litigants who are and are not responsible for the circumstances that render the case moot is important." *Garde*, 848 F.2d at 1311; *cf. Humane Soc'y of U.S. v. Kempthorne*, 527 F.3d 181, 188 (D.C. Cir. 2008) ("[B]ecause the party seeking appellate relief is not the party responsible for mooting the case, the orderly operation of the appellate system is not being frustrated." (quoting *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1213 (10th Cir. 2005))).

Similarly, in this case, the government's voluntary actions all but guaranteed that the collection would be completed before the appeal could be resolved. The district court's remedial order required the government to complete the 2019 Component 2 data collection by September 30, 2019. JA 3. Yet, briefing in the appeal was not even scheduled to conclude by then. Order (July 8, 2019), Dkt. No. 1796227. Even if the deadline for Component 2 were extended by a period of months (as indeed happened), considering the time required to complete briefing, set the case for oral argument, and for the Court to issue its decision, there was no reasonable expectation that the appeal could be resolved with an ordinary schedule before the first year of the

13

Component 2 collection concluded. Despite that fact, the government took no action to expedite the case or to seek a stay of the order pending appeal.

The fact that seeking expedition or a stay required action outside the ordinary schedule of appellate litigation does not change that conclusion. Indeed, this Court has refused vacatur when a party failed to apply to the Supreme Court for an emergency stay of an injunction, even though only *one day* elapsed between the challenged order and the event that mooted the case (the passage of Inauguration Day). *Mahoney v. Babbitt*, 113 F.3d 219, 222 (D.C. Cir. 1997). In *Mahoney*, the Court explained that this one-day lapse meant that the losing party "accepted the effects of our emergency order" without pursuing its appeal, making the mootness the result of its own inaction. *Id.* at 221. The principle that a losing party must act expeditiously prior to the expiration of the event or act at issue applies with full force here. *Id.*; *see also Clarke v. Off. of Fed. Hous. Enter. Oversight*, 171 F. Appx. 864, 865 (D.C. Cir. 2005) (per curiam) (unpublished order declining to vacate a preliminary injunction when "the appellants, rather than seeking a stay, complied with the court order" thereby mooting the appeal).

14

The government also exercised control here by choosing to collect the two missing years of data simultaneously. Based on the government's sworn testimony that it believed collecting both years simultaneously would be too difficult and would increase the likelihood of unreliable data, the district court allowed collection of the two years of data sequentially (one collection during the past year and one during the current year). JA 17-18, 82-83. Despite its own representations, the EEOC decided to collect both years of missing data this year, hastening the completion of the data collection.[2] Having made this choice, the government should have reasonably expected the Component 2 collection to last until September 30, 2019 (the government's planned date for closure) or for a period of months, not years, thereafter.[3]

_____

[2] Had the EEOC conducted the collection sequentially, it would not have even begun the second year's collection yet (as the 2020 EEO-1 has not yet opened and has been further delayed by the novel coronavirus).

[3] The government claims that the Component 2 collection could have extended as far as April 2021. *See* Motion to Dismiss the Appeal as Moot and to Vacate the District Court's Opinion and Orders ("Mot.") at 12. On the contrary, the district court selected that date as the expiration of the tolling period because it accounted for the number of days that the unlawful stay lasted, not because it represented an estimated time for completion of the collection. JA 3.

The government's emphasis on Plaintiffs' eventual agreement that the collection should be deemed complete, far from supporting vacatur, underscores *Bancorp*'s applicability. After repeated unilateral efforts to conclude the case by the government, in February 2020, the parties ultimately "agree[d] that the EEOC may wind down its collection of Component 2 data on the timetable of its choosing." D. Ct. Dkt. No. 101 at 1. This is the type of joint resolution found to make vacatur inappropriate in *Bancorp*. As the Supreme Court explained:

> That the parties are jointly responsible for settling may in some sense put them on even footing, but petitioner's case needs more than that. Respondent won below. It is petitioner's burden, as the party seeking relief from the status quo of the appellate judgment, to demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement to the extraordinary remedy of vacatur. Petitioner's voluntary forfeiture of review constitutes a failure of equity that makes the burden decisive, whatever respondent's share in the mooting of the case might have been.

*Bancorp*, 513 U.S. at 26. That Plaintiffs ultimately stopped opposing what the government sought—the termination of the government's obligations under the district court's orders before this Court ruled— does not change the fact that the government chose to push for an early resolution in the district court rather than this Court.

16

Similarly, the government's argument that it did not have control over the completion of the information collection because third parties were involved as well—primarily reporting companies, but also the district court—is unpersuasive. So too, mootness in *Garde* depended on the opposing party's agreement to provide the records that the government sought. *Garde*, 848 F.2d at 1309. This third-party involvement did not in any way impact the Court's determination that the government's actions had mooted the case, thereby precluding equitable vacatur.

The government's arguments that it could not have foreseen that its appeal would be mooted before its anticipated resolution are not persuasive. First, the EEOC assured the district court that it would complete the Component 2 collection by September 30, 2019, arguing that the court need not consider any provision for completion beyond that date. JA 22. Further, the argument that the collection timing was unknowable because the Component 2 collection was new, Mot. at 10, ignores EEOC's earlier precise burden estimates associated with reporting Component 2 data. JA 353. And the government's reliance on the increase in data fields fares no better, Mot. at 10, as the district

17

court rejected this supposed increase in burden in its un-appealed decision on the merits. *See* JA 171 ("The government's position rests on hyper-technical formatting changes that have no real consequences for employers.").

