ORAL ARGUMENT HELD ON JANUARY 24, 2020

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

NATIONAL WOMEN'S LAW CENTER
   et al.,

       Plaintiffs-Appellees,

       v.

OFFICE OF MANAGEMENT & BUDGET
   et al.,

       Defendants-Appellants.

No. 19-5130

**REPLY IN SUPPORT OF MOTION TO DISMISS THE
APPEAL AS MOOT AND TO VACATE THE DISTRICT
COURT'S OPINION AND ORDERS**

DANIEL TENNY
LINDSEY POWELL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7246*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC  20530*
  *(202) 616-5372*

# INTRODUCTION

Vacatur is the presumptive remedy when a case becomes moot on appeal as a result of circumstances other than the voluntary action of the party seeking review. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950). A narrow exception exists to prevent manipulation of the judicial process. *Humane Soc'y of U.S. v. Kempthorne*, 527 F.3d 181, 188 (D.C. Cir. 2008). Here, the government plainly was not seeking to manipulate that process by taking actions mandated by the district court's order while this appeal was pending. Indeed, it was far from clear that taking those actions would moot the appeal. Plaintiffs long insisted that the required collection of information would not be complete until EEOC received a near-perfect rate of response from employers—a rate the government reasonably expected it would take a year or more to reach, if such a response rate were even attainable. Ultimately, the case became moot only after plaintiffs changed their view regarding the required response rate, and the district court agreed. Under the circumstances, vacatur of the district court's opinion and orders is warranted.

# ARGUMENT

When a case becomes moot on appeal, the general rule is that the Court will vacate the district court's judgment, *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950), unless the party seeking relief caused the mootness through its voluntary and deliberate actions, *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24-25 (1994). Plaintiffs do not dispute the general rule favoring vacatur but instead urge

that EEOC's collection of pay information as required by the district court's order should be viewed as the type of voluntary action that falls within the exception. There is no merit to that contention.

**1.**  In opposing the government's motion, plaintiffs first err in suggesting that vacatur is unwarranted any time a case becomes moot as a result of compliance with a court order.  Resp. 11.  That position cannot be reconciled with this Court's decision to grant vacatur in *Spirit of the Sage Council v. Norton*, in which the appeal became moot "because the [government] ha[d] fully complied with the district court's orders."  411 F.3d 225, 230 (D.C. Cir. 2005).  This is the only published decision cited by the parties that is on all fours with this case, and the outcome should govern the Court's decision.  *Sage Council* confirms that when a party complies with a court order, its conduct is not voluntary in the relevant sense, and vacatur is the appropriate result. Plaintiffs address *Sage Council* only in a footnote, and even there do not explain why this case should be resolved differently; they instead appear to urge that *Sage Council* was wrongly decided.  Resp. 11 n.1.

This Court's decision in *United States v. Garde*, 848 F.2d 1307, 1310 (D.C. Cir. 1988) (per curiam), does not compel a contrary result.  As plaintiffs acknowledge, in *Garde* "the government was not subject to an injunction (in contrast to the instant case)," and the court's order did not require any government action.  Resp. 12. Nevertheless, the parties reached a compromise pursuant to which the government would establish certain safeguards and obtain much of the information it originally

2

sought. 848 F.2d at 1309. In light of these circumstances, the *Garde* Court's statement that it did "not wish to encourage litigants who are dissatisfied with the decision of the trial court to have them wiped from the books by merely filing an appeal, then complying with the order or judgment below and petitioning for a vacatur of the adverse trial court decision," *id.*; *see Clarke v. United States*, 915 F.2d 699, 707 (D.C. Cir. 1990) (en banc) (discussing *Garde*), is best read as reaffirming that vacatur may be unavailable if a party notices an appeal with no intention of seeing it through to a final decision, and anticipating the rule later adopted in *Bancorp*, 513 U.S. at 24-25, creating an exception to the vacatur rule when mootness results from the parties' decision to settle. In any event, the language is dicta, and even if it were read to address circumstances like this case (unlike those of *Garde* itself), it would be best understood as identifying one factor to be considered rather than as creating a broad categorical rule that cannot be reconciled with this Court's disposition of *Sage Council*.

**2.** Plaintiffs also err in suggesting that vacatur is unwarranted whenever a party declines to seek a stay or expedite the proceedings. A stay is an extraordinary remedy that is seldom granted, and plaintiffs cite no authority suggesting that the equitable principles espoused in *Munsingwear* and *Bancorp* require parties to request such relief in every case or risk leaving an erroneous order on the books if the appeal later becomes moot. *Mahoney v. Babbitt*, 113 F.3d 219, 222 (D.C. Cir. 1997), on which plaintiffs principally rely, announced no such rule. That case concerned displays during the Inaugural Parade, and this Court issued its emergency order the day before the

3

scheduled parade. As the Court explained, the case became moot because "the losing parties . . . elected not to seek further relief" and instead "accepted the effects of" the Court's order. *Id.* at 221. The Court's denial of vacatur was based on the fact that the losing party "declined to pursue its appeal." *Id.* at 222. And although it was clear that the case would become moot unless the losing party sought immediate review, the party did not do so. The Court held that vacatur was unwarranted in those circumstances, but it described the question as "a close one." *Id.*; *see Clarke v. Office of Fed. Hous. Enter. Oversight*, 171 F. App'x 864, 865 (D.C. Cir. 2005) (per curiam) (denying vacatur when actions taken pending appeal had been assured to moot the appeal).