Nor did the district court's adoption of a standard to measure completeness, Mot. at 11, make it likely that Component 2 would remain open for a prolonged period after September 30, 2019. In particular, when the EEOC first moved to close the collection, shortly after the September 30, 2019 deadline, the district court suggested that obtaining 85% completion (the mean reporting rate including the grace period in prior years) could be adequate, a small increase from the 76% of reporters that had filed by that point. *See* D. Ct. Dkt. No. 91 at 2-3.

## B. Leaving the district court opinion in place will not have any unfair preclusive effect on the government.

The district courts' orders should also be left in place because "the prime reason for vacatur—to protect the losing party from the collateral effects of a judgment that it might have been able to have overturned but for the mooting event"— does not apply in this case. *Clarke*, 915 F.2d at 707. The government does not even assert that the district courts' orders could have any collateral effects on it. That cuts against

vacatur. *See Mahoney*, 113 F.3d at 224; *Jewish War Veterans of the U.S.A., Inc. v. Mattis*, 266 F. Supp. 3d 248, 253 (D.D.C. 2017) ("[C]ourts 'vacate unappealable decisions to prevent them from having a preclusive effect. Courts do not vacate opinions to prevent them from having a precedential effect.'" (quoting *In re Smith*, 964 F.2d 636, 638 (7th Cir. 1992)).

### C.    The value of the district court's analysis also counsels against vacatur.

The Supreme Court has cautioned that, in considering vacatur, courts should also consider the public interest of retaining a potentially useful judicial precedent. "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Bancorp*, 513 U.S. at 26 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)). Indeed, "there is no particular reason to assume that a decision, later mooted, is any less valid as precedent than any other opinion of a court. 'So long as the court believed that it was deciding a live controversy, its opinion was forged and tested in the same crucible

19

as all opinions.'" *Mahoney*, 113 F.3d at 222 (quoting 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533.10 (2d ed.1984)). Here, the value of the district court's opinion and orders as persuasive precedent reinforces the conclusion that vacatur is not warranted.

The district court decisions provide thoughtful analysis of several complex or novel issues of law. Among these are whether Article III standing exists when a plaintiff establishes actual injury consistent with *Havens Realty* requirements for organizational standing, but the injury resulted from deprivation of information not required to be disclosed by statute, JA 12-18, an issue that the government has recently disputed in this and other cases. *Cf. Marino v. Nat'l Oceanic & Atmospheric Admin.*, No. 18-CV-2750 (DLF), 2020 WL 1479515, at *5 (D.D.C. Mar. 26, 2020). The district court also interpreted and applied OMB's regulations providing for a stay of a previously approved information collection, JA 30-34, and analyzed when equitable tolling applied to such a stay, JA 18-21—issues never previously addressed by a court so far as Plaintiffs have been able to determine. *Cf. Jewish War Veterans*, 266 F. Supp. 3d at 253 ("The value of clear judicial opinions,

especially in areas that are not frequently litigated, has led the D.C.
Circuit to state that . . . 'the establishment of precedent argues against
vacatur, not in favor of it.'" (quoting *Mahoney*, 113 F.3d at 223)); *Comm.
on Oversight & Gov't Reform, U.S. H.R. v. Sessions*, 344 F. Supp. 3d 1,
13 (D.D.C. 2018) (when the issues addressed "fall within the 'rarely-
litigated' category, … that militates against vacatur.").

**D.    In the alternative, the Court should consider
remanding the vacatur motion to the district court.**

In the alternative, the Court may wish to consider remanding the
issue to the district court. "[A] court of appeals presented with a request
for vacatur of a district-court judgment may remand the case with
instructions that the district court consider the request, which it may do
pursuant to Federal Rule of Civil Procedure 60(b)." *Bancorp*, 513 U.S. at
29. This Court has regularly taken advantage of this option. *See*, *e.g.*,
*Alfa Int'l Seafood, Inc. v. Ross*, No. 17-5138, 2018 WL 4763179, at *1
(D.C. Cir. Feb. 1, 2018); *Chekkouri v. Obama*, No. 10-5033, 2010 WL
2689100 (D.C. Cir. June 23, 2010). Doing so is especially appropriate
here, because of the district court's deep familiarity with the interplay
between its decisions and the timing of the government's compliance
with its orders.

## CONCLUSION

For the foregoing reasons, while the appeal may be dismissed as moot, the district court opinion and orders should not be vacated.

Dated: May 14, 2020                    Respectfully submitted,

/s/ *Robin F. Thurston*

Robin F. Thurston
Jeffrey B. Dubner
*Democracy Forward Foundation*
*P.O. Box 34553*
*Washington, DC 20043*
*(202) 448-9090*

Emily Martin
Sunu P. Chandy
Maya Raghu
*National Women's Law Center*
*11 Dupont Center, Suite 800*
*Washington, DC 20036*
*(202) 588-5180*

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure ("FRAP") 32(g), the undersigned counsel for Plaintiffs-Appellees certifies that this brief:

(i)    complies with the type-volume limitation of FRAP 32(a)(7)(B) because it contains 4,487 words, including footnotes and excluding the parts of the brief exempted by FRAP 32(f) and Circuit Rule 32(e)(1); and

(ii)   complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because it has been prepared using Microsoft Office Word 2016 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated: May 14, 2020                     /s/ *Robin F. Thurston*
                                        Robin F. Thurston