Here, by contrast, the government seeks vacatur of a district court decision that became moot after an appeal in this Court had been fully briefed and argued (and then only because plaintiffs, not the government, changed their position). Plaintiffs' contention that it was "all but guaranteed that the collection would be completed before the appeal could be resolved," Resp. 14, ignores the facts of the case and plaintiffs' own prior view of the collection. The district court's order stated that the collection would "not be deemed complete" until the percentage of employers responding "equals or exceeds the mean percentage of EEO-1 reporters that actually submitted EEO-1 reports in each of the past four reporting years." JA 4. The court also tolled the expiration date for the collection until April 5, 2021, expressly contemplating that the collection could extend until that time. JA 3.

4

The government appealed eight days after the order issued, at which point there was substantial uncertainty regarding both the rate at which employers would respond and the percentage response the court would ultimately require. It is plain that the government was appealing not because it sought to wipe the district court's opinion from the books after the case became moot, but to obtain relief from the district court's order and the substantial monetary costs that EEOC continued to incur up until February 2020 when the case became moot.

Plaintiffs downplay the uncertainty associated with the collection and the length of time it would likely have taken for EEOC to attain the type of response rate that plaintiffs urged was required. Up until their presentation at oral argument in this Court, plaintiffs took the position that the collection would not be complete until 98.25% of employers had submitted information. Dkt. No. 89, at 2-3; Dkt. No. 96, at 1. On January 2, 2020, plaintiffs urged the district court to require the collection to continue notwithstanding that EEOC had received responses from more than 85% of covered employers, arguing that the court's orders "plainly require that the Component 2 pay data collection only be deemed complete when the filing rate reaches 98.25%," and asking the court to deny EEOC's "attempt to close the Component 2 pay data collection prematurely." Dkt. No. 96, at 1.

Had EEOC been forced to continue the collection, it is unclear when the Commission would have attained the 98.25% response rate on which plaintiffs long insisted. Even with collections of Component 1 information, with which employers

5

have decades of experience, it had typically taken EEOC almost a year to attain a near-perfect rate of response. Dkt. No. 83-1, at 2 n.5. Not only was the Component 2 collection unfamiliar to employers, the volume of data required by the collection exceeded by an order of magnitude the volume of data required for Component 1 collections. JA 126. Accordingly, it could easily have taken far longer than a year for employers to comply with the Component 2 collection to the degree that plaintiffs urged was required. Indeed, the diminishing returns that EEOC saw during the months following the September 30 submission deadline confirm that it likely would have taken a very long time to achieve that rate of response. *See* Dkt. No. 94-1, at 1, and Dkt. No. 100-1, at 2 (showing that between December 13, 2019, and January 24, 2020, the response rate increased by just under 2%).

Plaintiffs' assertion that "the district court rejected this supposed increase in burden in its un-appealed decision on the merits," Resp. 18, conflates two unrelated points. There is no dispute that whereas EEOC's Component 1 collection requires employers to submit demographic data in 140 data fields, the Component 2 collection required the submission of pay data in 3,360 data fields. JA 126. Rather than acknowledge this fact, plaintiffs refer to the data-format changes that were effected between the time the Component 2 collection was first announced and when OMB made its stay decision, which the district court deemed insufficient to justify OMB's conclusion that circumstances had materially changed. Resp. 18 (citing JA 171). But those changes relate only to the particular format in which information was to be

6

submitted, JA 164, not to the volume of information required, and the court's finding in no way supports plaintiffs' extraordinary suggestion that the collection of Component 2 information was insubstantial.

Plaintiffs seek to characterize their eventual change of position regarding when the collection should be viewed as complete—along with the government's adherence to its own position—as "the type of joint resolution found to make vacatur inappropriate in *Bancorp*." Resp. 16. Had the government changed its position so as to moot the case, plaintiffs' argument would have greater force. But here, it was plaintiffs' change in position that caused the case to become moot. The characterization of plaintiffs' ultimate acquiescence in the government's longstanding position as a "joint resolution" both mischaracterizes the parties' conduct and elides the rule that this Court "interpret[s] *Bancorp* narrowly." *Humane Soc'y of U.S. v. Kempthorne*, 527 F.3d 181, 185 (D.C. Cir. 2008). Just as appellants cannot erase an adverse decision by appealing and then settling the case, appellees should not be permitted to abandon their injunction, moot the case, and preserve a decision that the other side was trying to appeal.

**3.** There is likewise no merit to plaintiffs' contention that the government's conduct should be viewed as voluntary because EEOC collected two years of data (2017 and 2018) at the same time—something the district court's order expressly contemplated, JA 3—rather than having employers go through two separate collection cycles (for 2018 and 2019 data). The district court's order mandated that

7

EEOC collect pay data from two years, and the Commission did so. *Id.* As plaintiffs note, EEOC had expressed concern that collecting 2017 and 2018 data simultaneously could undermine data quality and explained that a single collection of 2018 information would be a better option. JA 82. While EEOC stated in response to the district court's questions that collecting 2018 and 2019 data in separate collections could potentially mitigate these data-quality concerns, the court did not ask about other potential downsides of conducting two separate collections, such as increased costs. JA 83-84. Plaintiffs' suggestion that EEOC should have collected 2018 and 2019 data in separate collections to ensure that the appeal would not be rendered moot—rather than basing the decision on which years of data to collect on other relevant considerations—is without merit.

EEOC's decision to collect two years of data simultaneously in no way transforms its compliance with the district court's order into a voluntary action, much less one designed to "manipulate the courts." *Humane Soc'y*, 527 F.3d at 188. Indeed, plaintiffs' suggestion that the government should have dragged its feet in conducting the required collections is contrary to the general principles of equity that govern this analysis. Notably, the Tenth Circuit has found vacatur appropriate when a case became moot on appeal as a result of "responsible governmental conduct to be commended," reasoning that a party should not be penalized for making decisions consistent with the public interest. *McClendon v. City of Albuquerque*, 100 F.3d 863, 865-

8

66 (10th Cir. 1996); *see Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1131 (10th Cir. 2010).

    **4.** Plaintiffs also contend that vacatur is unwarranted because the district court's orders will not have preclusive effect in future litigation. Resp. 18. The government is heartened that plaintiffs have disclaimed such reliance on these orders. But the way to ensure that the orders will not have preclusive effect is to vacate them. Plaintiffs cite no case for the proposition that the absence of preclusive effect is a reason not to vacate orders that have become moot through happenstance rather than the voluntary conduct of the party seeking review. Rather, the general rule holds that vacatur is warranted in such circumstances. *See, e.g.*, *Sage Council*, 411 F.3d at 230. Although plaintiffs urge that "[t]he value of the district court's analysis also counsels against vacatur," Resp. 19, the opinion is not binding precedent, and as such its vacatur would not slow the development of the law.

    **5.** Contrary to plaintiffs' suggestion (Resp. 21), there are no grounds for remanding for the district court to consider the vacatur question. "The established practice in federal court in dealing with civil cases which have become moot is to reverse or vacate the judgment below and remand with a direction to dismiss." *NFL Players Ass'n v. Pro-Football*, 79 F.3d 1215, 1216 (D.C. Cir. 1996). This Court typically decides for itself whether vacatur is warranted. *See, e.g.*, *Planned Parenthood of Wisconsin v. Azar*, 942 F.3d 512, 519 (D.C. Cir. 2019); *Sage Council*, 411 F.3d at 230; *Pharmachemie B.V. v. Barr Labs.*, 276 F.3d 627, 629 (D.C. Cir. 2002); *National Black Police Ass'n v.*

9

*D.C.*, 108 F.3d 346, 354 (D.C. Cir. 1997); *Pro-Football*, 79 F.3d at 1217; *Garde*, 848 F.2d at 1311. While plaintiffs assert that this Court "has regularly taken advantage" of the option of remanding for consideration by the district court, in the two unpublished opinions they cite in support of that contention this Court had not scheduled, much less heard, oral argument (and in one case, briefs had not even been filed). Resp. 21 (citing *Alfa Int'l Seafood v. Ross*, No. 17-5138, 2018 WL 4763179 (D.C. Cir. Feb. 1, 2018); *Chekkouri v. Obama*, No. 10-5033, 2010 WL 2689100 (D.C. Cir. June 23, 2010)). Here, by contrast, the case has been fully briefed and argued, so contrary to plaintiffs' suggestion (*id.*) this Court has all of the information necessary to assess whether the government's conduct was voluntary, and there is no basis for departing from the Court's usual practice of resolving the vacatur question.

## CONCLUSION

For the foregoing reasons, the appeal should be dismissed and the district court's opinion and orders should be vacated.

Respectfully submitted,

DANIEL TENNY

s/ Lindsey Powell
LINDSEY POWELL
*Attorneys, Appellate Staff*
*Civil Division, Room 7246*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
*(202) 616-5372*

MAY 2020

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 27(d)(2)(C) because it uses a proportionately spaced, 14-point font and contains 2,596 words according to the count of this office's word-processing program.

                                                s/ Lindsey Powell
                                                LINDSEY POWELL

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2020, I electronically filed the foregoing reply with the Clerk of the Court by using the appellate CM/ECF system. I further certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

 s/ Lindsey Powell
LINDSEY POWELL